# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

**DEFENDANTS' JOINT MOTION FOR THE SETTING OF DISCOVERY DEADLINES**

Defendants Jayson Penn, Mikell Fries, Scott Brady, Roger Austin, Timothy Mulrenin, William Kantola, Jimmie Little, William Lovette, Gary Roberts, and Rickie Blake (collectively "Defendants"), through their undersigned counsel, respectfully request that the Court set discovery deadlines to permit the Defendants to prepare for trial. Defendants request that the Court require the government to produce by July 6, 2021 all additional documents currently in its possession that should be produced pursuant to *Brady*, Rule 16, or the Discovery Memoranda and Orders, and that the government produce not later than August 13, 2021 all materials, including notes, memoranda, or Form 302s of interviews that come into the government's possession after July 6. In support of this motion, Defendants state as follows:

## FACTS

Messrs. Penn, Fries, Brady, and Austin were indicted one year ago, in June 2020, (ECF No. 1), and a superseding indictment was issued in October 2020, adding Messrs. Mulrenin, Kantola, Little, Lovette, Roberts, and Blake. (ECF No. 101.)

The current trial date is October 25, 2021, less than 90 business days away. The deadline for pretrial motions is July 26, fewer than 20 business days away.

The Court ordered the government to produce all Rule 16 discovery to Defendants no later than December 1, 2020—more than six months ago. (ECF No. 199; ECF No. 201.) The government produced approximately 12.7 million documents by that date. The government has never sought an extension nor communicated to the Defendants or the Court when it might complete its production. Since the passage of the discovery deadline, the government has made a number of large productions of documents, including three productions within the last 60 days totaling approximately 239,880 documents. More than half of these documents have been produced within just the last 30 days. The government has refused repeated requests from Defendants, including as recently as June 10, 2021, to provide a date by which it will complete its productions on the grounds that the government is complying with its discovery obligations. (The Defendants June 10th Letter to the DOJ is attached hereto as Exhibit A.) In response to the Defendants' June 10 request, the government refused to disclose a date by which it will complete discovery, failed to disclose how many documents are currently in its possession that it anticipates it will produce in discovery, and declined to commit to produce the form 302s currently in its possession by a date certain. (The DOJ's June 15th Letter to Defendants is attached hereto as Exhibit B.) The government rebuffed the request for a date when it will complete its production of discovery by simply pointing to this Court's denial of our earlier

2

motion ("You filed a motion on the very same issue in February, ECF No. 235, and the Court denied your motion in April…." (ECF No. 256).

The government has refused to provide any information about the size or anticipated dates of future productions. The government has not given Defendants any information about whether the government's pace and volume of production will continue, decrease, or increase.

Equally troubling, the government seems to be tactical with its productions.  On June 10, 2021, Defendants sent a letter to the government requesting an explanation as to why they had not received summaries of interviews that they knew had been conducted months earlier.  Five days later, on June 15, 2021, the government produced sixteen interview summaries.  One of those summaries was an FBI 302 for an interview that occurred in November 2020, and which unquestionably contains *Brady* material.  The government's only explanation for the delay was that it "had technical issues with [the] interview report…that prevented [the government] from producing it through [the government's] normal processes."  This FBI 302 is a mere seven pages long.  It is difficult to imagine what "technical issues" could have prevented the government from producing a highly relevant FBI 302 for more than seven months, or how it was able to solve those technical issues immediately upon receiving Defendants' letter.  The government offers no explanation.  Other interview summaries produced on June 15 had been in final form for months. One of those interview summaries was a half-page long, noted simply that the interview was tape-recorded, but the tape recording has not been produced.  Interview reports are especially critical, and the government has failed to produce those ready-to-go interview reports while still producing literally hundreds of thousands of documents that are far less relevant.  While one may argue that FBI 302s are Jencks Act material, here Defendants expect them to

3

contain significant *Brady* material.  And, in the context of the government's massive productions to date, imposing a deadline for their production before such a complex trial is warranted.

The Defendants' task in digesting the government's massive volume of documents, identifying exculpatory material, and coordinating among the counsel for the Defendants has been further complicated by the fact that a number of the documents produced by the government have had significant metadata errors that appear to impact the accuracy and reliability of the affected documents.  Defendants have asked the government to cure these issues several times.   In the government's most recent response to Defendants' requests for a remedy, its response to Defendants' June 10 letter, the government indicated it is working to fix the errors, but it gave no timetable for remedying these issues and deflected responsibility to third parties that have produced documents to the government.   The closer we come to the trial date, the less margin there is for error – especially error that is left unremedied for months.

## **RELEVANT CONSIDERATIONS**

Defendants' request for a deadline and some certainty in advance of a trial as complex as this one is neither extraordinary nor unreasonable. The Department of Justice's policy statement on discovery from the Justice Department Manual, sections 9.5001.D and D.1 provides:

> **D.** **Timing of Disclosure.** Due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See, e.g. Weatherford v. Bursey*, 429 U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). In most cases, the disclosures required by the Constitution and this policy will be made in advance of trial.
>
> **1.** **Exculpatory information.** Exculpatory information must be disclosed reasonably promptly after it is discovered. …

4

While there is no rule mandating a pretrial disclosure window for *Brady* and other Rule 16 material, courts in the Tenth Circuit have recognized that "the purpose of the *Brady* duty of disclosure is to give the defendants a fair opportunity to prepare their defenses *well in advance* of the trial." *United States v. McVeigh*, 923 F. Supp. 1310, 1315 (D. Col. 1996)[1]. The fact that Congress felt compelled to enact Fed. R. Crim. P. 5(f)(2) underscores the importance of meaningful, which is to say timely, access to *Brady* information.[2] What is an appropriate deadline to make *Brady* meaningful is a function of the particulars of each case. Despite this principle, the government fails to acknowledge the hard realities at work in this case, which are further complicated by COVID-19. Ten Defendants must be prepared for a trial that puts them at peril for their alleged conduct over a seven-year period with no fewer than fourteen pleaded separate and complex bid transactions, and possibly an unknown number of additional separate and complex bid transactions.

