IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 20-CR-152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS,
10.  RICKIE PATTERSON BLAKE,

    Defendants.

## NON-PARTY PILGRIM'S PRIDE CORPORATION'S MOTION TO QUASH AND/OR MODIFY SUBPOENA

Non-Party Pilgrim's Pride Corporation ("PPC"), respectfully requests that the Court issue an order quashing and/or modifying the Rule 17(c) subpoena (the "Subpoena") served on PPC by all defendants in this case ("Defendants") on or about August 5, 2021.[1]

## INTRODUCTION

On July 19, 2021, Defendants filed a motion seeking permission to serve certain trial subpoenas pursuant to Fed. R. Crim. P. 17(c). (Dkt. 284 (the "Motion").) One such Subpoena

---

[1] The Subpoena is attached as Exhibit A to the Declaration of Daniel J. Fetterman, dated August 13, 2021 ("Fetterman Decl."). Moreover, the Subpoena is directed to "Pilgrim's Pride Headquarters," a non-existent entity. Thus, the Subpoena is defective on its face for that reason.

was directed to PPC.  In their Motion, Defendants briefly discussed, in conclusory fashion, why their proposed subpoena to PPC containing 18 different requests for documents spanning an eight-year period complied with Rule 17(c).  (*Id.* at 8-9.)  However, Defendants misrepresented, among other things, that (i) "[they] do not appear to be in possession of the documents listed in the requested subpoenas"; (ii) compliance with the Subpoena would require "minimal effort"; and (iii) their Subpoena was drafted to seek only "specific, targeted information."  (*Id.* at 4, 7, 9.)  In truth, Defendants failed to disclose they already have received substantial portions of the information that they seek.  Defendants also failed to disclose that their requests contain broad, civil-style requests (like "all documents") with very broad definitions (like "relating to") that likely would require PPC to search through millions or tens of millions of documents and produce or log many hundreds of thousands if not millions of documents.  Further, as Defendants undoubtedly knew when they filed the Motion, but failed to tell this Court, responding to the requested Subpoena will require an incredible effort by numerous lawyers that will take many months and be extremely costly and burdensome for PPC.  Indeed, PPC estimates that compliance with the Subpoena would require the company to collect, search, and review many millions or tens of millions of emails, texts, and other documents, would cost PPC many millions of dollars or more, and would at take least six months, if not longer, to complete.

Based on their inaccurate, incomplete, and misleading Motion, the Court entered an order on July 29, 2021, granting in part and denying in part the Motion.  (Dkt. 315.)  The Court adopted the standard set forth in *United States v. Nixon*, 418 U.S. 683, 700 (1974), for evaluating subpoenas under Rule 17(c) and struck certain requests, but otherwise issued the Subpoena.  As discussed below, the remaining requests are overbroad, burdensome, and seek facts and information already

in Defendants' possession, as well as inadmissible and/or irrelevant documents, all of which violate the *Nixon* standard.

Even more problematic, however, is that Requests 7 through 11 appear to be an end run attempt to obtain discovery directly from PPC that Rule 16, *Brady*, and this Court would not permit Defendants to obtain from the government.[2]  The requests also patently disregard this Court's July 29, 2021 Order (the "July 29 Order"), which denied Defendants' attempt to obtain much of the same discovery directly from DOJ.  In its July 29 Order, this Court held that the "government has no obligation [under Rule 16 and *Brady*] to produce attorney argument" or "facts that have already been produced to the defendants," and rejected Defendants' request for discovery of unredacted White Papers submitted to the government by PPC.  (Dkt. 316 at 3.)  Yet, in the Subpoena, Defendants now improperly seek that very same discovery, including unredacted versions of the same White Papers and an overwhelming number of facts already obtained from the government.  It is axiomatic that Defendants cannot obtain discovery through Rule 17(c) that they are not entitled to under Rule 16, and these requests are independently improper for the separate reason, among others, that they would invade PPC's privilege and attorney work product protection.[3]

---

[2]  Among other things, Defendants seek (i) "all [PPC] communications with DOJ," which would include White Papers, (ii) "all documents containing, reporting on, documenting or reflecting any communications, presentations, proffers or discussions" with DOJ, and (iii) "all documents reflecting records of any investigation, review, fact-finding, or analysis, including interviews of any person" relating to *any* DOJ investigation, *any* potential violation of antitrust violations, or the bidding or the pricing or sale of Broiler Chickens.

