IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

       Defendants.

## DEFENDANT WILLIAM LOVETTE'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT

      The Government's response reveals its significant reliance on *implication* to plead that Mr. Lovette knowingly joined and participated in the alleged price-fixing conspiracy. As to Mr. Lovette, the Government's reliance on implication is not enough to plead two essential elements (*actus reus* and *mens rea*), thus violating his Fifth Amendment right to have had a grand jury find probable cause for every essential element. Moreover, the Government implies his guilt by association with other named defendants, which is plainly impermissible. *See United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991). The indictment should thus be dismissed as to him.

The Government flatly states—citing to no legal authority or rationale—that the indictment is not duplicitous as to Mr. Lovette because it shows "the operation of [a] single price-fixing conspiracy[.]" *See* Doc. No. 415 at 17 n.6. The Government's omissions are telling, as the failure to articulate an argument or cite caselaw further shows the indictment's duplicity as to Mr. Lovette.

Lastly, this Court, not the Government, determines whether the rule of reason or *per se* rule applies. This Court should disregard the Government's assertion that its own labeling of the case as *per se* makes it so, and instead should conclude the indictment is subject to the rule of reason.

## I. THE INDICTMENT VIOLATES THE FIFTH AMENDMENT BECAUSE CERTAIN ESSENTIAL ELEMENTS CONCERNING MR. LOVETTE ARE NOT PLEADED IN THE INDICTMENT.

The Government asserts that the "charge of conspiracy has implicit in it the elements of knowledge and intent." Doc. No. 415 at 15 (quoting *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 453 (10th Cir. 1984)). The problem for the Government is that a valid indictment requires a finding of probable cause for every element—including *actus reus* and *mens rea*—for each defendant. *See* Doc. No. 303 at 7-8 (citing *United States v. Cline*, No. 00-40024-03/06-SAC, 2002 U.S. Dist. LEXIS 10001, at *5 (D. Kan. Apr. 5, 2002)). The Fifth Amendment demands this to "avoid [] conviction on facts not found, or perhaps not even presented to the grand jury that indicted him . . . ." *United States v. Moore*, 198 F.3d 793, 795 (10th Cir. 1999) (quoting *United States v. Radetsky*, 535 F.2d 556 (10th Cir. 1976)).

It is "not enough for an indictment to possibly or even plausibly imply an essential element." *United States v. Donagher*, No. 19 CR 240, 2021 U.S. Dist. LEXIS 31219, at *16–17, 2021 WL 663181, at *6 (N.D. Ill. Feb. 19, 2021) (dismissing indictment because "ensuring that the grand jury considered the explicit *quid pro quo* element"—which the government argued was

2

implied—was necessary to protect the defendant's constitutional right). The essential element must be "*necessarily* implied." *Id*. (emphasis in original) (quoting *United States v. Palumbo Bros.*, 145 F.3d 850, 860 (7th Cir. 1998)); *see also Gov't of the V.I. v. Moolenaar*, 133 F.3d 246, 249 (3d Cir. 1998); *United States v. DeSalvo*, 41 F.3d 505, 513 (9th Cir. 1994). In other words, even though "a reader of the indictment might reasonably conclude" that an act implies knowledge or intent, "it is not enough that such an inference be reasonable; it must be necessary." *Donager*, 2021 U.S. Dist. LEXIS 31219 at *18, 2021 WL 663181 at *6. If a reader of the indictment could also plausibly infer an act is done for a non-criminal purpose, then knowledge or intent are not necessarily implied. *Id*.

The indictment's validity turns on a disjointed attempt to imply that Mr. Lovette (i) knowingly entered into a "contract, combination . . . or conspiracy" and (ii) did so knowing that the "contract, combination . . . or conspiracy" was intended to restrain competition (the *actus reus* and *mens rea*). *See* Doc. No. 415 at 15. The Government relies on *Metropolitan Enterprises*, but that case stands in stark contrast to Mr. Lovette's case. There, the indictment alleged that competing construction firms agreed to rig bids for highway repaving jobs. 728 F.2d at 453. The competing firms allegedly: "[i] discussed the submission of prospective bids; [ii] agreed among themselves upon a low bidder; [iii] agreed that [one firm] would receive a specified subcontract" for a portion of the highway; and "[iv] submitted intentionally high, noncompetitive bids, or withheld bids." *Id*. None of the allegations against Mr. Lovette rise to the level of those in *Metropolitan Enterprises*. *See* Doc. No. 303 at 2–3.

The Government further argues that it pleaded Mr. Lovette's and the other defendants' "shared understanding" of the conspiracy's intent to fix prices. Doc. No. 415 at 17, 19; Ind. ¶ 48(b).

