IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>1.    JAYSON JEFFREY PENN,<br>2.    MIKELL REEVE FRIES,<br>3.    SCOTT JAMES BRADY,<br>4.    ROGER BORN AUSTIN,<br>5.    TIMOTHY R. MULRENIN,<br>6.    WILLIAM VINCENT KANTOLA,<br>7.    JIMMIE LEE LITTLE,<br>8.    WILLIAM WADE LOVETTE,<br>9.    GARY BRIAN ROBERTS, and<br>10.  RICKIE PATTERSON BLAKE,<br><br>    Defendants. | Criminal Case No. 20-cr-00152-PAB |

**DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE REFERENCES TO OR EVIDENCE ABOUT COMPLIANCE POLICIES, CODES OF CONDUCT, OR EMPLOYMENT DECISIONS**

Defendants, by and through undersigned counsel, respectfully submit this Motion in Limine to Exclude References to or Evidence About Compliance Policies, Codes of Conduct, or Employment Decisions.

**INTRODUCTION AND BACKGROUND**

Some Defendants' employers adopted internal policies about fair competition ("Compliance Policies"). For example, for at least a portion of the charged conspiracy period, both Pilgrim's Pride and its parent company, JBS, adopted internal codes of conduct and ethics, which contained brief passages calling on employees to abide by principles of free and fair competition. JBS Code of Conduct and Ethics ¶ 3.13; Pilgrim's Pride Code of Conduct and

1

Ethics ¶ 3.13 (Aug. 6, 2018). The Court should exclude references to or evidence about any Compliance Policies or codes of conduct adopted by Defendants' employers because they are irrelevant and prejudicial. The policies and codes have nothing to do with the government's burden of proof, any element of the charged offense, or the Defendants' purported guilt. This case concerns alleged violations of the Sherman Act, not any company's internal policies or mores, and the Compliance Policies cannot stand in for the statute. Any evidence about the Compliance Policies or codes of conduct would also be highly prejudicial because a jury could wrongly conflate the internal guidelines—and the suggestion that Defendants failed to comply with them—with proof that Defendants violated the Sherman Act.

Relatedly, some employers fired certain Defendants. For example, Pilgrim's terminated Mr. Penn in 2020, several months after he was named in the government's initial indictment. The Court should exclude as irrelevant and unfairly prejudicial evidence about any employer's employment decisions. The fact that an employer terminated a Defendant has no bearing on whether any Defendant violated the Sherman Act as charged. That is true even if the employment decision is the direct result of the indictment—internal employment decisions are not probative of criminal liability. Evidence regarding any Defendant's termination would also be highly prejudicial because a jury could wrongly conflate the human resources and corporate considerations leading to termination with proof of criminal wrongdoing. This kind of evidence or argument would also delay the trial for a sideshow issue, as Defendants would need to introduce rebuttal evidence. For example, Pilgrim's terminated Mr. Penn four months after Mr. Penn had been charged, and after Pilgrim's had made multiple presentations to the government arguing that it (and its employees) had not violated the antitrust laws, as confirmed by an internal

investigation. Mr. Penn would be entitled to put those and other facts before the jury. The Court should preclude the government from making references to or introducing evidence about any Defendant's termination or any Compliance Policies or codes of conduct at Defendants' employers.

## LEGAL STANDARD

Evidence is relevant only when it "make[s] a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. "Unfair prejudice" under Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 advisory committee's note). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id*. The Court "has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect." *Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971).

## ARGUMENT

**I.     The Court Should Exclude Evidence About Compliance Policies and Codes of Conduct.**

It is settled law that an employee's violation of internal employment guidelines is neither a crime nor evidence of one. *See United States v. Stoecker*, 920 F. Supp. 867, 874 (N.D. Ill. 1996) (it "is beyond dispute" that violation of "internal operating rules" does not "constitute a

3

federal offense"). In the antitrust context, for instance, evidence about a corporate policy may show that an employee violated that policy, but it "does not show an explicit agreement" to do something illegal under the Sherman Act. *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, No. 5:19-cv-00078-EJD, 2020 WL 5106851, at *14 (N.D. Cal. Aug. 31, 2020) (dismissing Section 1 claim because evidence that parties "violated a compliance policy" by exchanging information "does not show an explicit agreement" to fix prices under antitrust law). Indeed, telling a jury about compliance policies—which reflect a company's view of desired employee behavior and not the law—"undermine[s] the Court's role as the jury's sole source of law applicable to [the] case" and creates "significant risk that the jury will be misled" as a result. *United States v. North*, No. 3:06-cr-323 (CFD), 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (excluding antitrust compliance policy). While compliance policies and codes of conduct often reference law, they are not court sanctioned. Such policies often reflect a company's "legal conclusions as to the scope and meaning of the Sherman Act," but that reflection carries no legal weight. *Id.*; *see also* Order, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503-DJC (D. Mass. Mar. 8, 2018), ECF No. 1089 (excluding "policies against price fixing, payoffs or not being paid for delayed product entry" as irrelevant and unduly prejudicial). Indeed, corporate antitrust compliance policies often prohibit conduct that is perfectly legal—such as discussion of pricing with competitors—because of a corporate decision to avoid conduct that could raise questions.

