IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. **WILLIAM WADE LOVETTE,**
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

     Defendants.

---

### UNITED STATES' CONSOLIDATED OPPOSITION TO DEFENDANTS' NON-*IN LIMINE* MOTIONS[1]

---

The government respectfully submits this consolidated response to motions the defendants filed on the motions *in limine* deadline of October 1, but which are not actually proper motions *in limine* requesting inclusion or exclusion of evidence. *See* Black's Law Dictionary (11th ed. 2019).

---

[1] ECF 518, 519, 520, 522, 525, and 529.

### 1. A Case-Specific Questionnaire [ECF 519] Will Hamper, Not Promote, Judicial Economy

The defendants' request for a five-page, case-specific jury questionnaire is unnecessary and inefficient. That this Court's standard practice does not include a questionnaire belies the defendants' assertion that they and the Court cannot "meaningfully explore juror bias," ECF 519 at 4, without one. And this case presents no reason to deviate from the Court's usual practice.

In-court *voir dire* is more efficient than the defendants' proposed questionnaire, which would hamper, rather than promote, judicial economy. The defendants suggest that prospective jurors would fill out the questionnaire on the first morning of jury selection, but that process would either give the parties and the Court little time to digest the written responses, or invite delay attendant to parsing handwritten answers to thirty-four questions and their sub-parts. Moreover, many of the questionnaire's topics—the ones properly aimed at detecting jurors' relevant experiences and biases—will be covered by the government's proposed *voir dire* questions. The Court or defense counsel can explore other topics, to the extent the Court determines they are appropriate, during brief attorney *voir dire*.

### 2. Forty-Five Minutes of Defendants' *Voir Dire* [ECF 518] is Unnecessary

The defendants' request for forty-five minutes of *voir dire* would unnecessarily extend jury selection. This Court's Practice Standards for Criminal Cases provide that the Court will conduct a *voir dire* examination of the jury, followed by fifteen minutes for each side. The government of course recognizes that the Court may need to adjust its standards in this ten-defendant case, but the defendants have thus far been able to

2

coordinate on many aspects of their defense, *e.g.*, joint motions, consolidated cross, etc., and can do the same here.

### 3. The Court's Jury Trial Protocols are Appropriate [ECF 522]

The Court should overrule the defendants' objection to jury protocols because the Court's existing protocols, with adaptations to accommodate a ten-defendant case, permit the Court to administer justice with appropriate safeguards in light of the ongoing pandemic. The defendants' objection, if sustained, would undermine the Court's efforts to protect courtroom entrants and the public at large.

*Masks*. The Court should overrule the defendants' objection as it relates to masks. Wearing masks in public indoor settings is widely recommended;[2] clear plastic face shields are inadequate substitutes.[3]

Face-mask requirements do not infringe on the defendants' constitutional rights. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal

---

[2] Both the Centers for Disease Control and Prevention ("CDC") and the Safer Federal Workforce Task Force recommend that fully vaccinated people wear a mask in public indoor settings in areas of substantial or high transmission, such as Denver County. *See* CDC, *Guidance for Fully Vaccinated People* (Sept. 1, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html; Safer Federal Workforce, *Protecting the Federal Workforce During the COVID-19 Pandemic*, https://www.saferfederalworkforce.gov/overview (last visited Oct. 4, 2021).

[3] The CDC "does not recommend using face shields . . . as a substitute for masks." CDC, *Guidance for Wearing Masks* (Apr. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html.

quotation omitted) (emphasis in original). In other words, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," such as mitigating a pandemic. *Maryland v. Craig*, 497 U.S. 836, 849 (1990) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).

