IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.   **JAYSON JEFFREY PENN**,
2.   **MIKELL REEVE FRIES**,
3.   **SCOTT JAMES BRADY**,
4.   **ROGER BORN AUSTIN**,
5.   **TIMOTHY R. MULRENIN**,
6.   **WILLIAM VINCENT KANTOLA**,
7.   **JIMMIE LEE LITTLE**,
8.   **WILLIAM WADE LOVETTE**,
9.   **GARY BRIAN ROBERTS**, and
10. **RICKIE PATTERSON BLAKE**,

       Defendants.

**DEFENDANTS' RESPONSE IN OPPOSITION TO GOVERNMENT'S NOTICE REGARDING USE OF SELF-AUTHENTICATING EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11), 902(13), AND 902(14)**

The Government has filed a notice stating its intention to offer certified records of alleged regularly conducted activity into evidence pursuant to Federal Rules of Evidence 902(11), 902(13), and 902(14). *See* Doc. # 546, p. 1. It has submitted nearly 60 certifications from 36 different entities. *See* Doc. # 546-1, pp. 2-13. The certifications include *millions* of underlying records that the government claims are self-authenticating under Rule 902—in one instance 14,978,080 pages of documents produced by Tyson Foods, Inc. *Id*. at 782.

Defendants object to the government's attempt to certify "electronic written communications, contracts, and other business documents" produced by poultry suppliers and

-1-

purchasing cooperatives through FRE 902 because it fails to satisfy the rule's basic requirements.[1] The government has not provided defendants with a "fair opportunity" to challenge the certifications. Fed. R. Evid. 902(11). The government filed its notice of intent to self-authenticate millions of documents 25 days before trial. It is not practicable for Defendants to review and assess the authenticity of such an extraordinary volume of documents in this short time frame. The government did not identify which of these documents it intends to use in its case in chief. Instead, the government seeks to authenticate millions of documents en masse -- including emails, texts, and handwritten notes as well as other records -- without cross-examination and a meaningful opportunity for the defense to review. Moreover, many of the individuals who signed the certifications are not "qualified" under Fed. R. Evid. 902. If allowed to succeed, the government's indiscriminate and improperly certified document dump would circumvent the protections of the Federal Rules of Evidence and threaten defendants Confrontation Clause rights. The Court should hold that these documents are not self-authenticating.

## LEGAL STANDARD

In order to authenticate an item of evidence, the proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Certain types of evidence may be self-authenticating, including certified "domestic records of a regularly conducted activity," "records generated by an electronic process or system," and "data copied from an electronic device, storage medium or file." Fed. R. Evid. 902(11), (13), (14). The proponent of self-authenticating records "must give an adverse party

---

[1] Defendants do not object to the certifications related to toll records and extractions of electronic devices.

*reasonable* written notice of the intent to offer the record—and *must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them…*". Fed. R. Evid. 902(11) (emphasis added). The proponent also "must present a certification containing information that would be sufficient to establish authenticity were that information provided by a witness at trial." Fed. R. Evid. 902 Advisory Committee Notes (2017 Amends). The certifications must be made by "the custodian or another qualified person." FRE 902(11).

"The notice requirement in Rule[ ] 902(11) and (12)… is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Fed. R. Evid. 902 Advisory Committee Notes (2000 Amends.).

## ARGUMENT

The Government's Notice falls far short of the requirements of Rule 902. Rather than offering a targeted set of documents that it intends to use in its case in chief and providing defendants with a reasonable opportunity to review them, the government seeks to self-authenticate millions of documents en masse -- most of the records that it has dumped on the defendants over the past 15 months. These documents include emails, texts, and handwritten notes and millions of records that the government may or may not use at trial. This document dump fails Rule 902(11)'s requirement that the Government make the actual "records" which it seeks to admit at trial available for inspection by the parties. *See* Fed. R. Evid. 902(11).

In addition, "[w]hile the rule does not establish what constitutes a fair amount of time, the time must be of such a duration so that the 'affidavit can be vetted for objection or impeachment in advance.' *United States v. Olguin*, 643 F.3d 384, 390 (5th Cir. 2011) (citing *United States v.*

*Brown*, 553 F.3d 768, 793 (5th Cir. 2008)). It is impracticable for Defendants to evaluate the 60 certifications covering millions of documents in the 21 days before the start of trial.

