IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     **JIMMIE LEE LITTLE,**
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

## DEFENDANT JIMMIE LITTLE'S MOTION
## FOR DISCLOSURE OF JENCKS, *GIGLIO* AND *BRADY* MATERIAL

On August 31, 2020, SA LaNard Taylor and SA Matthew Koppenhaver interviewed defendant Jimmie Little at his home. Based solely upon the agents' account of what was said at that interview, Mr. Little has been charged in Counts 2 and 3 of the Superseding Indictment with making false statements and obstruction of official proceedings. The government produced three different versions of a written report of that interview.

On September 6, 2021, counsel for Mr. Little learned for the first time from the government that the "date prepared" listed on the three interview reports was not actually the

1

date the reports were prepared. It has now come to light that they are successive drafts, which were revised with the input of trial counsel for the government, even though counsel were not present and had no personal knowledge of what was said at the interview. The defense has asked for the native files for each report, which may contain additional communications in the form of track changes or commenting, and associated metadata, which will provide information about what changes were made, who made them, and when. Although the government initially agreed to provide the native version of the report that was available, it reversed its position. On September 10, the government disclosed that the changes to the reports were made after the agent spoke to counsel for the government. Counsel for Mr. Little renewed the request for the native versions of the reports, which the government recently rejected on September 27. This motion follows.

## FACTUAL BACKGROUND

On August 31, 2020, SA LaNard Taylor and SA Matthew Koppenhaver interviewed defendant Jimmie Little at his home. The government produced three different reports (OIG "Investigative Record Forms") of that interview. All of the reports were produced in .pdf form. All of the reports were different in some respects, though none of them indicated they were drafts. All of the reports were dated August 31, 2020, though the defense has now learned that none of them were completed on that date. (Exhs. A, B, and C).[1] Exhibit A, the most inclusive and presumably last version of the report, is highlighted to show the substantive additions that were made over time: text in yellow was added in the second version, text in red in the third.

---

[1] The interview reports are filed concurrently herewith under Restriction Level 1 to be consistent with prior filings by the Government.

On August 12, 2021, defense counsel asked the government to disclose further information about the reports and other documents. The defense requested that the government produce the native MS Word files for each version of the report, which may contain additional communications in the form of track changes or commenting, along with metadata, which would reveal what changes were made, when and by whom. (Exh. D).[2]

On August 20, 2021, the government replied, indicating they would produce some native files and available metadata. But the government stated they "only have available a Microsoft Word version of the last draft of the August 31, 2020 interview." (Exh. E). Further, they were "unable to pull any metadata" from OIG's case management system, "as it is not technically possible." (Exh. E).

The defense replied on August 27, 2021, concerned that the native files for earlier drafts were reportedly unavailable, and suggested informal discussions concerning what electronically stored information (ESI) was created, when, by whom and why it no longer exists. The defense also suggested an informal exchange of information, at a technical level, to better understand the nature of OIG and FBI systems and the problems the government would allegedly encounter in producing metadata from them. (Exh. F).

On September 6, 2021, the government reversed its position, refusing to produce native Word versions of interview reports and notes, claiming that draft reports are not discoverable. (Exh. G). The government also refused to provide information about OIG and FBI systems which would help evaluate the claim that production of metadata was "not technically possible."

With this letter, the government also provided email communications from SA

---

[2] The exhibits have been highlighted for ease of reference.

3

Koppenhaver which relate to the interview reports previously produced. These emails show that .pdf versions of the report were sent from the OIG "Kiteworks"[3] system by SA Koppenhaver to government trial counsel on September 2 (Exh. H), September 8 (Exh. I) and September 17, 2020 (Exh. J). With the September 8 and September 17 transmissions, SA Koppenhaver urges message recipients to delete prior versions of the reports. (Exhs. I, J).

The government and defense counsel had a telephone conversation on September 10, 2021. The government indicated that the following occurred:

> Following the August 31 interview, SA Koppenhaver sent an email on September 2, 2020 to counsel for the government attaching the interview report and his notes and the documents shown to Mr. Little during the interview. After speaking with government counsel, SA Koppenhaver remembered something else and so he added it to the interview report. On September 8 he sent the revised report to government counsel, spoke with them again, remembered something else, and sent another revised version to government counsel on September 17, 2020. The version that resulted from this last conversation is the "final" version or the "last draft."

(Exh. M).

Defense counsel asked that the government produce the native files and corresponding metadata for all versions of the report, as well as any communications between the interviewing agents, or between the agents and trial counsel, concerning the reports or notes of the interview. *Id*.

On September 27, the government replied, refusing to produce the native files and requested metadata. (Exh. M). The government also refused, without providing any legal basis,

---

[3] Kiteworks is a secure file collaboration system, which allows users to share files, edit them and comment on them. It supports file versioning and logs user activity related to each file. (Exh. K). Since 2015, Kiteworks has had eDiscovery capability, enabling "easy export" of content, including metadata, to legal teams. (Exh. L).

to disclose the substance of their communications with the agents which resulted in changes to the reports.  The government did, however, provide further email communications between the agents.  (Exhs. M, N, O and P).  Significant among these, Exhibit N shows SA Taylor sending a "DRAFT" to trial counsel Heather Call near midnight on September 2.  (This "draft" was not included with the email provided to counsel.)  This further suggests that the agents exchanged drafts of interview reports with trial counsel, that trial counsel gave input on the agents' "recollection" of interviews that counsel did not attend, and that native files exist (in the agents' email stores and on their computer hard drives) reflecting their "recollections" following input from counsel.

