IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

---

## WILLIAM LOVETTE'S TRIAL BRIEF

---

William Lovette submits this brief to address three important legal and evidentiary issues likely to arise at trial. First, the Government's circumstantial case against Mr. Lovette is based upon results-driven inferences from innocuous or ambiguous evidence. The evidence will show that the more plausible and rational explanations are that Mr. Lovette's conduct was both ordinary and not violative of the Sherman Act. Second, the Court should reject the Government's proposed deliberate ignorance instruction because, under the Fifth and Sixth Amendments and the Sherman Act, the Government bears the burden of proving that Mr. Lovette acted with actual knowledge—

nothing less. Third, the Government's failure to identify specific *Brady* and *Giglio* material in its vast productions violates Mr. Lovette's due process rights.

## ARGUMENT

I.   **THE GOVERNMENT'S CIRCUMSTANTIAL CASE AGAINST MR. LOVETTE RELIES UPON RESULTS-DRIVEN INFERENCES FROM INNOCUOUS OR AMBIGUOUS EVIDENCE.**

The Government will attempt to prove through inferences from circumstantial evidence that Mr. Lovette knowingly joined and participated in the charged seven-year price-fixing and bid-rigging conspiracy. The evidence relating to Mr. Lovette consists of innocuous business communications for which there are more plausible and rational explanations than participation in the charged conspiracy. "[A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). "Where circumstantial evidence is just 'as consistent with' unilateral action as with concerted action, it 'does not, standing alone, support an inference of antitrust conspiracy.'" *Llacua v. W. Range Assoc.*, 930 F.3d 1161, 1180 (10th Cir. 2019) (quoting *Matsushita*, 475 U.S. at 588). "The most natural inference" for the evidence will be that there was a "legitimate, independent reason" behind Pilgrim's business decisions and Mr. Lovette's role in those decisions. *See Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 20 (1st Cir. 2004) (affirming summary judgment for defendants when plaintiff's proffered "inference necessarily would require building an antitrust claim on ambiguous evidence—a practice that the Supreme Court has forbidden").

To illustrate with one example, the allegations in Episode 10 ("Protecting the Purpose and Effectiveness of the Conspiracy") of the indictment show that Mr. Lovette (and Pilgrim's) declined to cover the supply shortfalls of Pilgrim's largest competitor, Tyson, to a customer from whom

Pilgrim's wanted to win business. The communications do not refer to any conspiracy, to Tyson's violating any alleged agreement warranting sanction, or to any price or bid. Mr. Lovette wanted to secure the long-term business of these customers by showing that Pilgrim's would provide better service and meet its supply commitments. In other words, Mr. Lovette's communications show him vigorously competing for a customer's long-term business—exactly the type of conduct that the antitrust laws are meant to encourage—and doing so with clear explication of his competitive analysis. Super. Ind. ¶¶ 117, 119; *see United States v. AMR Corp.*, 140 F. Supp. 2d 1141, 1204 (D. Kan. 2001) (finding that defendants engaged in "precisely the sort of activity the antitrust laws are intended to encourage"). An inference of Mr. Lovette's knowing participation in the charged conspiracy cannot be made beyond a reasonable doubt as a matter of law.

This is just one example. The Government's other evidence relating to Mr. Lovette will similarly require the jury to draw inferences based upon motivated reasoning over the more plausible and rational explanations. In evidentiary and other rulings in the course of the trial from the opening statements to the closings and to the jury instructions, Mr. Lovette asks the Court to guard against such "inferences from ambiguous evidence" that the Government will seek to draw in violation of settled law. *See Matsushita*, 475 U.S. at 588.

## II.    THE GOVERNMENT SEEKS TO LOWER ITS BURDEN OF PROVING MR. LOVETTE'S *MENS REA* IN VIOLATION OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS AND SHERMAN ACT JURISPURDENCE.

### A.    Knowledge and Deliberate Ignorance Are Two Separate Standards.

One way in which the Government seeks to circumvent *Matsushita* and other established Sherman Act precedent, which requires proof that Mr. Lovette knowingly joined and participated in the charged conspiracy and knew its purpose was to fix prices and rig bids, is to lower the *mens*

*rea* requirement *de facto*. *See United States v. Metropolitan Enterprises*, 728 F.2d 444, 449–50 (10th Cir. 1984) (the *mens rea* under the Sherman Act is knowledge) (citing *United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 684 (5th Cir. 1981)). Proof that a defendant knows of the conspiracy and its purpose "supplies the criminal intent necessary for a conviction of a criminal antitrust offense." *Cargo Serv. Stations*, 657 F.2d at 684.

