IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

       Defendants.

No. 20-cr-00152-PAB

## DEFENDANTS' JOINT TRIAL BRIEF

Defendants, by and through undersigned counsel, respectfully submit this joint trial brief to address issues common to all Defendants.

## INTRODUCTION

On June 2, 2020, a grand jury indicted four Defendants for alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Indictment ("Ind.") ¶ 1. On October 6, 2020, the grand jury returned a superseding indictment against the four original Defendants and six new Defendants, charging them with one count of violating 15 U.S.C. § 1, and charging only Jimmie Little with two additional counts. Superseding Indictment ("Super. Ind.") ¶¶ 1, 147, 151. The superseding indictment alleges a single price-fixing and bid-rigging conspiracy spanning seven years and relating to a large number of suppliers, customers, and products. *Id.* ¶¶ 47, 48(a)–(c). It identifies

fourteen separate incidents during which suppliers purportedly used an amorphous and undefined "continuing network" to fix prices and rig bids. *Id.* ¶¶ 51–145.

This trial brief addresses legal issues that may arise at trial. First, the government's case appears to be premised almost entirely on circumstantial evidence, which limits the range of permissible inferences the jury can draw. Second, the government will not be able to prove Defendants agreed to the single, overarching conspiracy charged. Third, the government will not be able to prove that any Defendant knowingly and voluntarily joined any conspiracy.

This brief also considers expected evidentiary issues: (i) the government's sweeping and improper reliance on summary witnesses and summary exhibits, (ii) ████████████████ ███████████████████████████████████████████████, (iii) two modest requested changes to the Court's preliminary instructions, and (iv), Defendants' request for a final jury instruction on the rule of reason.

## ARGUMENT

## I.      The Government's Expected Evidence Is Circumstantial.

Evidence of a price-fixing or bid-rigging conspiracy may be either direct or circumstantial. "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1083 (10th Cir. 2006) (quotations omitted). It must, in other words, be "tantamount to an acknowledgment of guilt." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002). Circumstantial evidence, on the other hand, requires the trier of fact to infer an agreement from the "circumstances, acts, and conduct of the parties." *United States v. Wardell*, 591 F.3d 1279, 1287–88 (10th Cir. 2009) (quotations omitted).

Section 1 of the Sherman Act prohibits "contract[s], combination[s] . . . , or conspirac[ies], in restraint of trade or commerce."  15 U.S.C. § 1.  The Supreme Court has long understood this language to prohibit only *unreasonable* restraints of trade.  *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (collecting cases).  "The essence of a claim of violation of Section 1 of the Sherman Act is the *agreement* to commit an unlawful act, not the mere fact that business activity in some way restrains trade, which is the nature of every contract and business transaction. *Champagne Metals*, 458 F.3d at 1082 (emphasis added); *see Bd. of Trade of Chi. v. United States*, 246 U.S. 231, 244 (1918).  "The crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (quoting *Theatre Ent., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)).

This makes Section 1 of the Sherman Act very different from other criminal laws.  That is, the *object* of a Section 1 conspiracy (e.g., raising prices) may be a perfectly legal and appropriate business strategy.  That object only becomes illegal based on the *method* in which a defendant attempts to bring it about—that is, whether achieved unilaterally or by agreement with competitors. This is very different from, for example, a drug conspiracy, where both the object of selling drugs and the method of setting up a distribution chain are illegal.  As a result, "[t]he behavior proscribed by the [Sherman] Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct."  *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 440-411 (1978).  Courts recognize the "considerable danger" that allowing inferences of conspiracy from circumstantial evidence in price-fixing or bid-rigging cases "could deter or penalize perfectly legitimate conduct."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984); *see also*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) ("[M]istaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect.").

