IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

      Defendants.

## UNITED STATES' NOTICE OF ALTERNATIVE BASIS FOR AUTHENTICATING GX-1030

Pursuant to this Court's ruling on November 1, 2021, the government hereby gives notice that it intends to authenticate GX-1030 without relying on the testimony of Mr. Pete Martin (the former CEO of Mar-Jac Poultry) in the civil antitrust case. The government now plans to authenticate GX-1030 under Fed. R. Evid. 901(b)(4) as notes with distinctive characteristics sufficient to show that they were authored by a co-conspirator. Indeed, testimony at trial established that the source of GX-1030 is Mar-Jac Poultry; circumstances related to the creation of the document suggest it was authored by a co-conspirator; and "contents of the notes indicate[] that they were written

by someone involved in the conspiracy." *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir. 1986).  Combined with this Court's ruling after the *James* hearing that the statements in GX-1030 were likely "made during the conspiracy and in furtherance of the conspiracy," ECF 559 at 31 (entry #136), there is ample evidence to support a finding that the document is what the government claims it is—*i.e.*, hand-written notes by a Mar-Jac co-conspirator.

## BACKGROUND

GX-1030 (Bates number MAR-JAC_0000865503) is a single page of handwritten notes that states the author "[t]alked to Jason [*sic*] Penn."  The notes are dated August 29, 2014 and name several other competitors, as well as corresponding pricing and volume information.  The government received GX-1030 in a document production by the direct-purchaser class counsel in the civil class-action lawsuit, *In Re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.).  Based on evidence provided at the *James* hearing, the Court ruled on October 5, 2021 that GX-1030 is conditionally admissible, as "[t]he government has shown, by a preponderance of the evidence, that [the] statement[s were] made during the conspiracy and in furtherance of the conspiracy." ECF 559 at 31.  During this period, the question of the document's authenticity remained untouched.

On October 23, 2021, the government moved for permission to authenticate GX-1030 by using deposition testimony of Mr. Pete Martin (an employee of Mar-Jac Poultry) from the civil class-action lawsuit, ECF 720 at 5.  In that deposition, Mr. Martin admitted he authored the notes on August 29, 2014.  ECF 721 at 4.  The government's motion

also emphasized that Mar-Jac's counsel did not object to the authenticity of the document when given an opportunity to do so in the civil lawsuit.  ECF 754, Attach. A.

On October 27, 2021, the Court ruled the government could authenticate GX-1030 as long as there was no reference to the civil litigation.  ECF 742.  Defendant Penn then sought reconsideration,[1] arguing in part that using testimony from Mr. Martin's civil deposition would violate the Confrontation Clause.  ECF 749.[2]

During trial on November 1, 2021, Mr. Larry Barela from Open Text testified that Mar-Jac is one of Open Text's customers and that documents from Mar-Jac are "uploaded to [Open Text's] secure website" via Mar-Jac's password-protected account.  Trial Tr. at 16.  He testified that GX-1030 is "a hundred percent identical to the document that [Open Text is] hosting" in its secure system, *id*. at 23, and twice confirmed that GX-1030 was a true and correct copy of a document loaded by Mar-Jac.  *Id*. at 28-29, 31-33.  The government then solicited testimony from Mr. Simeon Morbey, who explained that his employer received documents directly from Mar-Jac Poultry, that GX-1030 was a true copy of a document produced by Mar-Jac, and that the same document was produced (alongside other documents) to the Department of Justice.  *Id*. at 35-36, 49-51.

---

[1] *See* Order, ECF 770 ("[B]ecause Mr. Penn already responded [to the Court's order on October 27, 2021], the Court considers Mr. Penn's motion to be a motion for reconsideration.").

[2] On October 28, 2021, the government indicated it could seek to establish the notes were written by Mr. Martin without using the deposition transcript.  ECF 754 at 4-5.  As set forth in this Notice, it is the government's position that introducing the transcript is not necessary to authenticate GX-1030.

3

At trial, the Court explained it planned to exclude GX-1030 because "there is a [C]onfrontation [C]lause issue in regard to the . . . use of the deposition transcript to authenticate the handwriting." Trial Tr. at 28.  The Court later issued a written order that same day, November 1, 2021.  ECF 770.  In its order, the Court held that using Mr. Martin's civil deposition to authenticate the handwritten notes would indeed violate the Confrontation Clause.[3]  ECF 770 at 4-5.  The Court did not decide whether live witness testimony of Mr. Williams and Mr. Morbey was sufficient to establish "the same aspects of authenticity as Mar-Jac's non-objection to authenticity in its civil production."  *Id*. at 5.

## DISCUSSION

To avoid issues related to the Confrontation Clause and hence ensure compliance with the Court's ruling on November 1, 2021, the government notifies the Court that it will pursue an alternative method for authenticating GX-1030—one which does not rely on the civil litigation and which poses no Confrontation Clause problems.

---

[3] Since the government last briefed the admissibility of GX-1030, it has been informed that Mr. Martin asserts his Fifth Amendment right to decline to testify at this trial. Because Mr. Martin is unavailable as a witness, the government's position is that admission of Mr. Martin's civil deposition transcript under Rule 804(b)(3) (Statement Against Interest) does not violate the Confrontation Clause.  *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 323 n.8 (2009) (explaining that certain declarants "were not witnesses for purposes of the Confrontation Clause because their statements concerned only the conduct of defendants' prior trial, *not any facts regarding defendants' guilt or innocence*") (emphasis added).  The government's view is that witnesses whose statements are probative of authenticity rather than a "fact[] regarding defendants' guilt or innocence" are not witnesses for the purpose of the Confrontation Clause.  The government understands the Court's ruling, however, and does not plan to revisit this issue.

