IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY MULRENIN,**
6.   WILLIAM VINCENT KANTOLA,
7. **JIMMIE LEE LITTLE,**
8.   WILLIAM WADE LOVETTE,
9. **GARY BRIAN ROBERTS, and**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

---

**Defendants Penn, Fries, Brady, Austin, Mulrenin, Little, Roberts and Blake's Motion for the Court to Conduct a *James* Hearing on the Supplemental Statements Made By, or Related to, Carl Pepper that the Government Seeks to Admit Under Rule 801(d)(2)(E), in the Event the Court Grants the Government's Motion for Leave to File a Supplemental the *James* Log (Doc. 941)**

---

Carl Pepper worked at Tyson and reported to Mr. Mulrenin and Mr. Roberts during the conspiratorial period charged in the Superseding Indictment. He was friendly with and in communication with other representatives of other chicken suppliers, including some of the Defendants. Until summer 2021, it appeared that the government viewed Carl Pepper as their only witness to provide direct evidence against Mr. Mulrenin and Mr. Roberts at trial, and one of the two testifying alleged co-conspirators. However, when Carl Pepper—despite being interviewed at least 12 times by June 2021—apparently refused to say that pricing information

shared in this case was intended to further a conspiracy to rig bids and fix prices, the government changed course with respect to Carl Pepper, and refused to provide him with immunity protections, despite granting those same protections to all other Tyson employees. Presumably as a result, Carl Pepper refused to testify pursuant to a defense subpoena at the September 2021 *James* Hearing, instead invoking his Fifth Amendment right to remain silent. The government then decided not to call him at trial.

Now, the government not only lists Carl Pepper as a government witness for the February 22, 2022 retrial, it also proffers Carl Pepper's *anticipated* trial testimony in its motion to supplement its *James* log.[1] (*See* Doc. 941.) The government requests that the Court admit under F.R.E. 801(d)(2)(E), without an evidentiary hearing, 22 previously unidentified statements. In light of the changed circumstances related to Carl Pepper's potential status as a government trial witness, and the government's gamesmanship as it relates to the same, should the Court grant the Government's Motion for Leave to File (Doc. 941)—which Defendants oppose—in the alternative, Defendants request that the Court hold the government to its burden and conduct a *James* hearing at the February 10, 2022 pretrial hearing at which Carl Pepper testifies, or some other date prior to the trial that is convenient to the Court.

### THE COURT SHOULD ADHERE TO THE 10TH CIRCUIT'S "STRONG PREFERENCE" AND CONDUCT A *JAMES* HEARING

As the Court previously noted, the Tenth Circuit has long recognized its "strong preference" that trial courts conduct a *James* hearing outside the presence of the jury to determine whether a statement is admissible under Rule 801(d)(2)(E). (Doc. 559 at 2.) "The

---

[1] While defense counsel believe additional interviews have been conducted since June 2021, only one report of interview has been provided. The defense has no information as to what prompted the government's change of heart (again) as to Carl Pepper's status as a valuable witness.

2

reason for this preference is that if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is a risk of undue prejudice if in the end the evidence does not in fact 'connect up.'" *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994).

The government asks the Court to ignore this precedent and admit the supplemental evidence without any pretrial hearing. As discussed in Defendants' Joint Response in Opposition to the Government's Motion to Supplement the *James* Log and for Reconsideration, the government had its opportunity to be heard outside the presence of the jury on what constituted admissible co-conspirator evidence. None of the so-called "supplemental" *James* statements are new; they were all known to the government at the time of the *James* hearing. Furthermore, the Court gave the government every opportunity to make a full presentation leading up to and during the hearing, and allowed the government to supplement its *James* log several times after the Court-imposed deadline.

If the Court entertains the idea of admitting additional statements under FRE 801(d)(2)(E), it should not do so without following the Tenth Circuit's preferred procedure. To begin with, many of the proffered statements are non-descript and so it is not clear how they would be furtherance of the charged conspiracy. Additional testimony would be required to make such a finding, especially since there was ample evidence presented at trial that representatives of competing chicken suppliers had many reasons speak for reasons that had nothing to do with the charged conspiracy. Moreover, the government is essentially asking the Court to trust that the witnesses' testimony at trial will match what is proffered in its written pleading, and to make a ruling on the paper. There are many reasons not to do so here.