To date, the government has produced nearly 14,000,0000 million documents, more than 125,000 of which have been produced in just the last 30 days. And the Defendants have no idea how many more to come, including documents with *Brady* information that will require follow-up by multiple Defendants to be prepared to use that information at trial.[3] Defendants must utilize third party document vendors, teams of lawyers for each Defendant, and consultation with each Defendant client as well as among these various groups in order to have any meaningful hope of sifting through this mountain of data and the unknown volume of data to come at some undisclosed point closer to trial, identifying and analyzing evidence relevant and material to each

---

[1] Holding *Brady* obligations are not altered whether the information is in witness statements or grand jury testimony and citing with approval *United States v. Starusko*, 729 F.2d 256, 265 (3rd Cir. 1984); *United States v. Poindexter*, 727 F. Supp. 1470,1485(D.D.C. 1989).
[2] *See*, Due Process Protections Act, Pub. Law 116-182, 134 Stat. 894 (Oct. 21, 2020).

bid or transaction at issue, sharing the documents with the ten Defendants so they can participate meaningfully in their defense, and coordinating among the counsel for the ten Defendants so there is no unnecessary duplication or inadvertent omission of exculpatory evidence presented at trial. All of this work requires time—lots and lots of it. This imperative is compounded at every level by COVID-19. The Defendants' document review process must be conducted remotely through all phases. The majority of consultations with clients and co-counsel have been done remotely. In fact, to date, nearly all trial preparation is being done remotely. This has and will continue to mean extra time is required.

Defendants do not know which of the hundreds, if not thousands, of different bidding transactions reflected in the discovery are the universe of those the government contends are part of the charged conspiracy, and, therefore, which of these transactions Defendants must be prepared to defend at trial. Accordingly, Defendants are not able to streamline their discovery review. Further, the defects in the government's productions compound the timing concerns for the Defendants who must have time to identify the errors, notify the government, and wait for a proper production under circumstances to date demonstrating the government has failed to provide complete and timely fixes.

The reality is that without a deadline and without supervision from the Court, the risk of a failure to comply with *Brady* mounts with each day closer to trial. Recent cases in other jurisdictions point to the perils the Defendants seek to avoid here. *See, e.g., United States v. Bundy*, 968 F. 3d 1019 (9th Cir. 2020); *United States v. Nejad*, Case No. 18-cr-00224 (S.D.N.Y. February 16, 2020). The issue is that the government holding discovery that is formatted and ready to be produced. It was only in response to the June 10, 2021 request that the government disclosed that it had been holding 16 interview reports, several of which had been in final form

6

for months.  In light of the fact that the government has already produced millions of pages of far less relevant documents, the failure to produce highly relevant documents promptly once they were ready gives the Defendants significant concern.

Defendants need to know what documents and data the government has that should be produced and when the government will produce such materials to Defendants so that the Defendants can adequately prepare for trial in an already complicated environment.

## REQUEST FOR RELIEF

For all of these reasons, Defendants respectfully request that the Court require the government to produce by July 6, 2021 all additional documents currently in its possession that should be produced pursuant to *Brady* or Rule 16, or the Discovery Memoranda and Orders, and that the government produce not later than August 13, 2021 all materials, including notes, memoranda, or Form 302s of interviews that come into the government's possession after July 6, 2021.

Respectfully submitted this 29th day of June, 2021.

                        *s/ James P. McLoughlin, Jr.*
                        John A. Fagg, Jr.
                        James P. McLoughlin, Jr.
                        MOORE & VAN ALLEN PLLC
                        Attorneys for Defendant William Wade Lovette
                        100 North Tryon Street, Suite 4700
                        Charlotte, NC 28202
                        (704) 331-3622
                        johnfagg@mvalaw.com
                        jimmcloughlin@mvalaw.com


                        *s/ Elizabeth B. Prewitt*
                        Elizabeth B. Prewitt
                        Latham & Watkins LLP
                        Attorney for Defendant Timothy Mulrenin
                        555 11th St NW, Suite 1000
                        Washington, DC  20004

Tel: (202) 637-2200
Fax: (202) 637-2201
Email: elizabeth.prewitt@lw.com


*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Defendant Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, Colorado 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
Attorney for Defendant Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Defendant Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8876
mtubach@omm.com

*s/ Bryan B. Lavine*
Bryan B. Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Defendant Scott James Brady
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ James A. Backstrom*
James A. Backstrom, Counselor at Law

8

Attorney for Defendant William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Defendant Jimmie Lee Little
888 West Sixth Street, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Defendant Brian Gary Roberts
400 Galleria Parkway, Suite 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Defendant Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT, ORSECK,
& UNTEREINER LLP
2000 K Street N.W.
4th Floor
Washington, D.C. 20006
(202) 775-4514
bpollack@robbinsrussell.com

**CERTIFICATE OF SERVICE**

        I hereby certify on this 29th day of June 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filings to all listed parties.

        *s/ James P. McLoughlin, Jr.*
        James P. McLoughlin, Jr.