[3]  During the meet-and-confer process, Defendants clarified that they do not seek "privileged communications and documents," only the purported non-privileged "facts" that they assume are contained in countless privileged and work product communications within PPC's files.  Rule 17(c) does not authorize such a burdensome fishing expedition, and it would be antithetical to the rule's intended purpose of allowing defendants to obtain specific, identifiable, relevant, and admissible evidence for trial.

3

For these reasons, and those discussed below, the Subpoena should be quashed, or where appropriate, modified to meet the stringent standards of Rule 17(c) and *Nixon*.

## **ARGUMENT**

### I.  The Legal Standard Under Rule 17(c) And *Nixon*

Rule 17(c) is "not intended to provide a means of discovery for criminal cases," but is meant simply to "expedite the trial by providing a time and place before trial for the inspection" of specifically-identified materials. *Nixon*, 418 U.S. at 698-700. Accordingly, courts will enforce a Rule 17(c) subpoena only if it "clear[s] three hurdles": specificity, relevancy and admissibility. *Id.* at 700. Even where a party has made the required showing under *Nixon*, courts will quash or modify the subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Here, the Subpoena should be quashed for multiple, independent reasons.

#### A.  The Subpoena Fails *Nixon's* Specificity Requirement

The Tenth Circuit and other courts applying *Nixon's* specificity requirement have required that "the party requesting the information identify the item sought and what the item contains, among other things." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002); *accord United States v. Rosenschein*, 2019 WL 4855428, at *5 (D.N.M. Oct. 2, 2019), *report and rec. adopted*, 2020 WL 205880 (D.N.M. Jan. 14, 2020) ("The relevance and specificity elements require more than the title of a document and conjecture as to its contents, and a subpoena should not issue based upon a party's mere hope that it will turn up favorable evidence."). "Specificity is generally the most difficult hurdle to overcome because it ensures that Rule 17(c) subpoenas are used only to secure for trial ***certain documents or sharply defined groups*** of documents." *United States v. Minh Hoang*, 2020 WL 262985, at *2 (D. Utah Jan. 17, 2020) (emphasis added) (internal quotation

4

marks omitted). In other words, it ensures that parties are not able to conduct civil discovery fishing expeditions under the guise of Rule 17(c) subpoenas. *Morris*, 287 F.3d at 991.

In their Motion, Defendants misrepresented their compliance with the specificity requirement, stating that they drafted the Subpoena "in a targeted way to obtain a limited set of relevant, admissible documents" and "seek only specific, targeted information." (Mot. at 9.) In reality, the Subpoena's requests are hopelessly non-specific in ways that numerous other courts have held violate *Nixon*. For example, all but one of the Subpoena's requests improperly seek "All" materials related to the Subpoena's varied and impermissibly broad topics. *See United States v. Wittig*, 250 F.R.D. 548, 552 (D. Kan. 2008) (subpoena was improper because it "read like a civil discovery request, including a broad description of materials requested and an expansive 'Definitions' section that seeks 'each' and 'every,' 'any' and 'all,' 'without limitation,' 'however denominated'").[4] And the Subpoena improperly defines "the words 'all,' 'each,' and 'any' [to] mean 'any and all'; and the word 'including' [to] mean[] 'including without limitation,'" and the term "relating to" as "concerning, describing, evidencing, supporting, discussing, consisting of, referring to, reflecting on, embodying, dealing with, or being in any way legally, factually, or logically connected with the referenced matter." (Subpoena at 4, 7-8.) *See United States v. Pistotnik*, 2019 WL 568583, at *6 (D. Kan. Feb. 12, 2019) (subpoena seeking all documents that in any way "refer" to a report was improper).