3

In an effort to save the indictment and its pleading of this "shared understanding," the Government refers to Episode 1 ("QSR-1's Dark Meat, Wings, and 8-Piece COB Supply for 2013") and Episode 7 ("QSR-1's 8-Piece COB Supply for 2015"). Doc. No. 415 at 20–22. In those episodes, however, Mr. Lovette merely (1) receives a coworker's email with a table listing certain competitors and alleged prices (Episode 1) and (2) calls a coworker (Episode 7). Ind. ¶¶ 60, 99(b).[1] As explained below, both allegations of intracompany communications fall far short of "necessarily implying" that Mr. Lovette *knowingly joined and participated* in an inter-competitor agreement intended to fix prices.[2]

First, Mr. Lovette's entirely passive "act" in Episode 1—the receipt of a coworker's email purportedly showing some competitors' prices—cannot support such an inference. On the face of the allegation, nothing indicates the source of the information, let alone suggests that competitors provided the information to fix a bid or price. *Id.* ¶ 60. The indictment itself alleges several instances of *customers* sharing suppliers' prices with other suppliers, *see id.* ¶¶ 54, 105, 124, 139, which demonstrates the Government understands that price-sharing may occur in that context. Customers often engage in this lawful practice to entice one supplier to match or beat another

---

[1] The Government wrongly accuses defendants of asking the Court to "weigh[] the allegations[.]" Doc. No. 415 at 18. Mr. Lovette asks this Court to examine whether the indictment sufficiently *implies* that he knowingly joined and participated in the alleged conspiracy, since the Government admittedly relies on implication to meet its Fifth Amendment burden. Doc. No. 415 at 17.

[2] As discussed in his opening brief, the Government relies on a handful of group-pled conclusory allegations that Mr. Lovette knowingly joined a price-fixing agreement. But only "well-pleaded facts, as distinguished from conclusory allegations, must be taken as true" in an indictment. *See United States v. Morgan*, No. 02-454 JC, 2002 U.S. Dist. LEXIS 30116, at *1–2, 2002 WL 35649573, at *1 (D.N.M. Oct. 1, 2002). The Fifth Amendment compels the Government to plead facts supporting the inference of Mr. Lovette's *actus reus* and *mens rea*, not a group's *actus reus* and *mens rea*. *See* Doc. No. 303 at 7–8.

supplier's price. *See, e.g., Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1193 (N.D. Cal. 2009) (granting summary judgment in part in price-fixing case where the plaintiffs' theory left open the possibility that "defendants' [] customers provided [the competitor's] pricing information -- which is perfectly legal.").[3]

In Episode 11 ("QSR-2 2015 Bone-In Promotional Discount"), for example, the customer informed a supplier of the price discount offered by four other suppliers to persuade the supplier to increase its discount. Ind. ¶ 124. Episode 1 similarly shows a customer's employee, Mike Ledford (RSCS/KFC), telling one supplier about the prices of other suppliers to persuade the supplier to further lower its price. *Id.* ¶ 54. Thus, the Government's minimal allegations concerning Mr. Lovette fail to imply that he even knew the information source was a competitor.[4]

Second, the Government's reliance on Episode 7 leads to the same roadblock. There, the indictment alleges that Mr. Lovette had a telephone call with a Supplier-1 sales manager. Ind. ¶ 99(b). The Government alleges nothing in terms of the purpose or substance of the call, which on its face is a routine business communication. Doc. No. 303 at 8–9. When business communications appear "innocuous in light of the industry practice of intense communication of pricing information" that are "at best, ambiguous[,]" the Court should be "unwilling to infer the prohibited motive [to join a conspiracy]." *United States v. N.L. Indus., Inc.*, Criminal Action No. 89-346,

---

[3] *See also United States v. Gen. Elec. Co.*, 869 F. Supp. 1285, 1300 (S.D. Ohio 1994). There, the court granted the motion for acquittal because of the government's "fundamental flaw" in relying on price-sharing evidence that was "consistent with [a]…customer interested in receiving information about a proposed price increase and willing to give information about one supplier to another supplier." *Id*.

[4] Even if the prices came from a competitor, general price or information sharing between competitors is itself lawful, as discussed in Mr. Lovette's opening brief.

5

1990 U.S. Dist. LEXIS 4171, at *17, 1990 WL 44155, at *5 (E.D. La. Apr. 6, 1990); *see also United States v. Lischewski*, No. 18-cr-00203-EMC-1, 2019 U.S. Dist. LEXIS 108938, at *7, 2019 WL 2716614, at *3 (N.D. Cal. June 28, 2019). The Government thus similarly fails here to show that Mr. Lovette joined a price-fixing conspiracy or did so knowingly.