In *In re Urethane Antitrust Litigation*, for example, the court excluded the defendant-company's antitrust compliance policies where the policies included the company's "interpretation of the antitrust laws" and "internal advice to employees on how to avoid conduct

4

that could be misconstrued as a violation of those laws." No. 2:08-cv-5169 (WJM-MF), 2016 WL 475339, at *2 (D.N.J. Feb. 8, 2016). The court reasoned that the issues of whether employees "believed they violated [the company's] antitrust policies" and "the manner in which [the company] interpreted its own antitrust policies" were "irrelevant" to the Sherman Act question. *Id*. It further explained that even if the evidence were somehow relevant, "the testimony could confuse the jury on what the governing law was" and "create prejudice far too great to be cured by a limiting instruction." *Id.*; *see also MM Steel, LP v. Reliance Steel & Aluminum Co.*, No. 4:12-cv-1227, 2013 WL 6588836, at *3 (S.D. Tex. Dec. 16, 2013) ("The Court is of the opinion that the various [antitrust] compliance policies . . . present a significant risk that the jury will be misled as to the Sherman Act's proper scope and interpretation."); *North*, 2007 WL 1630366, at *1 (same). The same result should follow here. Any Compliance Policies or codes of conduct have no bearing on whether Defendants violated the Sherman Act, and their introduction would unduly prejudice Defendants and confuse the jury.

The introduction of evidence about Compliance Policies or codes of conduct would also unduly delay trial as Defendants would need to introduce rebuttal evidence about the history, publication, training, enforcement, and corporate purpose of each Compliance Policy and code of conduct. *See English v. District of Columbia*, 651 F.3d 1, 10 (D.C. Cir. 2011) (affirming exclusion of evidence about violations of police department policy because admission "would cause big time confusion of the issues, and preventing such confusion would require the admission of the conclusions to be hedged with jury instructions and necessitate a trial within a trial about the whole District of Columbia disciplinary system"). The Court should preclude the

5

government from making references to or introducing any evidence about Compliance Policies or codes of conduct.

## II.     The Court Should Exclude Evidence About Any Employment Decisions.

The Court should also exclude evidence about any employment decisions involving Defendants, including Pilgrim's 2020 termination of Mr. Penn. The fact that a company terminated one of its officers or employees does not make a Defendant's alleged violation of the Sherman Act "more or less probable." Fed. R. Evid. 401. This is true even if an employer terminated a Defendant as a result of his being charged with a crime. The termination is irrelevant, prejudicial, and improper character evidence.

To begin, employment decisions are evidence of nothing more than a company's own approach to human resources, not whether a Defendant violated the Sherman Act or any other law. The evidence is therefore irrelevant. In *Chalco v. Belair*, No. 3:15-cv-340 (VLB), 2019 WL 456162 (D. Conn. Feb. 5, 2019), for instance, plaintiffs sought to introduce evidence about the defendant's workplace discipline and ultimate termination pursuant to department use-of-force policies. *Id*. at *9. The court found that the defendant's termination was inadmissible because it did not make the allegations against him (excessive force, assault, and intentional infliction of emotional distress) any more likely given that "defendant's termination decision" was not "governed by [the state law] standard[s] relevant to [the] case" and was therefore "completely irrelevant to the jury's determinations." *Id.*; *see Kelley v. City of Pine Bluff*, No. 5:02-cv-00165, 2004 WL 5502113, at *1 (E.D. Ark. Jan. 26, 2004) (similar). The same reasoning applies here. Any Defendant's termination was not governed by the Sherman Act.

Evidence about a Defendant's termination is also highly prejudicial. To the extent a

6

Defendant's termination has some connection to the Superseding Indictment, evidence about the "termination and the circumstances surrounding it" would "interject" an "employer's opinion about the wrongfulness of the same conduct for which the defendants are on trial." *United States v. Jackson*, 863 F. Supp. 1462, 1471 (D. Kan. 1994). The jury might then "be confused into believing the employer's termination amounts to a determination of the defendants' guilt." *Id*. (excluding evidence); *see Chalco*, 2019 WL 456162, at *9 (excluding defendant's termination where decision was "governed by" inapplicable standard and would "impermissibly risk confusing the issues, misleading the jury, causing undue delay and wasting time").

Evidence about an employee's termination can also create an impression with the jury that because a former employee potentially "violated institutional policy on one occasion," he also violated the law as charged. *Glaze v. Childs*, 861 F.3d 724, 726 (8th Cir. 2017) (excluding evidence that defendant resigned after violating institutional policy because jury might wrongly conclude defendant generally "disregard[ed]" "standards of conduct"). That is exactly the type of propensity evidence the Federal Rules bar—it "forces the defendant to defend past conduct and carries the prospect of showing that the defendant is generally bad." *Jackson*, 863 F. Supp. at 1469; *see, e.g.*, *Chalco*, 2019 WL 456162, at *9 (excluding defendant's termination because it would "confus[e] the issues, mislead[] the jury, caus[e] undue delay and wast[e] time"); *Redd. v. N.Y. State Div. of Parole*, 923 F. Supp. 2d 393, 400 (E.D.N.Y. 2013) (excluding defendant's "disciplinary history" because it posed "danger of prejudice, confusion of the issues, and undue delay"). References to and evidence about any Defendant's termination are therefore inadmissible.

## CONCLUSION

For the reasons discussed, the Court should exclude references to or evidence about Compliance Policies, codes of conduct, or employment decisions.

Dated: October 1, 2021

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP-DC
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

<div style="display: flex;">
<div>

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700

cgillen@gwllawfirm.com

</div>
<div>

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514

bpollack@robbinsrussell.com

</div>
</div>

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

<u>*s/ Michael F. Tubach*</u>
Michael F. Tubach