In the context of the pandemic, courts have consistently concluded that requiring witnesses to wear masks covering their noses and mouths is a necessary safeguard that does not deprive a defendant of any constitutional rights. *See, e.g., United States v. Crittenden*, No. 20-cr-7, 2020 WL 4917733, at *7 (M.D. Ga. Aug. 21, 2020); *United States v. Clemons*, No. 19-cr-0438, 2020 WL 6485087, at *2-3 (D. Md. Nov. 4, 2020); *United States v. James*, No. 19-cr-8019, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020). In any event, the government is in the process of purchasing clear masks that will permit the unobstructed observation of its witnesses' faces, thus resolving the defendants' concerns in that regard.

As with witnesses, numerous courts have also held that requiring jurors to wear masks passes muster. *United States v. Thompson*, No. 19-cr-1610, 2021 WL 2402203, at *5 (D.N.M. June 11, 2021); *United States v. Trimarco*, No. 17-CR-583, 2020 WL 5211051, at *5, at *15 (E.D.N.Y. Sept. 1, 2020); *James*, 2020 WL 6081501, at *3.

*Seating Arrangement*. The Court should overrule the defendants' objection to seating arrangements. Placing some jurors in the gallery is a reasonable and appropriate safeguard that does not violate due process. The courtroom is equipped with screens that enable anyone in the gallery a full view of the evidence. Jurors will

4

therefore be able to assess the presentation of evidence, and the defendants will be able to see the jury's reaction by turning their heads only a few more degrees to the right.

The Court's protocol for spacing jurors is consistent with that of other federal courts conducting jury trials amid the COVID-19 pandemic. *See, e.g.*, *United States v. Sapalasan*, No. 3:18-cr-00130, 2021 WL 2080011, at *2 (D. Alaska May 24, 2021) (describing that jurors must be spaced throughout the courtroom gallery rather than the jury box); *Crittenden*, 2020 WL 4917733, at *5 (describing that "[j]urors will not be seated in the traditional jury box [but instead] [t]hey will be spaced out at least six feet apart in the public gallery area [and] spectators shall be seated in the balcony maintaining a distance of six feet apart").[4]

<u>Unvaccinated Jurors</u>. The Court should overrule the defendants' objection to unvaccinated jurors. Questioning potential jurors on vaccination status, contacts with persons diagnosed with COVID-19, and the existence of risk factors is no different from asking about other medical information that could affect jury service. And, regardless, the Court's protocol expressly contemplates empaneling unvaccinated jurors, so there is no risk of unfairly constricting the jury pool.

---

[4] The defendants' reliance on *United States v. Young*, No. 19-cr-00496, 2020 WL 3963715, at *2 (D. Colo. July 13, 2020), is misplaced. Young was before the court on a *sua sponte* motion to continue trial, and the Court did not address any of the issues for which the defendants rely upon the case.

### 4.  The Standard Ten Peremptory Challenges Are Sufficient [ECF 525]

The Court should not grant the defendants' request for twenty peremptory challenges; the standard ten is sufficient, especially as defendants already have unlimited for-cause challenges and four more peremptory challenges than the government.

Rule 24 provides that "the government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges." FED. R. CRIM. P. 24(b)(2). However, Rule 24 reflects a mere policy choice and not a right; there is "no freestanding constitutional right to peremptory challenges." *Turley v. Estep*, 375 F. App'x 867, 869 (10th Cir. 2010) (quotation omitted). And although the Court has discretion under the rule to allow additional challenges, "[m]ultiple defendants have no right to more peremptory challenges than given them by the rule, even when they disagree on how to exercise them, as long as they are given trial by an impartial jury." *United States v. Hueftle*, 687 F.2d 1305, 1309 (10th Cir. 1982).

The defendants' assertion that they need additional challenges because there are ten defendants who worked for different companies in different positions with varying responsibility and levels of authority, ECF 525 at 3-4, is insufficient. The defendants fail to explain why that matters. Indeed, the defendants' interests appear more aligned than divergent, as evidenced by their jointly filed briefs and their appointing one defense lawyer to cross-examine SA Taylor at the *James* hearing on common issues. As with the possible coordination on *voir dire*, the defendants should do the same with peremptory challenges.