In *United States v. Green*, 648 F. 3d 569 (7th Cir. 2011), the Seventh Circuit warned the Government against this type of data dumping tactic, there on the fractionally smaller scale of hundreds of documents, not the millions that the government advances here:

> Rule 902(11) is a powerful and efficient short-cut, but it includes important built-in safeguards that cannot be taken lightly. Those safeguards include providing opposing counsel with advance notice of any Rule 902(11) certifications to give that party "a fair opportunity to challenge" the certifications, which could involve calling the certificate's signer to testify as Green demanded here. *See* Fed. R. Evid. 902(11); *see also United States v. Adefehinti*, 510 F.3d 319, 327-28, 379 U.S. App. D.C. 91 (D.C. Cir. 2008) (amended opinion). . . . The government was treading on dangerous ground by using Rule 902(11) here to introduce not just these but hundreds of other records to prove the truth of the matters asserted without regard to the many layers of hearsay and the Confrontation Clause rights that those records may have implicated.

*Id.* at 580. If this Court were to approve the Government's tactic, the Government's cynical effort to render Rule 902's protections meaningless would succeed and will be recycled in every complex prosecution with a cite to this Court' decision. Given the Government's flouting of Rule 902's requirements, the Court should decline to hold that the millions of records proffered by the Government are self-authenticating.

**I.    The Tyson Foods Certifications**

The two certifications from Tyson Foods highlight the deficiencies in the government's attempt to meet the requirements of FRE 902. *See* Doc. # 546-1, pp. 780, 782. The certifications are made under oath by the same employee of an entity called Tyson Shared Services, Inc., and claim to authenticate records with the page number ranges TY-000000100 through TY-007000987, TF-0000000001 through TF-0007971851, and CV-0000000001 through CV-

0000005242. *Id*. This is a staggering, approximately 14,978,080 pages, including text messages (e.g., TY-001642699, TY-001642700). The Government seeks to have the right to submit these millions of documents as evidence *en masse*, without cross-examination and without scrutiny. *Id*. The employee swears under oath that she is familiar with how the 14,978,080 pages of were created, managed, and stored. *Id*. The certifications also state that "*all* the records listed in this certificate" were generated by an electronic process or system that produces an accurate result; were generated by a person with knowledge of the matters; were kept in the ordinary course of business activity of Tyson Foods, Inc. (Tyson); and were made by Tyson as a regular practice. Considering the questionable proposition that single person has reviewed 14,978,080 pages of evidence—a task which defense teams for 10 defendants have not managed in 16 months—the averments in the certifications are suspect, at best. The millions of records include a wide variety of categories of documents, including communications with third-parties. Moreover, there is nothing in the certifications to show that the Tyson employees is "a qualified person" under Fed. R. Evid. 902(13) to provide certifications concerning electronic processes or systems. *Id*. *See Brown*, 553 F.3d at 792 (finding that a certification from an affiant "[w]ho knew the computer system, how to operate the system, and how to extract information from it," but did not know about the business's]record keeping" was insufficient).

## II.     The Mar-Jac Poultry Certifications

The government advances two certifications from Mar-Jac Poultry, Inc. (Mar-Jac). *See* Doc. # 546-1, pp. 776, 778. The certifications purport to authenticate almost 525,000 documents (consisting of nearly 1.5 million pages) solely pursuant to Rule 902(13). *Id*. at 3. The certificates are signed by Joel Williams, Vice President Operations at Mar-Jac, an individual who is not a

"qualified person" under Rule 902. Advisory Committee Notes, Fed. R. Evid. 902 (defining a "qualified person" as someone who would be able to "establish authenticity were that information provided by a witness a trial"). According to his certification, Mr. Williams has no personal knowledge of any of the documents or how they are managed, maintained, or stored. Rather, his sole basis to sign the certification is "information provided to [him] by employees of Mar-Jac Poultry, Inc., its affiliates, and counsel." *Id*. at 776, 778. Mr. Williams also does not certify that he has any personal knowledge of any "electronic process or system" or how that "electronic process or system" "generated" any records, even though that is the sole focus of Rule 902(13). *Id*.