## LEGAL ANALYSIS

Jimmie Little is charged in Counts 2 and 3 of the Superseding Indictment with making false statements and obstruction of an official proceeding.  The false statements allegedly occurred during the August 31, 2020 interview, and are the sole basis for the obstruction charge.  Superseding Indictment (Dkt. #101) ¶¶ 146-151.  The government's case on Counts 2 and 3 is built on the testimony of government witnesses SA Taylor and SA Koppenhaver regarding what they asked Mr. Little and what Mr. Little said in response during the August 31, 2020 interview at his home.

The Jencks Act, 18 U.S.C. § 3500, calls for the production of witness statements and provides for *in camera* review of the statement by the Court if the government disputes that any portion of the statement is not discoverable.  Draft reports prepared by a government witness and then transmitted to others are statements within the meaning of the Jencks Act.  *United States v. Carrasco,* 537 F.2d 372, 375 (9th Cir. 1976) ("A statement, unlike notes or a diary, seeks to

5

transmit information from the declarant to the reader."); *United States v. Walden,* 578 F.2d 966, 970 (3d Cir. 1978) (concerning a report "in a form sufficiently acceptable to the agent that he allowed it to be reviewed by his superior."); *United States v. Sorrentino,* 726 F.2d 876, 887 (1st Cir. 1984) (a special agent's report summarizing his pretrial investigation is Jencks material.).

"There are no exceptions to the Jencks rule that all statements relevant to the subject matter of the witness' testimony must be produced after direct examination of the witness. The statement need relate only generally to the events and activities testified to by the witness to come within its sweep." *United States v. Bibbero,* 749 F.2d 581, 585 (9th Cir. 1984) (citations omitted). If there is any question regarding the relevance of the statement, the trial court has an affirmative duty to review the material, and it is improper to allow the government to make that determination. *United States v. Peters,* 625 F.2d 366, 370-71 (10th Cir. 1980).

In addition to the Jencks Act, the reports and metadata also fall squarely within the purview of *Brady* and *Giglio*. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States,* 405 U.S. 150, 154-55 (1972) (extending the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses). Here, as in *Giglio*, the government's case as to Counts 2 and 3 will depend almost entirely on the testimony of SA Taylor and SA Koppenhaver. Their credibility as witnesses are important issues in the case, and the jury is entitled to know anything relevant to their credibility. *Id*.

The following facts are not subject to reasonable dispute:

1) Government agents interviewed defendant Little;

2) Government trial counsel were not present at that interview.

3) Counts 2 and 3 against defendant Little are dependent entirely on what happened at that interview;

4) At least one agent made at least three written reports of what happened at that interview;

5) Those reports differ in their accounts of what was said at the interview;

6) At least two written reports were made after input from trial counsel who were not present at the interview;

7) Following input from trial counsel, two subsequent written reports attribute to the defendant statements that were not present in prior reports;

8) Additional relevant information about these statements exists, in the form of native files and metadata;

9) This information should not be difficult for the government to produce;

10) The government initially agreed to provide some of the requested information, but then changed its mind and now refuses to do so;

11) The government initially took the position that it was "not technically possible" to produce some of the information, even though data stored in Kiteworks should be readily available;

12) SA Koppenhaver called for the deletion of these materials.

The government has produced whitewashed and stripped-down .pdf versions of the reports.  Although the reports list the "date prepared" as August 31, 2020, it is clear that is not accurate.  Native files in the Kiteworks system, in email stores and on hard drives, as well as

associated metadata, will have information about who made the changes to the reports, what changes were made, and when those changes were made. If there are versions that no longer exist, the jury is entitled to know why. All of this information is relevant to the credibility of SA Taylor and SA Koppenhaver, the only witnesses that the government can rely on to establish Counts 2 and 3. Mr. Little is entitled to the production of this Jencks, *Brady*, and *Giglio* material.

## **CONCLUSION**

For the foregoing reasons, the Court should order disclosure of all native file versions of the reports, from Kiteworks, email stores, or hard drives, and all accompanying Kiteworks, application, and file system metadata pertaining to each. If some ESI at one point existed, and no longer does, the Court should order disclosure of related information. The Court also should order disclosure of the substance of counsel's communications with the agents which resulted in changes to the agents' "recollection." At a minimum, defendant Little requests the Court perform

an *in camera* review of this information and make a determination whether it should be produced to defendant Little.

Dated:  October 7, 2021                                          Respectfully submitted,


*s/ Mark A. Byrne*
Mark A. Byrne
Dennis J. Canty
BYRNE & NIXON LLP
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com
denniscanty@byrnenixon.com

*Attorneys for Defendant Jimmie Little*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of such filing to all parties of record.

 /s/ Mark A. Byrne

Mark A. Byrne