To lower the *mens rea* standard (in what would be a material and impermissible amendment of the superseding indictment), the Government proposes an instruction that broadly and ambiguously asserts that "knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact." *See* Doc. No. 585, p. 33. The Government asks the Court to ignore that "[w]illful blindness is not knowledge; and judges should not broaden a legislative proscription by analogy." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 772 (2011) (Kennedy, J., dissenting). "Actual knowledge . . . is inconsistent with willful blindness." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007); *accord Staples v. United States*, 511 U.S. 600, 618–19 (1994) (when dispensing with *mens rea* would require the defendant to have knowledge only of "traditionally lawful conduct" yet face a stiff criminal penalty, "the usual presumption the defendant must know the facts that makes his conduct illegal applies").

The Government's proposed instruction also risks violating due process because "evidence cannot be used as proof for the mutually exclusive categories of actual knowledge of an operant fact and deliberate ignorance of that same fact . . . ." *United States v. de Francisco-Lopez*, 939 F.2d 1405, 1409–10 (10th Cir. 1991) (remanding for new trial because of trial court's deliberate ignorance instruction). The danger is too great that a jury could convict based upon a "reckless disregard" or negligence standard, not based upon the defendant's "subjective knowledge of his

criminal behavior." *Id.* at 1411; *de Francisco-Lopez*, 939 F.2d at 1409 (citing *United States v. Jewell*, 532 F.2d 697, 707 (9th Cir. 2005) (Kennedy, J., dissenting)). Applying a lesser standard is inappropriate. *Id.* at 1409 (citing *Jewell*, 532 F.2d at 707 (Kennedy, J., dissenting)).

Deliberate ignorance is a separate concept dependent on "circumstantial evidence that the person against whom it is employed has actual knowledge of a fact in issue." *de Francisco-Lopez*, 939 F.2d at 1409. The Government must "prove a defendant had actual knowledge of an operative fact by proving ***deliberate acts*** committed by the defendant from which that actual knowledge can be logically inferred." *Id.* (citing *United States v. Ochoa-Fabian*, 935 F.2d 1139, 1141–42 (10th Cir. 1991)) (emphasis added).[1] "The instruction is rarely appropriate . . . because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge." *Hilliard*, 31 F.3d at 1514 (quoting *de Francisco-Lopez*, 939 F.2d at 1409) (reversing bank fraud and related convictions due to deliberate ignorance instruction). As against Mr. Lovette, the Government relies on evidence of innocuous and ambiguous business communications—not on affirmative evidence of deliberate acts—and thus the instruction infringes on Mr. Lovette's due process and fair trial rights of the Fifth and Sixth amendments.

In a relevant case, the Tenth Circuit reversed the bank fraud and related convictions of a bank's president because the district court erred in its deliberate ignorance instruction. *See Hilliard*, 31 F.3d at 1516–17. The *mens rea* elements for the charged crimes were willfulness and knowledge. *Id.* at 1514. The evidence showed the defendant was aware of the transactions at issue, not that he purposely avoided learning about them. *See id.* at 1516–17. For a deliberative ignorance

---

[1] *But see United States v. Espinoza*, 244 F.3d 1234, 1244 (10th Cir. 2001) (declining to follow *de Francisco-Lopez* concerning using evidence to prove actual knowledge and deliberate ignorance).

instruction, "evidence is required showing that the defendant denies knowledge of an operative fact and [his] actions include ***deliberate acts*** aimed at avoidance of actual knowledge." *Id*. at 1516 (emphasis added). Without specific "evidence of avoidance of knowledge . . . the jury could still convict a defendant who merely should have known about the criminal venture." *Id*. at 1517 (quoting *United States v. Manriquez Arbizo*, 833 F.2d 244, 249 (10th Cir. 1987)). Compounding the court's concerns, the case involved "somewhat complicated financial transactions" making it difficult to show he purposely avoided learning about the transactions. *Id*. at 1516.

The indictment also alleges no facts indicating that Mr. Lovette (or anyone else) acted with willful blindness or deliberate ignorance. The Government requests a jury instruction that would constructively amend the indictment by broadening an essential element—thus requiring Mr. Lovette to "answer a charge that had not been brought by a grand jury[.]" *See United States v. Kalu*, 791 F.3d 1194, 1206 (10th Cir. 2015). This would violate his Fifth Amendment rights.