Antitrust law accordingly "limits the range of permissible inferences" that a court can draw from circumstantial evidence. *Matsushita*, 475 U.S. at 588. While the government can rely on circumstantial evidence, the Supreme Court has cautioned against inferences of price-fixing or bid-rigging from ambiguous evidence. *See id.* at 596; *see also Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1179–80 (10th Cir. 2019) ("The Supreme Court has long warned courts to be hesitant about inferring concerted action from evidence that is merely circumstantial.") (citing multiple cases). In particular, it is impermissible to infer a price-fixing or bid-rigging conspiracy if a defendant's "conduct is consistent with other, equally plausible explanations" such as rational unilateral business behavior outside of an illegal agreement. *Matsushita*, 475 U.S. at 596. This is particularly important in the criminal context where the government must prove its case beyond a reasonable doubt, meaning that jurors may not convict on the basis of ambiguous evidence. *See Gypsum*, 438 U.S. at 441.

Defendants believe the government's case at trial will consist almost entirely of circumstantial evidence. Indeed, at the *James* hearing, the government advanced hundreds of documents pursuant to Rule 801(d)(2)(E), none of which reflected direct evidence of the charged conspiracy.[1] And the jury may not convict Defendants simply by the government piling inferences

---

[1] While the Court ruled that some of the government's proffered statements satisfied Rule 801(d)(2)(E), the government will not be able to demonstrate guilt beyond a reasonable doubt on the basis of the statements, which reflect communications about public information, information-sharing by customers, robust competitive activity, and the collection of unsourced information to make independent business decisions.

upon inferences.  *See Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943) ("[C]harges of conspiracy are not to be made out by piling inference upon inference."); *United States v. Summers*, 414 F.3d 1287, 1295–96 (10th Cir. 2005) (piling "inference upon inference" "insufficient to permit a reasonable inference of . . . willful participation in the conspiracy").

## II.    The Government Will Not Be Able to Prove the Existence of the Charged Conspiracy.

### A.    Information Exchange Is Not Illegal.

A critical issue likely to arise at trial relates to the exchange of competitor pricing information.  The government's case appears to be based almost entirely on inferring an agreement to fix prices or rig bids from the exchange—or mere possession of—such information.  However, exchanges "of price data and other information among competitors do[] not invariably have anticompetitive effects" and "do not constitute a per se violation of the Sherman Act," because they often "increase economic efficiency and render markets more, rather than less, competitive." *Gypsum*, 438 U.S. at 441 n.16.  The evidence will show broiler chicken suppliers obtained pricing information from a variety of sources.

The key issue in a case under Section 1 of the Sherman Act is not whether information was shared.  It is whether an agreement occurred—in other words, whether there was a "meeting of the minds." *Twombly*, 550 U.S. at 556–57; *see also Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange.").  The government attempts to dilute this standard by referring to a mutual understanding. *See, e.g.*, Doc. 415 at 23.  The term "mutual understanding" is inherently ambiguous and problematic.  People may have a mutual

understanding that it is likely to rain tomorrow, but that does not mean they have reached an agreement for it to rain.  Similarly, competitors in an industry may have a mutual understanding that prices are likely to increase or decrease based on market forces, but that does not mean they have reached an agreement to increase or decrease prices.

The term "mutual understanding" is also inconsistent with the Sherman Act's requirement of an agreement, which requires an actual "meeting of the minds" in a "conscious commitment to a common scheme designed to achieve an unlawful objective." *See Monsanto*, 465 U.S. at 764 & n.9 (discussing requirements of antitrust liability).  For example, "conscious parallelism" is common in markets where prices are transparent—as they are in the broiler chicken industry—and competitors lawfully "recogniz[e] their shared economic interests" with respect to pricing decisions.  *Twombly*, 550 U.S. at 553–54 (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993)).  In these cases, it is not an antitrust violation if competitors obtain each other's prices and use those prices *consciously* to price similarly, as long as they do not do so pursuant to an agreement.  A classic example is the gas station, where two competing stations located across the street from each other publicly post their prices.  As a result of this transparent information exchange, the gas stations may charge the exact same prices.  Each may also "mutually understand" that if it changes its prices, the other will follow.  Each may even increase its prices knowing that this will likely cause the other to increase too.  But that is perfectly lawful absent an *agreement* to fix the prices.  *See In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015); *see also* P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 1433a (4th ed. 2021).