Specifically, the government will authenticate the document under Rule 901(b)(4) as notes created by a co-conspirator due to the "distinctive characteristics" of GX-1030. *See* Rule 901(b)(4) (allowing a proponent to establish authenticity through "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.").  The government plans to move to introduce GX-1030 during its direct examination of Special Agent Matthew Koppenhaver.

In *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir. 1986), the Tenth Circuit rejected a defendant's challenge to the admission of undated and unsigned handwritten notes by an alleged unknown co-conspirator.  Although the defendant maintained that "a comparison of the handwriting in the [seized] notes to his handwriting established that the notes were not authored by him," the Tenth Circuit explained:

> Rule 901(b)(4) of the Federal Rules of Evidence permits authentication by means of "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." The contents of the notes included the name of the defendant and initials of his co-conspirators, notations of numbers of ounces, subtractions and additions of six-digit figures, and phone numbers. The notes were seized from Reyes' residence. The source of the notes and the correspondence of information contained in the notes to members of the conspiracy provided ample foundation for their admissibility. Moreover, the contents of the notes indicated that they were written by someone involved in the conspiracy.

*Reyes*, 798 F.2d at 383.

*Reyes* is on all fours.  *First*, testimony from Mr. Barela and Mr. Morbey confirm the source of GX-1030 is Mar-Jac Poultry.  Although the defendants have challenged

5

whether the author of the document is Mr. Pete Martin, there is no genuine dispute that the document came from Mar-Jac based on in-court testimony.

*Second*, the surrounding circumstances of authorship indicate the document was created by a Mar-Jac co-conspirator the day he had a conversation with Mr. Penn and other competitors. Indeed, on August 29, 2014 (the date at the top of the document), someone at Mar-Jac called defendant Penn (Pilgrim's) from the company's main line, and Mr. Martin (Mar-Jac) also received a call from defendant Fries (Claxton). *See* GX-8031; GX-8034. *See also* ECF 559 at 16 (ruling after *James* hearing that, "[o]n August 29, 2014, Peter Martin of Mar-Jac Poultry spoke with competitors at Tyson Foods and Claxton Poultry."). That Mar-Jac participated in the conspiracy is bolstered by this Court's *James* ruling: The Court found by a preponderance of evidence that four Mar-Jac employees—Kevin Grindle, Greg Tench, Tommy Francis, and Pete Martin—joined the conspiracy. ECF 559 at 16-18.

*Finally*, the contents of GX-1030 indicate the handwritten notes were authored by a co-conspirator. The page includes the name of one of the defendants ("Talked to Jason [*sic*] Penn"), the names of several companies involved in the conspiracy (Tyson, Pilgrim's, and Claxton); the likely names of individuals found to be co-conspirators after the *James* hearing ("Tyson 1.0976 per Tommy [Francis]" and "Talked to Mitch [Mitchell]. They are up .19 + holding"); as well as accompanying notations on competitively sensitive information, such as price or volume. The date at the top of GX-1030 also coincides with a significant time period in the conspirators' efforts to collude; August 29, 2014 is not long before the competitors finalized bids for KFC.

In combination, these points provide sufficient indication that GX-1030 was written by "someone involved in the conspiracy." *Reyes*, 798 F.2d at 383. *See also United States v. Benavides*, 470 F. App'x 782, 789 (11th Cir. 2012) ("[T]he references to both [the defendant] and [a co-conspirator] on the receipts, combined with [a co-conspirator's] testimony about the duo engaging in a conspiracy to defraud Medicare, connects the adding tape notations to [the defendant] and the conspiracy itself. And this connection suggests that the author, although unknown, had an intimate connection with the conspiracy—or at least a close enough connection for the trial court to admit the evidence."); *United States v. Mokol*, 957 F.2d 1410, 1419 (7th Cir. 1992) (upholding decision to admit calendar sheets with handwritten notes because "it found that it was more likely than not that Ex. 8 was prepared by a coconspirator"); *United States v. de Gudino*, 722 F.2d 1351 (7th Cir.1983) (concluding that the contents, circumstantial facts, and source of a set of hand-written documents authenticate the documents under 901(b)(4)).  This conclusion is bolstered by the Court's *James* ruling that the statements in GX-1030 were likely "made during the conspiracy and in furtherance of the conspiracy." ECF 559 at 31 (entry #136).

The standard of Rule 901(b)(4) is "not an exacting one."  Wright & Miller, 31 F<small>ED.</small> P<small>RAC.</small> & P<small>ROC.</small> E<small>VID.</small> § 7109 Subdivision (b)(4) (1st ed., Apr. 2021 Update).  The Court needs find only that corroborating circumstances are "sufficient to sustain a finding" of authenticity and, "[e]ven if doubts as to authenticity remain after considering the internal characteristics of an item of evidence and the external circumstances pertinent to its

7

identity, these doubts usually affect only the weight, not admissibility, of that evidence." *Id.* The government easily meets this standard.

There is more than sufficient evidence to support a finding that the document is what the government claims it is under Rule 901(b)(4)—*i.e.*, hand-written notes by a co-conspirator from Mar-Jac Poultry.

Dated: November 3, 2021                     Respectfully submitted,

*/s/ Yixi (Cecilia) Cheng*
YIXI (CECILIA) CHENG
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
Washington D.C. 20530
Tel: (202) 705-8342
yixi.cheng@usdoj.gov
Attorneys for the United States