As a general matter, the "statements" of Carl Pepper the government seeks to admit are not actually specific statements made by him, but rather the government's summaries of what it desires to have Carl Pepper testify to at trial. In preparing its *James* log, the government has often condensed multiple paragraphs from an Investigative Record Form ("IRF") or FBI Form 302 into a one or two sentence "statement." There is no indication in the IRFs or 302s provided to-date that Carl Pepper will in fact testify to the government's proffered statements at trial.[2] In fact, the course of events that led to Carl Pepper asserting his Fifth Amendment right against self-incrimination places such an assumption into doubt. The government has interviewed Carl Pepper at least 13 times, and his statements have been imprecise and inconsistent. The government's representation that Carl Pepper will testify to any specific statement is nothing more than guesswork and wishful thinking.

Additionally, many of the "statements" in the government's *James* log are not even close to accurate representations of what Carl Pepper actually said during his interviews. The government sometimes leaves out relevant context that materially changes the meaning of a statement. Other times, the government outright fabricates a "statement" completely different from what is in the associated interview report. For example, in statement 24-S, the government seeks to admit a statement Carl Pepper supposedly relayed to agents during his February 2, 2021 interview: "Mr. Pepper told Messers. Mulrenin and Roberts about his conversation with competitors regarding the common understanding among those competitors of a substantial increase to be greater than 10 cents." (Doc. 941-1 at 5.) The government identifies the declarant

---

[2] Not only did the government not record the interviews (so as to have deniability about inaccuracies), but they also required Carl Pepper and his counsel sign a declaration that they would not record or transcribe the interviews, despite the interview being conducted via video conferencing.

4

of that statement as Carl Pepper. According to the FBI 302 of that interview, however, Carl Pepper did not make the specific statement the government is seeking to admit. The government has summarized a lengthier discussion of the 2014-2015 price increases into a single sentence that they believe best fits their theory of the case. The statement should be rejected on that ground alone.

The government also omits multiple other statements from the same interview, creating a false narrative. Specifically, Carl Pepper said that during the 2014-2015 timeframe: (1) "there was never an actual number given" in his discussions with other suppliers; (2) Tyson's "increase was slated to 19 cents, but the amount gradually went down;" (3) "Tyson had already been looking to increase the prices" before Tyson knew what he competitors increases would be; and (4) when Tyson "heard others were increasing prices, it let the company know they would not be the only ones at that price range." Taken in its proper context, even if the statement the government seeks to introduce had been made, the government has not met its burden under FRE 801(2)(d)(E).

## CONCLUSION

In this case, the government (seemingly as a strategic tactic) offered and then revoked immunity to witnesses it fears may assist the defendants in their case. Carl Pepper is a prime example. The government interviewed Carl Pepper at least 12 times prior to the first trial. Government agents spent hours showing him documents and questioning him repeatedly on the same topics. Yet when Defendant Mulrenin subpoenaed him to testify at the *James* hearing, Carl Pepper was unavailable because the government—as only it has the ability to do—pulled his immunity.

Despite this history, the government now asks the Court to forgo the preferred process of holding a pretrial evidentiary *James* hearing and instead to admit statements to which Carl Pepper will supposedly testify based on nothing other than its written proffer. There is a strong risk of unfair prejudice that the exhibits the government seeks to admit are not only not admissible under Rule 801(d)(2)(E), but that they are not, in reality, what the government represents them to be. As a result, the Court should require the government to meet its burden to prove that any alleged coconspirator statements qualify under Rule 801(d)(2)(E) following a *James* hearing at which Carl Pepper testifies.

Dated:  February 3, 2022

Respectfully submitted,

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK, & UNTEREINER LLP
Attorney for Rickie Patterson Blake
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP-DC
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Wendy L. Johnson*
Wendy L. Johnson
RMP LLP
Attorney for Rickie Patterson Blake
5519 Hackett St., Suite 300
Springdale, AR 72762
(479) 439-2705
wjohnson@rmp.law

*s/ Marci G. LaBranche*
Marci G. LaBranche
STIMSON STANCIL LABRANCHE HUBBARD LLC
Attorney for Timothy R. Mulrenin
1652 N. Downing Street
Denver, CO 80218
(720) 689-8909
labranche@sslhlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on February 3, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Nancy Hickam*
Nancy Hickam

8