Defendants also fail to specify which documents and information they are seeking ***that they***

---

[4] *See also Rosenschein*, 2019 WL 4855428, at *6 (defendant failed to meet specificity requirement where requests sought "any and all" or "any" documents); *United States v. Castro-Motta*, 2012 WL 3400828, at *3 (D. Colo. Aug. 15, 2012) (quashing subpoena for relying "on the broadest and most general of terms, *e.g.*, 'any,' 'all,' and 'other documents'"); *United States v. Shelley*, 2017 WL 3470940, at *2-*3 (W.D. Okla. Aug. 11, 2017) (same).

5

*do not already possess*. Contrary to their misrepresentations (Mot. at 4), Defendants likely have received millions of pages from PPC's files that contain the facts and information requested by the Subpoena. In *In Re Broiler Chicken Antitrust Litigation,* No. 16-CV-8637 (N.D.Ill.) ("*Broilers*"), and in response to the DOJ's July 2019 grand jury subpoena in this matter (the "DOJ Subpoena"), PPC produced 2,856,352 documents (more than 16 million pages), all of which PPC understands has been, or will be, provided to Defendants by DOJ. *See* Decl. of Kimberly Pryor, dated Aug. 13, 2021 ("Pryor Decl.") ¶ 6.) Indeed, PPC has produced at least 865,606 documents from the files of the former PPC employees who are defendants in this or related actions. (*Id.*) In addition to emails, PPC has produced reams of other types of materials, including transaction-specific sales data for every transaction in which PPC engaged over a 15-year period. (*Id.*, ¶ 13.)

Because Defendants already have received a substantial portion of material the Subpoena requests, the burden on them should be especially high to identify – *with specificity* – a limited set of *additional* documents they need, and to identify why those particular documents, which must also be admissible, are relevant and necessary given the substantial discovery they already have. Since Defendants have not done so, the Subpoena is unreasonable and burdensome, and should be quashed outright. *See United States v. Columbo*, 2006 WL 2012511, at *15 (S.D.N.Y. July 18, 2006) (denying request to issue subpoena in part because it sought "documents that duplicate materials already produced by the Government").

**B.     The Subpoena Seeks Apparently Irrelevant And Inadmissible Documents**

A party serving a Rule 17(c) subpoena must make a "sufficient preliminary showing" that the requested material contains evidence that is both relevant and admissible. *Nixon*, 418 U.S. at 700. "Conclusory allegations of relevance and admissibility," such as allegations "that the

documents may be relevant and admissible," are "insufficient." *United States v. Anderson*, 31 F. Supp. 2d 933, 944-45 (D. Kan. 1998).  "[T]he documents sought cannot be *potentially* relevant and admissible, they must meet the test of … admissibility at the time they are sought." *United States v. Burger*, 773 F. Supp. 1419, 1425 (D. Kan. 1991).

Defendants have not come close to demonstrating that the requested documents are relevant or admissible under *Nixon*.  Indeed, in their Motion, Defendants never specifically discuss *any* of their 18 Requests, much less explain how each request seeks relevant documents.  Similarly, the vast majority of documents sought by Requests 7 through 11 are hearsay statements from PPC – a third party – or its counsel, and likely would be inadmissible at trial.  *See United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (affirming quashing of subpoena where materials sought were "simply hearsay").[5]  Defendants' "conclusory allegations" that the documents they seek "*may be relevant or admissible*" are insufficient.  *Burger*, 773 F. Supp. at 1425.  Indeed, Defendants' Motion relies on the very language that other courts have rejected, asserting that the documents they seek "*may* constitute business records" and "*may*" be used for impeachment (Mot. at 12) – a purpose that itself is insufficient grounds for a Rule 17(c) subpoena.  *See Nixon*, 418 U.S. at 701 ("[T]he need for evidence to impeach witnesses is insufficient….").