The Fifth Amendment requires the grand jury to have found probable cause that Mr. Lovette knowingly joined and participated in a price-fixing conspiracy. *See Moore*, 198 F.3d at 795 (citing *Radetsky*, 535 F.2d at 556). Proceeding to trial on anything less with respect to every essential element would violate his Fifth Amendment right, thus warranting dismissal. *Id.*

### III. DESPITE THE GOVERNMENT'S CURSORY ARGUMENT, THE INDICTMENT REMAINS DUPLICITOUS WITH RESPECT TO MR. LOVETTE.

In conclusory fashion, the Government argues the indictment's separate episodes involving Mr. Lovette show "the operation of [a] single price-fixing conspiracy[.]" *See* Doc. No. 415 at 17 n.6. Most relevant here, if Episode 12 ("Distributor-1 Line-of-Credit Term") alleges anything at all, it alleges an independent conspiracy because it differs substantially from the other episodes in its (1) nature, (2) participants, and (3) timing. *See* Ind. ¶ 128. *United States v. Hardy* illustrates why this is so. 762 F. Supp. 1403, 1408–10 (D. Haw. 1991). In *Hardy*, the government charged defendants with a single "conspiracy to launder drug money and to structure financial transactions to avoid reporting requirements[.]" *Id.* at 1407. In that indictment, certain overt acts alleged a financial structuring transaction involving the named defendant and two others, and other overt acts alleged a separate "discrete, self-contained" structuring and money laundering transaction scheme involving different people (except the defendant), which took place eighteen months later. *Id.* at 1408. The court held the single conspiracy count to be duplicitous because the transactions were substantially different with respect to their nature, participants, and timing. *Id.* at 1409-10.

6

Similar to *Hardy*, the Government alleges at most in Episode 12 a standalone agreement with no material nexus to the rest of the indictment. Ind. ¶ 128. Mr. Lovette (employed by Supplier-1) purportedly agreed to let Supplier-5's employee know if Supplier-1 changed its decision not to meet a customer's (Distributor-1's) demand for 65-day payment terms. *Id*. The Supplier-5 employee is not an indicted co-conspirator and appears nowhere else in the indictment. The indictment does not allege that the two individuals agreed to refrain from competing for or negotiating with that customer. It does not even allege that they ever spoke again.

No other episode (1) concerns a credit term, (2) involves Supplier 5's employee, (3) involves the customer (Distributor-1), or (4) occurred in the same year (2016). At most, the other episodes allegedly involve different actors discussing bids and prices (not credit terms) in other years. If Episode 12 can be considered a conspiracy at all, it is a "discrete, self-contained" one. *See Hardy*, 762 F. Supp. at 1408. Because the indictment is duplicitous with respect to Mr. Lovette, it should be dismissed.

### III.   THE GOVERNMENT WRONGLY ASSERTS THE *PER SE* RULE.

#### a.   The Rule of Reason Applies Here.

Although the Government pins a price-fixing label to the indictment, this Court, not the Government, determines whether the *per se* rule or rule of reason applies. *See United States v. Kemp & Assocs.*, No. 2:16CR403, 2019 U.S. Dist. LEXIS 28231, at *6–7, 2019 WL 763796, at *2 (D. Utah Feb. 20, 2019). The Court is not bound by the Government's conclusory labels in making that determination. *See Apex Oil Co. v. DiMauro,* 713 F. Supp. 587, 597 (S.D.N.Y. 1989) ("[T]he mere talismanic invocation of the term 'price-fixing' is [in]sufficient to bring the *per se* rule to bear."); *Nat'l Ass'n of Review Appraisers & Mortg. Underwriters v. Appraisal Found.,* 64

7

F.3d 1130, 1133 (8th Cir. 1995) ("Organizations are free to associate [and] share information . . . . [I]n the absence of any showing that the challenged practices are anticompetitive on their face, we will apply the rule of reason to determine if there is an antitrust violation.").