To the extent the Court is inclined to grant the defendants additional peremptory challenges, the number should be less than ten. Twenty peremptory challenges is more than triple the number allowed to the government, and would risk skewing the composition of the jury in the defendants' favor even more than the rule already allows. *See United States v. Haldeman*, 559 F.2d 31, 79 (D.C. Cir. 1976) (judge's decision to limit defendants' additional challenges "reflects a legitimate concern with the wisdom of providing one side with a far greater number of challenges than the other"). And if the defendants are granted additional challenges, the government should be granted a proportional number of additional challenges as well.

### 5. The Defendants' Proposed Substantive Preliminary Instruction [ECF 520] Should Be Rejected

The Court should reject the defendants' request for a substantive preliminary instruction. Despite the defendants' attempts to frame the Sherman Act offense as "particularly complex," ECF 520 at 3, it is relatively straightforward. To convict, the jury only needs to find three elements beyond a reasonable doubt: there was a conspiracy to fix prices and rig bids, each defendant knowingly joined it, and the conspiracy affected interstate or foreign commerce. *See* 15 U.S.C. § 1; *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 445-46 (1978); *see also* Order Denying Mots. to Dismiss (ECF 553) at 4. As the defendants have already conceded, the agreement itself is the crime. ECF 243 at 2 ("[T]he crime is the agreement itself and . . . success or even overt acts are not elements of the offense[.]"). A substantive preliminary instruction is therefore unnecessary.

If the Court is inclined to give a preliminary instruction, it should be limited to the elements of price fixing and bid rigging. That is the approach adopted by the Tenth Circuit's pattern instructions, and there is no reason to deviate here. *See* Tenth Circuit Pattern Jury Instruction No. 1.01 (2021 ed.) (updated Apr. 2, 2021) (contemplating discussion only "of the elements of the offense . . . if they are to be set out."). Any preliminary instruction should not include a distinction between the type of conduct that is or is not lawful, such as price exchange versus price fixing. That is an incorrect or, at best, a misleading and incomplete statement of the law, as the Court recognized just yesterday in denying the motions to dismiss. ECF 553 at 8-9.

### 6. The Superseding Indictment Will Assist the Jurors in Deliberations [ECF 529]

The Court should exercise its discretion to provide the Superseding Indictment to the jury to assist in deliberations, in lieu of the Court's practice of reading the document to the jury.[5] As a practical matter, the Superseding Indictment in this case does not lend itself to reading aloud: it is long, and contains anonymized names and many tables. Instead, the Court should allow the jury to read the Superseding Indictment for themselves if they choose.

The Court has discretion whether to provide the Superseding Indictment to the jury. *United States v. Sullivan*, 108 F. App'x 579, 581 (10th Cir. 2004); *United States v. Klein*, 93 F.3d 698, 703 (10th Cir. 1996), and doing so can "help the jury to understand the nature of the government's allegations." *United States v. Beasley*, No. 13-cr-10112,

---

[5] The defendants argue, contrary to the government's understanding of the Court's usual practice, that the Superseding Indictment should not even be read to the jury.

2016 WL 502023, at *19-20 (D. Kan. Feb. 8, 2016) (denying motion to exclude the indictment from the jury room during deliberations). The jury will hear a significant amount of evidence regarding the defendants' conspiracy. Providing the jurors with a copy of the Superseding Indictment, which details the nature and extent of the conspiracy, will more readily enable them to distill the evidence as they deliberate. And an instruction providing that the indictment is not evidence will remedy any concern about unfair prejudice. *See United States v. Skolek*, 474 F.2d 582, 586 (10th Cir. 1973) (affirming trial court's decision to submit indictment to jury where such instruction was given). In the alternative, the government will be prepared to submit a summary of the Superseding Indictment to go back with the jury or read aloud to them.

Dated: October 5, 2021          Respectfully submitted,

/s/ Michael Koenig
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
michael.koenig@usdoj.gov
Attorneys for the United States