Additionally, even a cursory review shows that the Mar-Jac certification includes many documents that were not "generated by electronic process or system" and therefore are not self-authenticating under Rule 902(13). These include documents with handwritten notations, *see, e.g.*, MAR-JAC_0000865535-37; MAR-JAC_0000865047-48; MAR-JAC_0000865074-77; and documents that were written *entirely* by hand, *see, e.g.*, MAR-JAC_0000865083; MAR-JAC_0000865298; MAR-JAC_0000865502. None of these documents were generated by electronic process or system. And while one Mar-Jac certification claims it does not apply to "hard-copy documents . . . not maintained electronically on its servers," the Court and Defendants are left to guess to which of the 525,000 documents this carveout applies. *Id*. at 778. Additionally, the issue under Rule 902(13) is not whether a document was *stored* on Mar-Jac servers, but whether a document was *generated* by an electronic process or system. *United States v. Meienberg*, 263 F.3d 1177, 1181 (10th Cir. 2001) ("[C]omputer printouts [a]re not the result of a process or system," they are "merely printouts of preexisting records that happened to be stored

on a computer"). The Rule is meant to encompass things like "GPS data, cell phone photos, and text messages." *United States v. Ramadan*, 2021 WL 2941956, at *1 (E.D. Mich. July 13, 2021). It does not encompass every document that happens to be maintained on, printed from, or scanned into a computer. The Mar-Jac certifications do not satisfy Rule 902(13).

### III. The Pilgrims Pride "Declarations"

The government advances two declarations which purport to apply to 1,002,878 Pilgrim's Pride documents pursuant to Rules 902(11) and 902(13). *See* Doc. # 546-1, pp. 25-771. The person who signed the certification, the IT Director of an entity called JBS USA Food Company, claims that each of the hundreds of thousands of emails and other documents he certified were records made "at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters." *Id*. at 25. The IT Director cannot possibly know such facts. Contradicting this statement, the IT Director later in the same certification backtracks with the following statement: "I do not certify to the contents of any email, attachment or document, *including, but not limited to, whether the contents of such materials meet the requirements of Rule 803(6)*." Ex. 4-1, 4-2 (emphasis added). A record's content is admissible as self-authenticating only to the extent the custodian can verify the content's authenticity, as required by Rule 902(11) and Rule 803(6). *See United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016). Where a custodian cannot do so, they have not established that the document's content is a business record or self-authenticating. *Id*. at 410-411.

### IV. The Government's Claxton Poultry Certifications

The Government attaches two certifications relating to Claxton Poultry Farms (Claxton). See Doc. # 546-1, pp. 15, 17. Both certifications expressly state that the employee does "certify

-7-

to the accuracy of the contents of these documents or that they meet the requirements of 'Records of a Regularly Conducted Activity' under Federal Rule of Evidence 803(6)." Id. As with the Pilgrim's certifications, since Rule 902(11) requires that records "meet[] the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person," these purported certificates of authenticity do not meet the basic requirements of 902(11) and 902(13).

## V.  The Government's RSCS and SMS Certifications

The government provides two boiler-plate certifications for Restaurant Supply Chain Solutions, LLC (RSCS) and Supply Management Services, Inc. (SMS). *See* Doc. # 546-1, pp. 796, 798. For SMS, the certification is made by an employee of SMS, yet the records are generated by an electronic process or system of an entirely different legal entity – Driven Inc. *Id*. at 798. Further, there is nothing in either certification that would establish that either employee is qualified to provide the certification, possesses the knowledge, to be able to certify who made or created the records, or can affirm that the records were kept in the course of RSCS or SMS' regularly conducted activity. *See* Fed. R. Evid. 803(6)(A), (B).

## VI.  The Church's Chicken / Cajun Operating Company Certifications

The government proffers two alleged certifications from Cajun Operating Company relating to Church's Chicken (Church's). *See* Doc. # 546-1, pp. 790, 791. The boilerplate certifications cover more than 13,000 pages of documents. *Id*. Both certifications are signed by an employee identified as a "EVP, Chief Legal Officer," but the certifications provide no foundation for the assertion that the employee is qualified to authenticate the records or that he is familiar with how the records were created, managed, stored, and retrieved. *Id*. The

certifications do not even state the time period during which the employee has been employed by the company. *Id*. Although the employee asserts that the records "were kept in the ordinary course of the regularly conducted business activity of the entity and were made by the entity as a regular practice," the first document is an excel spreadsheet with the file name "Chicken Purchases for DOJ Subpoena 9.16.19" that appears to have been created in response to a subpoena, not kept in the ordinary course of Church's regularly conducted business activity. *Id*. The certifications also do not provide any foundation establishing that the employee is qualified to provide certifications concerning electronic processes or systems. *Id*. Although the certification states the records were copied from electronic devices in a manner that ensures they are true duplicates, several of the documents indicate a date of creation in 1996 in conflict with the data reflected therein, suggesting that the documents are not accurate copies. *Id*.