Like *Hilliard* and others involving complex transactions, along with facially ordinary business communications, a deliberate ignorance instruction is inappropriate. *See Hilliard*, 31 F.3d at 1516; *see also Chamarac Props. v. Pike*, 86 Civ. 7919, 1993 WL 427137, at *4 (S.D.N.Y. Oct. 15, 1993) ("phone calls and correspondence . . . appear to be part of routine business transactions" and did not provide a "factual basis from which to infer" defendant's knowledge of the scheme).

### B. Knowing Individuals Allegedly Involved in the Conspiracy Does Not Equate to Knowledge of the Alleged Conspiracy.

The Government must do more than present evidence that Mr. Lovette knew, worked with, communicated with, or was friendly with an alleged member of the conspiracy. "Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy." *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir.

1990). The law does not permit the Government to tie Mr. Lovette to the charged conspiracy simply because of his position at Pilgrim's and his proximity to certain other Defendants: "The fact that an objective reasonable person would have had knowledge is immaterial." *United States v. Espinoza*, 244 F.3d 1234, 1242 (10th Cir. 2001). The defendant must have "subjective knowledge of his criminal behavior[.]" *de Francisco-Lopez*, 939 F.2d at 1409; *see Espinoza*, 244 F.3d at 1242–43. A conviction based on the Government's assertion that Mr. Lovette "should have known" is tantamount to a conviction for negligence. *See de Francisco-Lopez*, 939 F.2d at 1410–11 (quoting *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098 (9th Cir. 1985)) ("It is not enough that defendant was mistaken, recklessly disregarded the truth, or negligently failed to inquire."); *United States v. Kelm*, 827 F.2d 1319, 1324 (9th Cir. 1987) (same). The Government's proposed willful blindness instruction should thus be rejected.

### III.   THE GOVERNMENT'S FAILURE TO IDENTIFY *BRADY/GIGLIO* MATERIALS VIOLATES MR. LOVETTE'S DUE PROCESS RIGHTS.

Since indicting Mr. Lovette and the other Defendants, the Government has produced millions of documents totaling over 69 million pages, excluding phone records. The deluge of documents produced by the Government has left Mr. Lovette drowning in paper. Since August, the Government has produced hundreds of thousands of pages of documents and continues to produce documents and Form 302s even as late as last week. The Government compounds the prejudice with an exhibit list running up to 2,077 documents and a motion seeking authentication under evidence rule 902 of millions more for use at trial. Without intervention by the Court, Mr. Lovette and the other Defendants will be compelled to slog through tens of millions of pages in real time as the Government puts in its thousands of exhibits and summary charts of millions more documents in order to identify **Brady** and **Giglio** material vital to their defense against the

Government's tidal wave of evidence for trial. The failure to identify **Brady** and **Giglio** material in these circumstances "constitutes bad-faith suppression of exculpatory evidence in violation of *Brady*[.]" *United States v. Saffarinia*, 424 F. Supp. 3d 46, 89 (D.D.C. 2020) (citing *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010)). In *Skilling*, the Fifth Circuit considered several situations in which the use of a voluminous open file might violate the Government's *Brady* obligations: (1) "evidence that the [G]overnment 'padded' an open file with pointless or superfluous information to frustrate a defendant's review of the of the file"; (2) "[c]reating a voluminous file that is unduly onerous to access"; and (3) "hid[ing] *Brady* material of which [the Government] is actually aware in a huge open file in the hope that the defendant will never find it." 554 F.3d at 577. In such situations, district courts have ordered the Government to identify known *Brady* materials. *See Saffarinia*, 424 F. Supp.46 at 90–91; *see also United States v. Blankenship*, No. 5:14-cr-00244, 2015 WL 3687864, at *6 (S.D.W.V. June 12, 2015) (the United States does not comply with *Brady* by including known *Brady* material within the four million plus pages of discovery). This Court should do no less.

## CONCLUSION

The evidence at trial will not support that Mr. Lovette violated the charged offense.

This 18th day of October 2021.                    Respectfully Submitted,

/s/ *James P. McLoughlin, Jr.*
James P. McLoughlin, Jr.
John A. Fagg, Jr.
**Moore & Van Allen PLLC**
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Telephone:  704-331-3622
Email:  jimmcloughlin@mvalaw.com

*Attorneys for William Wade Lovette*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of October 2021, I electronically filed the foregoing

**DEFENDANT WILLIAM LOVETTE'S TRIAL BRIEF** with the Clerk of Court using the

CM/ECF system which will send notification of such filing to all counsel of record.

<u>/s/ *James P. McLoughlin, Jr.*</u>