B.     **The Government Will Not Be Able to Prove a Single, Overarching Conspiracy.**

The government will not be able to prove the single, overarching conspiracy charged in the superseding indictment.  To prove a single, overarching conspiracy, the government must prove an agreement, as discussed above, as well as "an organized, concerted" effort by each of the Defendants to accomplish the overarching objectives of the charged conspiracy.  *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 137 (3d Cir. 1999); *see also United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992) ("What is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people.").  Evidence showing "a kaleidoscope of interactions among an ever-rotating, overlapping cast of Defendants" reacting to external events does not establish an overarching conspiracy.  *Dahl v. Bain Cap. Partners, LLC*, 937 F. Supp. 2d 119, 137 (D. Mass. 2013).

Here, the government charges an amorphous and sprawling "conspiracy" spanning different products and price terms (e.g., the price of 8-piece chicken-on-the-bone vs. the amount of freezing charges) and alleged victims (e.g., the quick-service restaurant KFC vs. the food distributor Sysco), which had very different suppliers, pricing criteria, business models, and purchasing needs.  The Tenth Circuit cautions that attempts to bring many disparate individuals "under the umbrella of a single conspiracy" "is fraught with the potential for abuse." *Evans*, 970 F.2d at 674.

Thus, rather than define a single conspiracy with a clear objective, the government has cobbled together an alleged conspiracy consisting of fourteen episodes, which include a muddle of different sporadic communications over many years involving different people, different products, different customers, and different price outcomes, all in the hope that the jury infers a

meeting of the minds out of the aggregate. The inferences required to find an overarching conspiracy from this disparate and circumstantial evidence are too attenuated to sustain a conviction. *See United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009).

### III. The Government Will Not Be Able to Prove That Any Defendant Knowingly and Voluntarily Joined an Overarching Conspiracy.

The government must carry its burden of proof with respect to "each defendant." *United States v. Record*, 873 F.2d 1363, 1368-69 (10th Cir. 1989). No individual defendant may be convicted unless the government proves every element of the charged conspiracy against him. *See United States v. O'Connor*, 650 F.3d 839, 859-61 (2d Cir. 2011) (noting that the jury was required to consider "each charge separately" with respect to "each defendant separately"); *Evans*, 970 F.2d at 673 ("It is . . . essential to determine what kind of agreement or understanding existed as to each defendant.") (quoting *Record*, 873 F.2d at 1368). In particular, the government must prove that each Defendant "had knowledge of the conspiracy and voluntarily participated therein." *Evans*, 970 F.2d at 669. This requires evidence of each Defendant's intent to agree and "knowledge of the anticipated consequences" of the conspiracy. *Gypsum*, 438 U.S. at 443 n.20, 446. Any individual Defendant cannot be convicted "if the evidence does no more than create a suspicion of guilt" specifically as to him, "or amounts to a conviction resulting from piling inference on top of inference" based on others' conduct. *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991). Nor can a Defendant be convicted for a conspiracy which may be attributed to his employer, but in which he did not personally engage.

## IV.     Evidentiary Issues.

### A.     The Government's Expected Reliance on Summary Witnesses and Summary Exhibits.

The government has expressed an intention to rely at trial on summary witnesses and trial exhibits.  The exhibits are not proper summary exhibits under Rule 1006.  They are, at best, demonstrative exhibits and, at worst, an effort to inject argument into what is supposed to be a presentation of evidence.  The exhibits are not proper summary exhibits under Rule 1006.  They are, at best, demonstrative exhibits and, at worst, an effort to inject argument into what is supposed to be a presentation of evidence.  They purport to summarize thousands of "chicken supply contracts, business-related correspondence, and emails and text messages over the span of several years maintained by the defendants' employers, their customers, and phone utility providers." Doc. 542 at 9.  Due to the constitutional issues at stake, Defendants highlight this issue here.  Each proposed summary will require independent evaluation, but any proposed summaries that purport to summarize emails and texts should be excluded.