## II.     Each Request Should Be Quashed Or Modified Under *Nixon*

PPC respectfully submits that each of the following specific requests in the Subpoena is

---

[5] *See also United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (subpoena properly quashed where appellants "did not demonstrate that the reports would have been admissible" under any hearsay exceptions); *United States v. Collins,* 2013 WL 1089908, at *4 (N.D. Cal. Mar. 15, 2013) (quashing Rule 17(c) subpoena request for "communications" as seeking inadmissible hearsay).

7

improper under Rule 17(c) and *Nixon*, and should be quashed or modified as set forth below.[6]

***Requests 1 & 2 (Contracts, Bids and Purchase Orders).***  Request 1 seeks ***all*** of PPC's "Contracts" and "Bids" from 2012 through 2019; while Request 2 seeks ***all*** purchase orders between PPC and its competitors.  Both fail to meet *Nixon*'s requirements of specificity and relevance.  During the period covered by the Subpoena, PPC earned over $51 billion in revenue through sales of nearly 57 billion pounds of chicken to nearly 6,000 unique customers – most of which do not appear to be relevant to the Superseding Indictment – and entered into approximately $2 billion in transactions with its competitors.  (Pryor Decl. ¶¶ 3, 15.)  Rather than specify which specific contracts and bids they seek – *i.e.*, (i) from which customers, (ii) relating to which products and (iii) covering which specific time periods – Defendants ask for ***everything***, without limitation.  In other words, they are conducting an "impermissible fishing expedition" into "the entire file" of PPC's contracts and purchase orders.  *See Morris*, 287 F.3d at 991.

Worse still, because PPC does not maintain a database of contracts and bids, compliance would require a search through, among other things, all of PPC's sales force's emails, texts, and documents for any document – whether it is relevant to this case – in which any of PPC's 200-plus current and former sales-related personnel who *proposed* or discussed a price relating to any of the nearly 6,000 customers over eight years.[7]  For these reasons, these requests make a mockery of Rule 17(c) and *Nixon*, and belie the assertion that compliance would require "minimal effort."

Moreover, even assuming Defendants' extremely burdensome and overbroad requests

---

[6] PPC will agree to produce documents responsive to Request 12.

[7] While appearing deceptively narrow, the definitions of "all," "bid," "contract," and "relating to" make this request extremely expansive.  As a result, it would require PPC to search the files of potentially hundreds of sales-related personnel, as well as others.  (Pryor Decl. ¶ 11.)

were sufficiently specific and limited to actually relevant materials – which they are not – Defendants already have much of the requested information and failed to identify what additional documents they needed and why.[8] They further failed to specify publicly why contracts, bids, and other documents having nothing to do with the allegations in the Superseding Indictment or the subject matter of this case are relevant. Indeed, during the meet-and-confer process, PPC specifically invited Defendants to "specify the particular contracts for specific, relevant customers and for which time periods that [they] are seeking and do not already have." Defendants refused to do so, stating that they needed every single contract and bid relating to the "*possible*" transactions that "the government *could* introduce at trial." (Fetterman Ex. G (emphasis added).) As a result, Defendants have not met and cannot meet their burden under *Nixon* and Rule 17(c), and these requests should be quashed in their entirety.

***Request 3 (Price Increases to Costco).*** Request 3 seeks "all documents" "relating to" any price increase for "broiler chicken products" (*i.e.*, "any products, items, merchandise, stock, or