In labeling this a *per se* case based on information-sharing allegations, rather than by pleading facts showing the existence of a conspiracy to fix prices, the Government relies upon three cases—only two of which are at all relevant. Doc. No. 415 at 23.[5] The allegations against Mr. Lovette fall far short of the conduct in those two cases, and thus both are unavailing for the Government. In *United States v. Foley*, the jury found that representatives from competing real estate firms **explicitly** agreed to raise their commission rates at a dinner party. 598 F.2d 1323, 1331-32 (4th Cir. 1979). The jury also found that multiple defendants sought to "hold their fellow[] [co-conspirators] to the 'agreement.'" *Id*. at 1332. *United States v. Consolidated Packaging* involved a corporation-defendant arguing on appeal that there was insufficient evidence to infer a price-fixing conspiracy that it knowingly joined. 575 F.2d 117, 120 (7th Cir. 1978). In that case, however, seventy (of seventy-three) defendants pleaded *nolo contendere*. *Id*. Several of the corporation's former employees also testified that it "knowingly joined" the price-fixing conspiracy. *Id*. at 127. The evidence at trial supported their testimony: when a customer requested bids, the suppliers "would contact the present supplier and exchange price information to insure that the new bidder would not undercut the price of the other." *Id*. at 121. The suppliers also used specific codewords (*e.g.*, "on" and "off the phone") to indicate who was cooperating in the bid-rigging scheme. *Id*. at 121.

---

[5] The first one that the Government cites in its string-cite is a civil rule of reason case and is irrelevant here. *Todd v. Exxon Corp.*, 275 F.3d 191, 198-99 (2d Cir. 2001).

In stark contrast to this case, neither the Government's group-pled conclusory allegations nor the allegations in the fourteen episodes rise to the level of those two cases. Unlike in those cases, the rule of reason should apply to the allegations of information sharing here, and thus, the Court should dismiss the indictment for this reason as well. *See* Doc. No. 303 at 12-13.

      **b.**      **As Charged in this Case, the Sherman Act is Unconstitutionally Vague.**

The Government's use of the *per se* label to define when an alleged violation is a felony – as contrasted with a civil violation – fails constitutional muster under the Supreme Court's recent caselaw. In *Sessions v. Dimaya*, the Supreme Court struck down 18 U.S.C § 16(b) of the Immigration and Nationality Act as unconstitutionally vague based on the residual clause's definition of "crime of violence." 138 S. Ct. 1204 (2018). This followed its striking down of 18 U.S.C. § 924(e)(2)(B)(ii) of the Armed Career Criminal Act as vague based on the definition of "violent felony." *Johnson v. United States*, 576 U.S. 591 (2015); *see also United States v. Davis*, 139 S. Ct. 2319 (2019) (holding that 18 U.S.C. § 924(c)(3)(B) is vague following *Sessions* and *Johnson*). These cases stand for the principle that the use of broad, amorphous, and changeable categories of conduct to criminally charge a defendant runs afoul of the Fifth Amendment. Here, the Government's labeling this a *per se* case – thus lowering the Government's burden – presents the same vagueness issue as labeling conduct a "crime of violence" or "violent felony." The cases further demonstrate that a history of decisions upholding a defective statute should not be a barrier to a proper constitutional result.

Further, a line of Supreme Court cases requires that courts apply a limiting construction to avoid striking down statutes as unconstitutionally vague. *See, e.g., Rehaif v. United States*, 139 S. Ct. 2191, 2193 (2019); *Skilling v. United States*, 561 U.S. 358, 410 (2010); *United States v. X-*

9

*Citement Video*, 513 U.S. 64, 72 (1994). The Sherman Act requires a "[1] contract, combination . . . or conspiracy, [2] in restraint of trade or commerce [3] among the several States" and [4] that Mr. Lovette "knowingly joined and participated in the conspiracy." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473, 480 (10th Cir. 1990); 15 U.S.C. § 1. The indictment alleges no facts showing (1) the existence of a "contract, combination . . . or conspiracy" to fix a single bid or price or (2) that Mr. Lovette knowingly joined the "contract, combination . . . or conspiracy[.]" *Suntar*, 897 F.2d at 480. By labeling this a *per se* case subject to felony prosecution, the Government's actions risk rendering the statute vague, unless the rule of reason applies. The Government's protests that it need not plead the essential elements—relying merely on implication—but can still invoke the *per se* rule presents an aggressive proclamation of its power that it can enforce criminal statutes however it wants regardless of vagueness concerns.

## CONCLUSION

Mr. Lovette respectfully asks that this Court dismiss the superseding indictment as to him.

This 10th day of September 2021.          Respectfully Submitted,

/s/ John A. Fagg, Jr.
John A. Fagg, Jr.
James P. McLoughlin, Jr.
Frank Schall
Kaitlin Price
**Moore & Van Allen PLLC**
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Telephone:  704-331-3622
Email:  johnfagg@mvalaw.com

*Attorneys for William Wade Lovette*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of September 2021, I electronically filed the foregoing **DEFENDANT WILLIAM LOVETTE'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ John A. Fagg, Jr.