## VII.   The Koch Foods Certifications

The government attaches two certifications relating to Koch Foods, Inc. (Koch). *See* Doc. # 546-1, pp. 773-774, 942-945. Neither certification satisfies the business records exception in Rule 803(6), which is required to satisfy 902(11). *Id*. Neither certifies that the records subject to the certifications were made at or near the time—or from information transmitted by—someone with knowledge, or that the records were kept in the course of a regularly conducted business activity, or that making the records was a regular practice of Koch's business activity. *Id*. On the contrary, one of the certifications expressly refuses to certify the accuracy of the documents. *Id*. at 774.

**VIII.   The George's Certifications**

The government proffers three certifications by Robert Hood, the Vice President of IT for George's, Inc. (George's), to the Court.  *See* Doc. # 546-1, pp. 19, 21, 23.  The certifications by Mr. Hood indicate, "…I am familiar with how the records were created, managed, stored and retrieved."  Despite his assertion, there are over 1.5 million documents referenced in Mr. Hood's three certifications, which were created by numerous individuals.  In addition, some of the referenced documents appear to be handwritten and created by individuals other than Mr. Hood.

The government has not demonstrated that Mr. Hood is qualified, or possesses the knowledge, to be able to certify who made or created the records, whether the records were made of a regularly conducted activity at or near the time of said activity by someone with knowledge, whether the records were kept in the course of George's regularly conducted activity, or whether the making of the record was a regular practice of the business activity.  *See* Fed. R. Evid. 803(6)(A), (B).

This lack of knowledge is evidenced by Mr. Hood's certifications. Instead of indicating knowledge sufficient to satisfy the elements of Rule 803(6), he simply indicates that the referenced documents were "retrieved from an email server and a file server that George's maintains in the ordinary course of business." See Doc. #546-1, Exhibit 3-1. Affirming the documents were retrieved from an email server maintained in the ordinary course of business is not the same as affirming the documents were made in the regular course of business as required by Rule 803(6). Accordingly, the certifications fail the requirements of Rule 902(11).

Moreover, the records allegedly certified include handwritten documents, which do not constitute alleged certified records generated by an electronic process or system under Rule

902(13) or certified data copied from an electronic device, storage medium, or file, under Rule 902(14).The O.K. Foods "Declaration"

### IX. The O.K. Foods "Declaration"

The government includes a declaration relating to records from O.K. Foods. *See* Doc. # 546-1, p. 784. The declaration purports to apply to over *470,000* pages of records. *Id.* The declaration attests that the declarant is familiar with the electronics systems on which the records were managed and stored, and from which they were retrieved. *Id*. The declarant states that the records were copied from O.K Foods' electronic systems in a manner to ensure that they were true duplicates of electronic items maintained and stored on O.K. Foods' systems. *Id*. The declarant fails to set forth how O.K. Foods' electronic system produces an accurate result, and therefore fails to demonstrate that the records are self-authenticating pursuant to Rule 902(13). *Id*. Conversely, the declaration does not state that the records were authenticated by a process of digital identification, and therefore cannot constitute proof of alleged self-authentication under Rule 902(14). *Id*.

### X. The Golden Corral Certification

The government seeks to self-authenticate three documents produced by Golden Corral based on the attestation of its Vice President of Purchasing and Distribution, Telly Smith. As an initial matter, Mr. Smith is not qualified to provide certifications concerning Golden Corral's electronic processes or systems, and the certification is insufficient on that basis alone. Additionally, although Mr. Smith is identified as the custodian of the documents, there are three standalone documents that were not generated by any electronic process or system that produces an accurate result and Rule 902(13) is inapplicable as to these documents.

Defendants have only the metadata to review in regard to the Golden Corral documents identified by the government. The metadata purports to show that Mr. Smith created all three documents. However, that does not necessarily reflect that he had the requisite knowledge about the creation of the document. Document GC-ATR-001-00000003 purports to be Golden Corral's Standard Terms and Conditions from May 2013. The government does not explain how Mr. Smith, as Golden Corral's Vice President of Purchasing and Distribution, created Golden Corral's standard agreement with its customers. The document is not attached to any email sent by Mr. Smith, but is a standalone version from 2013 of Golden Corral's standard terms and conditions. As such, Mr. Smith's certification is insufficient to show that he was someone with knowledge regarding the creation of the document at issue and therefore it is not self-authenticating.