First, Federal Rule of Evidence 1006 is not about demonstrative presentations; it is about substantive evidence.  The Rule only permits the use of summary evidence "to prove the content of voluminous writings . . . that cannot be conveniently examined in court."  *United States v. Channon*, 881 F.3d 806, 810 (10th Cir. 2018).  There is no indication that the "chicken supply contracts, business-related correspondence, and emails and text messages" that the government seeks to introduce actually are voluminous or that "they cannot be conveniently examined in court."

Second, combining an assortment of cherry-picked, misleading excerpts to imply a story is not truly "summary evidence."  And under Federal Rule of Evidence 106, if the Government

attempts to introduce a part of a writing, any Defendant "may *require* the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time" (emphasis added).  Defendants believe that the government's proposed summaries will trigger the requirement that the full documents be introduced, which will be not only necessary to enable confrontation of the evidence but also to avoid misleading the jury.  With the necessity for examination of the full documents, it becomes obvious that the summaries fail as a convenient means of examining evidence but rather solely fulfill the purpose of augmenting the government's time for argument.  They should likewise be excluded under Rule 403 as they will result in a waste of time, confuse the issues, mislead the jury, create undue delay, and needlessly involve cumulative repetition.[2]

Most importantly, summary evidence is inappropriate when its use would prejudice Defendants' right to a fair trial.  *See United States v. Taylor*, 210 F.3d 311, 316 (5th Cir. 2000). The risk of unfair prejudice here is extremely high.  Evidence such as the "emails" and "business-related correspondence" that the government apparently seeks to "summarize" goes to the core of the government's case.  *See United States v. Hart*, 295 F.3d 451, 459 (5th Cir. 2002) (summary evidence may not be used to prove a "crucial missing element" in the government's case or "to assume that which it [is] required to prove beyond a reasonable doubt as operative facts of the alleged offense") (quotation omitted).  Seeking to introduce summary exhibits related to thousands of conversations by many different individuals over many years prevents Defendants from

---

[2] Defendants have no objection to summary exhibits that satisfy these criteria.  For example, Defendants do not object to the use of summaries of toll records of telephone calls that provide all relevant information for the particular calls, since those records are, unlike emails or text, documents of regularly conducted activity under Rule 803(6) and voluminous enough that a summary of the underlying records is useful for the jury.

challenging the statements individually.  This violates the fundamental constitutional right for "the accused . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 50 (2004).

Even worse, the summary witnesses on the government's witness list do not appear to have personal knowledge of the thousands of emails and texts the government seeks to summarize on a chart.  Rather, Defendants understand that the sponsoring witnesses are only the special agents who investigated this case for the government.  But these are not percipient witnesses; they only learned about the conversations through their investigation—in many cases nearly a decade after the conversations occurred.  *See United States v. Banks*, 761 F.3d 1163, 1200–01 (10th Cir. 2014) (fact witnesses may be excluded for lacking firsthand knowledge on the subject of testimony).  These are exactly the types of witnesses who threaten Defendants' constitutional right of confrontation.  See *Bullcoming v. New Mexico*, 564 U.S. 647, 652, 660 (2011) (opportunity to confront "surrogate" witness does not cure Confrontation Clause violation where declarant of testimonial statement is not made available for cross-examination); *Davis v. Washington*, 547 U.S. 813, 826 (2006) (testimonial statements of one witness may not be admitted into evidence through the in-court testimony of another witness).  The government's choice to forego calling fact witnesses in favor of agent testimony is a deliberate one.  This way, it can raise inferences through the presentation of summary charts that those fact witnesses would rebut, if called to testify.  The government's exhibits summarizing emails and texts should be excluded accordingly.