---

[8] As described above, PPC produced to DOJ a massive database containing sales data directly from PPC's electronic information system, including detailed pricing, quantity, quote number, sales document number among the more than 150 fields, for every single transaction between PPC and its customers – and its competitors – for the entire relevant period. (Pryor Decl. ¶ 13.) During the meet-and-confer process, PPC provided Defendants with the field in that sales data that would allow Defendants to identify competitor transactions; Defendants nonetheless claimed that they were unable to locate that field – confirming that they have not looked sufficiently at the documents in their possession (*see* Fetterman Ex. H (excerpt from the data containing the "Payer_txt" field)) – and refused to withdraw their request for tens or hundreds of thousands of purchase orders relating to such transactions. (Fetterman Ex. G.) It does not appear that Defendants are familiar with or have taken full advantage of the millions of pages of sales-related information already in its possession. In addition, in *Broilers* discovery that we understood DOJ did or was going to provide to Defendants, PPC agreed to search for and produce any contract covering over six months for 111 customers. (Pryor Decl. ¶ 11.) Further, PPC also produced thousands of contracts and tens of thousands (if not more) of communications between PPC and its customers, as well as every email between more than two dozen key custodians (including each of the former PPC employees who are defendants in this and all related cases) and PPC competitors. (*Id.* ¶¶ 7, 14.)

9

yield related to chicken") sold to Costco.  Costco is not mentioned in the Superseding Indictment, and, as far as PPC is aware, Costco is irrelevant here.  Moreover, the request calls for ***all documents of any kind*** relating to Costco price increases and thus also fails *Nixon*'s specificity requirement.[9]

***Request 4 (Org Charts).***  Request 4 seeks ***all*** of PPC organizational charts for its over 32,000 employees (Pryor Decl. ¶ 16).  Defendants' request for ***all*** documents "containing or reflecting" organizational charts is massively overbroad, and therefore unreasonable and oppressive.  Given that PPC already produced organizational charts in *Broilers*, Defendants should have searched the documents in their possession before lodging this facially overbroad request. (*Id.*)  Instead, during the meet-and-confer, Defendants conceded that they already had documents responsive to this request in their possession – contradicting their prior representations to the Court – and attempted to stand Rule 17(c) on its head by demanding PPC to identify which documents it already produced, rather than Defendants identifying what additional documents they need. (Fetterman Ex. E.)  Although it was not required to, PPC did so, but Defendants still refused to withdraw the request. (*Id.*, Ex. G.)

***Request 5 (Employment-Related Documents).***  Request 5, as limited during the parties' meet-and-confer, seeks eight broad categories of employment-related documents.  This request is overbroad.  *See United States v. Badonie*, 2005 WL 2312472, at *2 (D.N.M. Aug. 10, 2005) ("The request for 'the entire personnel file, including any and all' certification and other information, does not meet the test for relevancy on its face.").  Nevertheless, during the meet-and-confer

---

[9] During the meet-and-confer process, Defendants proposed that PPC search for certain contracts, but also insisted on "all communications related to Costco pricing" from August 2012 to March 2013 involving eleven individuals. (Fetterman Ex. E.)  PPC would be willing to search for the requested contracts, but the request for "all communications" relating to Costco pricing is overbroad, burdensome and violates Rule 17(c) and should be struck entirely.

process, PPC offered to "undertake a good-faith effort to locate and produce" five of the eight categories to the extent such documents are reasonably available. (Fetterman Ex. E.) Defendants agreed, but only if the documents were produced by August 26 (*id.*, Ex. G), which is unreasonable given that PPC does not maintain a central database of these documents (and may not even possess many of them) (Pryor Decl. ¶ 17), and given Defendants' delay in seeking and serving the Subpoena, and in the meet-and-confer process. (*Id.*, Ex. G.)

***Request 6 (Beto Esteves Documents).*** Request 6 seeks expense reports, calendar entries and performance reviews (regardless of topic) from Beto Esteves, a former PPC employee who left in 2016 and focused primarily on international sales (which are not at issue here). (Pryor Decl. ¶ 17.) During the meet-and-confer process, PPC offered to produce Mr. Esteves's performance reviews, and noted that PPC already produced thousands of documents from Mr. Esteves's email files, including any responsive calendar "invites." (*Id.*) Defendants declined PPC's compromise, insisting they needed all expense reports regardless of topic, and refusing to specifically identify the additional information they needed by particular customers or locations and how or why that information would be relevant. (Fetterman Ex. G.)