Mr. Smith is the custodian of the other two documents, both Excel spreadsheets. This may place Mr. Smith in a position to testify about the documents; however, the certification is insufficient, and the documents are not self-authenticating pursuant to Rule 902(11). The certification provides a blanket statement that the records were made, "at or near the time of the occurrence of the matter." Document GC-ATR-001-00000001 appears to be an Excel that contains information on broiler chicken purchases and pricing over a 9-year time period. However, the metadata available to the Defendants provides that the document's date is from July 2012. This document cannot be authenticated without Mr. Smith testifying as to the dates and times that the document was edited and by whom over the 9-year time period. Similarly, document GC-ATR-001-00000002 purports to be a list of shipments of broiler chickens during the time period 2018-2020, but the available metadata provides that the document was created in

June 2020. Without Mr. Smith's testimony, the certification alone is insufficient to determine whether the Excel document was updated during the more than two-year time period or was created on one date. If it was created on one date in 2020, then the certification inaccurately states that the document was created at or near the time of the event of the shipments in 2018 and 2019. If the spreadsheet was updated throughout the two-year time period, then Mr. Smith's testimony is required to verify when he edited and revised the document during the time period and that no other individual edited or revised the document during that time period.

**XI.   The Sysco Certifications**

The government proffers two alleged certifications by an employee of Sysco Corporation (Sysco), to the Court. *See* Doc. # 546-1, pp. 807-810.  The certification is by Sysco's Associate General Counsel, who is neither a custodian, recipient, sender, or cc of any of the electronic communications identified for self-authentication.  The 2,000 plus pages identified by the government include standalone documents, and insufficient information is available to determine whether the documents were stored pursuant to Sysco's normal practices and regularly conducted activity.  Additionally, the declarant fails to set forth how Sysco's electronic system produces an accurate result.

**XII.   The Chick-fil-A Certifications**

The government puts forth two certifications pursuant to 902(11) and 902(13) from Chick-fil-A Inc. ("CFA"), stating that they apply to over 19,000 pages of documents. *See* Doc. # 546-1, pp. 786-788.  The signatory of the first certification—which applies to CFA_0000001-CFA_0017756—is a Lead Business Analyst named Young Choo, and the signatory for the second certification—which applies to CFA_0017757-CFA_0019198—is Senior Lead IT

Architect Kevin Young Choo.  This individual (or individuals) claims that each document was generated by an electronic process or system of "Microsoft Exchange/Office 365," was transmitted by "a person with knowledge of" the matters set forth by the documents, and was "made by [CFA] as a regular practice."  Id.  The signatory of these certifications cannot possibly know this, and, aside from the fact that these documents were generated by Microsoft Exchange/Office, does not purport to put forward a basis for this assertion.  That a document is generated by Microsoft Office does not mean that all its contents were made by a person with knowledge of the matters set forth therein, nor that the documents were made as part of CFA's business practices.  Accordingly, such documents cannot be self-authenticating under Rules 902(11) and 902(13).

## CONCLUSION

On the basis of the grounds and authorities set forth here, Defendants request that the Government's Notice Regarding Use of Self-Authenticating Evidence Pursuant to Federal Rules of Evidence 902(11), 902(13), and 902(14), Doc. # 546, and accompanying certifications be found insufficient to establish the millions of underlying records as self-authenticating under Rule 902.

Dated: October 5, 2021               Respectfully submitted,

*s/ John A. Fagg, Jr.*                         *s/ Michael F. Tubach*
John A. Fagg, Jr.                            Michael F. Tubach
MOORE & VAN ALLEN PLLC                       O'MELVENY & MYERS LLP
Attorney for William Wade Lovette            Attorney for Jayson Jeffrey Penn
100 North Tryon Street, Suite 4700           Two Embarcadero Center, 28th Floor
Charlotte, NC 28202                          San Francisco, California 94111-3823
(704) 331-3622                               (415) 984-8700
johnfagg@mvalaw.com                          mtubach@omm.com

-15-

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT, ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of October, 2021, I electronically filed the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO GOVERNMENT'S NOTICE REGARDING USE OF SELF-AUTHENTICATING EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11), 902(13), AND 902(14)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

                                           */s/ Craig A. Gillen*
                                           Craig A. Gillen
                                           Anthony C. Lake
                                           GILLEN WITHERS & LAKE LLC
                                           400 Galleria Parkway
                                           Suite 1920
                                           Atlanta, Georgia 30339
                                           (404) 842-9700
                                           cgillen@gwllawfirm.com
                                           aclake@gwllawfirm.com

                                           *Counsel for Gary Brian Roberts*