**B.**   ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

**C.      The Court Should Make One Modest Addition and One Small Correction to Its Introductory Instruction.**

Defendants respectfully request one small, but important, addition and one typographical edit to the preliminary jury instructions.[3]

As to the addition, Defendants request that the Court add a single sentence, as shown in bold below, to the quoted paragraph from page 6 of docket entry 611 (page 5 of the internal page numbering):

> Each defendant is charged in the indictment with a violation of 15 U.S.C. § 1.  This law makes it a crime to unreasonably restrain trade.  The indictment charges the defendants with conspiring to rig bids and fix prices in the broiler-chicken industry between August 2011 and early 2019.  **The exchange of price information among competitors, without more, does not establish an illegal conspiracy, unless the government can prove beyond a reasonable doubt that the exchange was part of an "agreement" to rig bids or fix prices.**

This one-sentence explanation of the evidentiary role of information exchange in a Section 1 case is crucial here because it goes to the heart of the government's case, which relies primarily on circumstantial evidence of the exchange of price information.  Without such an instruction, the jury will hear two months of testimony about information exchanges without any insight into the circumstances under which an information exchange is legal or illegal.

---

[3] Defendants presented a different formulation of the elements of the offense in their proposed jury instructions than the Court adopted in its preliminary instruction.  Doc. 592 at 19. Defendants reserve their right to argue their proposed formulation at the close of evidence.

The addition should not be controversial. This Court has already recognized that the proposed instruction accurately states the law. *See* Doc. 559 at 7 (noting that price-sharing is "not in itself illegal"); *see also United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10, at 7 ("It is not illegal to obtain information about a competitor's bid or to exchange bid information without more. It is only where such acts are done pursuant to an agreement between two or more competitors to rig bids that a violation of the law occurs. The mere exchange of information about a competitor's bid without more is not illegal."); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990). As discussed above, the potential for juror confusion is high here, as this issue relies on fine distinctions of business conduct that is consistent with rational business behavior—distinctions that, without some orientation, will impact how jurors view and evaluate the evidence during the two-month trial. *Cf., e.g.*, *Gypsum*, 438 U.S. at 440-41 ("The behavior proscribed . . . is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2013 WL 10936486, at *3 (N.D. Cal. July 11, 2013) (granting request for "preliminary instructions on the substantive claims" in antitrust case). The proposed one-sentence addition would better help the jurors "know at the outset of a long trial what they are going to be asked to decide at the end." *United States v. Stein*, 429 F. Supp. 2d 648, 649 (S.D.N.Y. 2006).

Second, as to the typographical error, the quoted language above states that the indictment charged a conspiracy lasting "between August 2011 and early 2019." The superseding indictment charges a conspiracy lasting "as early as *2012* and continuing through at least early 2019." *See*

Super. Ind. ¶ 1 (emphasis added).  Defendants respectfully request that the dates specified in the preliminary instructions be modified to conform to those in the superseding indictment.

### D.     The Court Should Provide an Instruction on the Rule of Reason.

Finally, Defendants submitted a proposed final jury instruction related to the rule of reason under the Sherman Act.  *See* Doc. 592, Defs.' Proposed Instruction 20.  As discussed above, the Sherman Act only prohibits "unreasonable restraints on trade."  It is the government's burden to prove that the charged conspiracy actually occurred beyond a reasonable doubt, including that it unreasonably restrained trade.  By presuming—without proving—that the charged conspiracy unreasonably restrained trade, the government is relieved from proving every element of the crime charged.  But it is up to the jury to determine whether the conduct alleged here amounts to an unreasonable restraint as part of its ultimate determination on whether the government has proven a violation of every element of the Sherman Act beyond a reasonable doubt.  *See United States v. Gaudin*, 515 U.S. 506, 510 (1995) (the Constitution "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt").  Indeed, given that the government's case appears to rely in large part on circumstantial evidence, there is a particular concern that reasonable business communications will be spun as evidence of price-fixing or bid-rigging.  *Cf. Gypsum*, 438 U.S. at 440–41.  As noted above, Defendants believe that all of this circumstantial evidence, in context, relates to perfectly legal, unilateral business strategies.  As such, Defendants reiterate that a jury instruction on the rule of reason is particularly important here.