***Requests 7-11 (Investigation-Related Requests).*** The remainder of the Subpoena's requests – which seek various types of information relating to PPC's response to the government's investigation of price-fixing – should be quashed because they fail to meet the *Nixon* requirements, and they seek documents that (i) the Court already ruled Defendants cannot obtain from the government through Rule 16, and (ii) are attorney-client communications and work product.

*First*, Request 7 requests all communications between PPC and DOJ or FBI relating to their investigation since 2016. The documents sought by this request would largely consist of

11

communications between PPC and DOJ regarding PPC compliance with the DOJ Subpoena – a subject that has no obvious relevance to Defendants' defense – and PPC's advocacy to and cooperation with the government. As noted above, however, in denying Defendants' Rule 16 motion for discovery from the government, this Court already held that "attorney argument or discussion of the Filip factors … are not material." (Dkt. 316 at 3.) The same rationale applies to the documents sought through Request 7. Neither PPC's arguments while negotiating its guilty plea, nor PPC's proffers and other communications relating to its cooperation, are "material." Moreover, even if they are material, Defendants should seek those documents from the government, which is a party to this case, rather than from a third party. *See Nixon*, 418 U.S. at 699 (documents requested pursuant to Rule 17(c) must not be "otherwise procurable" from another source); *United States v. Medley*, 130 F. App'x 248, 250 (10th Cir. 2005) (affirming quashing of subpoenas that "attempt[ed] to circumvent the rules of discovery under Rule 16").[10]

*Second*, Request 8 seeks all documents "containing, reporting on, documenting, or reflecting" any communications between PPC and DOJ. Like Request 7, this request should be quashed because it seeks documents that the Court has already determined are irrelevant.[11] (Dkt. 316.) Request 8 also seeks privileged communications and attorney work product by demanding that PPC produce its counsel's documents relating to their communications with DOJ, which

---

[10] *See also United States v. Leavitt*, 2016 WL 503060, at *4 (D. Utah Feb. 8, 2016) (quashing subpoena in part because documents were available from other sources, including government); *United States v. Maxwell*, 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021) ("[I]f [defendant] is entitled to [communications with Government] at all, they should come from the Government."); *United States v. Boyle*, 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) ("Defendants may not seek material under Rule 17 that they are prohibited from obtaining under Rule 16.").

[11] Even if relevant – and it is not – Defendants should obtain the information from the government.

occurred while PPC was the target of an ongoing criminal investigation, negotiating and seeking Court approval of a plea agreement, and responding to the DOJ Subpoena. For these reasons, among others, it would be unduly burdensome and unreasonable to require PPC to collect and log thousands of documents from its litigation counsel, particularly in the time frame permitted for compliance. *United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000) (courts may determine if "burden of producing subpoenaed records 'greatly outweighs any relevance'"). [12]

*Third*, Request 9 asks for all documents concerning communications "between the AUDITOR." Assuming Defendants meant to seek all documents relating to communications with PPC's auditors, the request is unreasonable and oppressive. For example, not only does Request 9 use broad language requesting "all documents" "reflecting" or "reporting on" any communications – which itself demonstrates Defendants do not know whether such documents exist and thus violated Rule 17(c) – the request also seeks every communication with PPC's auditors "relating to Broiler Chicken Products," a subject that is entirely unmoored from this case and would appear to encompass nearly ***every single communication*** between PPC and its auditors**,** in blatant disregard of the specificity or relevance requirements of Rule 17(c) and *Nixon*. Request 9 is also improper because it seeks information protected by the accountant-privilege, *see Rosania v. Grp. O, Inc.*, 2014 WL 1224234, at *4 (D. Colo. Mar. 25, 2014) (privilege "protects from disclosure

---

[12] Although Defendants advised during the meet and confer that they are not seeking privileged information (ignoring work product), they then immediately stated that they are seeking the production of – unspecified – allegedly non-privileged facts in those communications. PPC disagrees with Defendants' privilege and work product analysis about to what they are entitled. In any event, Defendants' "concession" is illusory, as it would still require Pilgrim's to log and/or redact of tens or hundreds of thousands (if not more) of privileged documents searching for as yet unidentified, unspecified "facts" – which is the definition of a wildly burdensome fishing expedition.