### CONCLUSION

Defendants respectfully submit this joint trial brief based on the issues described above.

Dated:  October 18, 2021                    Respectfully submitted,

s/ John A. Fagg, Jr.                        s/ Michael F. Tubach
John A. Fagg, Jr.                           Michael F. Tubach
MOORE & VAN ALLEN PLLC                      O'MELVENY & MYERS LLP
Attorney for William Wade Lovette           Attorney for Jayson Jeffrey Penn
100 North Tryon Street, Suite 4700          Two Embarcadero Center, 28th Floor
Charlotte, NC 28202                         San Francisco, California 94111-3823
(704) 331-3622                              (415) 984-8700
johnfagg@mvalaw.com                         mtubach@omm.com


s/ Richard K. Kornfeld                      s/ Michael S. Feldberg
Richard K. Kornfeld                         Michael S. Feldberg
RECHT KORNFELD, P.C.                         REICHMAN JORGENSEN LEHMAN &
Attorney for Mikell Reeve Fries             FELDBERG LLP
1600 Stout Street, Suite 1400               Attorney for Roger Born Austin
Denver, CO 80202                            750 Third Avenue, Suite 2400
(303) 573-1900                              New York, NY 10017
rick@rklawpc.com                            (212) 381-1965
                                            mfeldberg@reichmanjorgensen.com


s/ Bryan Lavine                             s/ Elizabeth Prewitt
Bryan Lavine                                Elizabeth B. Prewitt
TROUTMAN PEPPER HAMILTON                     LATHAM & WATKINS LLP
SANDERS LLP                                 Attorney for Timothy R. Mulrenin
Attorney for Scott James Brady              1271 Avenue of the Americas
600 Peachtree St. NE, Suite 3000            New York, NY 10020
Atlanta, GA 30308                           (212) 906-1200
(404) 885-3170                              elizabeth.prewitt@lw.com
Bryan.lavine@troutman.com


s/ James A. Backstrom                       s/ Mark A. Byrne
James A. Backstrom, Counsellor at Law       Mark A. Byrne
Attorney for William Vincent Kantola        BYRNE & NIXON LLP
1515 Market Street, Suite 1200              Attorney for Jimmie Lee Little
Philadelphia, PA 19102-1932                 888 West Sixth St, Suite 1100
(215) 864-7797                              Los Angeles, CA 90017
jabber@backstromlaw.com                     (213) 620-8003
                                            markbyrne@byrnenixon.com


s/ Craig Allen Gillen                       s/ Barry J. Pollack
Craig Allen Gillen                          Barry J. Pollack
GILLEN, WITHERS & LAKE, LLC                  Attorney for Rickie Patterson Blake
Attorney for Gary Brian Roberts             ROBBINS, RUSSELL, ENGLERT,
400 Galleria Parkway, Ste. 1920             ORSECK, & UNTEREINER LLP
Atlanta, GA 30339                           2000 K Street N.W., 4th Floor
(404) 842-9700                              Washington, DC 20006
cgillen@gwllawfirm.com                      (202) 775-4514
                                            bpollack@robbinsrussell.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2021, I electronically filed the foregoing Defendants'

Joint Trial Brief with the Clerk of Court using the CM/ECF system, which will send notification

of this filing to all listed parties.

Dated:  October 18, 2021                     *s/ Michael F. Tubach*

                                              Michael F. Tubach