13

communications by the client to the accountant"), and the attorney work product doctrine, *see Int'l Design Concepts, Inc. v. Saks, Inc.*, 2006 WL 1564684, at *3 (S.D.N.Y. June 6, 2006) (attorney's report sent to auditors describing internal investigation was work product).

*Fourth*, Request 10 seeks any documents in PPC files that PPC "disclosed to, delivered to, or described" to the DOJ or FBI relating to certain subjects. PPC understands that DOJ has produced or is producing to Defendants anything PPC produced in response to the DOJ Subpoena. Accordingly, Defendants should seek such documents from DOJ (if they have not already received them). Moreover, this request, including the request for documents that PPC did not "produce," but instead merely shared or disclosed – such as a presentation or White Paper – is an improper attempt to circumvent the Court's order refusing to order such a production under Rule 16.

*Finally*, Request 11 is patently improper in that it seeks all documents "containing or reflecting records of any investigation … conducted by [PPC] from September 2, 2016 onward related to … any alleged or potential violation of the U.S. antitrust laws" regardless of subject matter. Clearly, this request also seeks to invade PPC's privileged communications and attorney work product and demands the collection and production of irrelevant and inadmissible documents. *See Collardey v. All. for Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 979 (D. Colo. 2019) (Brimmer, J.) (internal investigation documents protected under attorney-client privilege and work product doctrine); *Zawadzki v. Cmty. Hosp. Assn.*, 2010 WL 3085719, at *3-4 (D. Colo. Aug. 6, 2010) (same). This request would require PPC to review the files of its in-house and outside counsel who worked on *any* of the numerous civil or criminal antitrust investigations, as well as the dozens of lawyers who have worked on the DOJ's grand jury investigation in this matter (and any other antitrust matter over the past five years). PPC estimates that this would require

reviewing, withholding, and logging the clearly privileged and work product protected internal and external communications and documents within the files and communications of more than 50 lawyers who have performed antitrust work for PPC. (Pryor Decl. ¶ 19.) PPC should not be required to undertake the expense of logging potentially hundreds of thousands of documents that have no direct relevance to this case, especially since logging PPC's internal investigation documents could reveal PPC protected work product, and Defendants cannot possibly meet their burden of showing relevance or admissibility for those documents given the Court's decision on Rule 16 discovery, and given that the documents likely all constitute inadmissible hearsay.[13]

## CONCLUSION

For the foregoing reasons, the Subpoena should be quashed or modified as described above.

Dated: New York, New York
August 13, 2021

/s/ Daniel J. Fetterman
Marc E. Kasowitz
Daniel J. Fetterman
Kenneth R. David
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
E-mail: DFetterman@kasowitz.com

*Attorney for Non-Party Pilgrim's Pride Corporation*

---

[13] *See United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) (denying Rule 17(c) motion seeking internal investigation materials because "summaries, notes and memoranda related to the interviews of [] employees" were aimed at "only hearsay," and memoranda regarding what law firm told government about those interviews "would be hearsay-upon-hearsay"); *United States v. Shanahan*, 2008 WL 619213, at *3 (E.D. Mo. Mar. 3, 2008) (company or law firm "out-of-court statements … concerning their cooperation or potential cooperation with the government … constitute hearsay and fail the admissibility requirement of *Nixon*").

15

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 13 day of August, 2021, I electronically filed the foregoing **NON-PARTY PPC PRIDE CORPORATION'S MOTION TO QUASH AND/OR MODIFY SUBPOENA** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

                                                        */s/ Daniel J. Fetterman*
                                                                Name