**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,**

Defendants.

---

**UNITED STATES' MOTION FOR REVISIONS TO
JURY INSTRUCTIONS NOS. 15, 17, 18, 19, 22**

---

The government respectfully proposes modifications to the Court's jury

instructions, as attached in Attachment A.[1] The suggestions are intended to clarify

points of law related to: (1) the duration of the conspiracy (Instructions Nos. 15, 22); (2)

that price fixing includes fixing credit terms (Instruction No. 18); (3) factors relevant to

the determination of whether there was a single overarching antitrust conspiracy

(Instruction No. 19); and (4) how a "course of dealing" can establish a Sherman Act

---

[1] The government submits that the Court should use the same verdict form as what it
used in the first trial.

conspiracy (Instruction No. 17). Finally, the government respectfully requests an order preventing the defendants from including inaccurate and misleading statements of law in their theory of the defense (which are included with the jury instructions packet), or, in the alternative, respectfully requests that the Court not include such statements in the theories. The defendants should also be prevented from characterizing in their theories of defense what government witnesses said, especially if the Court does not permit the reading back of any trial testimony.

_Duration of the Conspiracy (Instruction Nos. 15, 22)_. The law is well established that the government does not need to prove the conspiracy existed during entire charged time period; a narrower conspiracy suffices. Despite this, defense counsel repeatedly suggested during closing statements and in their theories of the defense that the government needed to show a conspiracy spanning at least eight years in order to convict. R. Tr. Dec. 8, 2021 at 89:16-18, 107:16-17; 155:14-19; Instruction Nos. 30, 37. On December 15, 2021, the jury in the first trial sent a note to the court expressing uncertainty as to whether "the conspiracy had to occur throughout th[e] entire time frame" (at least as early as 2012 through at least early 2019) with regard to the venue instruction (Instruction No. 22). ECF No. 923 at 5; R. Tr. Dec. 15, 2021 at 38:7-13. The Court responded "no." ECF No. 923 at 5.

Juror confusion on this topic, however, may resurface in the next trial due to the phrasing of Instruction No. 15, which tells the jurors the government must prove beyond a reasonable doubt that a defendant committed the crime "reasonably near those dates"—_i.e._, as early as 2012 and through at least early 2019. This phrasing may

confuse the jury by implying that the start or end dates of the conspiracy must fall near 2012 or 2019, respectively—and hence that the conspiracy must span the entire time frame. This eliminates the possibility for the jury to find a conspiracy existing between, say, 2014 through 2018.

To avoid confusion regarding the duration of the conspiracy in this second trial, the government proposes clarifications to Instructions Nos. 15 and 22, as reflected in Appendix A. Without the additions, both instructions may be read to imply that the conspiracy must have spanned or have been continuous throughout the entire time period—but the Tenth Circuit does not require the government to show that a conspiracy spanned the entire time frame, so long as the conspiracy found is contained within the broader time period charged. In *United States v. Ailsworth*, 138 F.3d 843, 848–50 (10th Cir. 1998), for example, the government charged a broad conspiracy to distribute cocaine between March 1993 and March 1994, with "many specific offenses which made up that widespread conspiracy." *Id*. at 849. But the jury was persuaded that the defendant participated in a conspiracy on only a single day—November 19, 1993—within the one-year period charged. The Tenth Circuit upheld the conviction, because the defendant "had notice that his activities on November 19, 1993, were part and parcel of the larger, single conspiracy alleged," and the conspiracy found "was fully included within the indictment." *Id*. at 850.

As the government previously described in ECF No. 918, other courts of appeal agree that a defendant suffers no substantial prejudice as long as the time frame of the conviction does not broaden the indictment. Accordingly, here, the defendants do not

suffer substantial prejudice as long as the basis for conviction falls within the time period alleged—*i.e.*, least as early as 2012 through at least early 2019. *See United States v. Coughlin*, 610 F.3d 89, 105-107 (D.C. Cir. 2010) ("[T]he fact that the indictment charged a scheme lasting from December 2003 through June 2004 did not prevent the government from attempting to prove narrower schemes of different temporal durations during that period.") (citing in a footnote cases from the First, Sixth, Tenth, and D.C. circuits, including *Ailsworth*, 138 F.3d at 848–50); *United States v. Heimann*, 705 F.2d 662, 666-67 (2d Cir. 1983) (upholding conviction in a fraud case because the "scheme that the government proved against [the defendant] fell within the period charged in the indictment" and collecting cases from the Second, Third, Ninth, and Eleventh circuits). *See also In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 2097346, at *9 (D. Kan. May 15, 2013), *amended*, No. 04-1616-JWL, 2013 WL 3879264 (D. Kan. July 26, 2013), *and aff'd*, 768 F.3d 1245 (10th Cir. 2014) (holding the "jury was not required to find that a conspiracy existed for the entire period alleged by plaintiff" and noting the defendant's position was "absurd.").

Indeed, a trial court can itself limit the time frame of the charged conspiracy in the jury instructions if it believes only a narrower conspiracy can be proven. In *United States v. Portela*, 167 F.3d 687 (1st Cir. 1999), the government's original conspiracy charge spanned from Nov. 1993 to July 1996, but the district court believed the conspiracy ended in 1995 due to the arrest of the one of the conspirators. On that basis, the district court gave a jury instruction that the jury needed to find the conspiracy existed "between on or about November of 1993 and May 12, 1995," *id*. at 701. The defendant objected

to the instruction, arguing it worked a constructive amendment and "because he expected that if the original conspiracy charge . . . was submitted to the jury intact he would be acquitted."  *Id*. at 701. The First Circuit rejected the defendant's argument in no uncertain terms:

> While [the court's] limitation effectively altered language in Count One of the indictment itself . . . , it narrowed the offense charged rather than broadening it. . . . The instruction limiting the duration of the conspiracy in the instant case similarly limited the conspiracy to a scheme narrower than, though included within, the scheme alleged in the indictment. There was no error in this corrective, limiting instruction.

*Id*. at 702. The law is therefore clear that (1) the conspiracy need not last the entire time period; and (2) there need not be conspiratorial acts spanning the entire time frame.[2] The proposed revisions make this law clear to the jury and prevents the confusion that occurred in the first trial.

*Credit Terms (Instruction No. 18)*. Defendant Lovette filed a motion *in limine* on February 4, 2022 to exclude evidence related to his communications with a competitor on Sysco's demand to extend payment terms. ECF 990. In his motion, Defendant Lovette expressed the legally flawed view that allegations about Sysco credit terms somehow "do[] not relate to alleged price-fixing or bid-rigging," ECF 990 at 1, because credit terms "are not 'prices' that can be fixed," *id*. at 3. *See also id*. at 4. But as the

---

[2] A group of conspirators need not even remain intact during the entire period.  *See United States v. Niemi*, 579 F.3d 123, 127 (1st Cir. 2009) ("A group may engage in a single conspiracy even if they are somewhat loosely related: the proof need not show that . . . the group remained intact throughout the duration of the enterprise.") (internal quotation omitted). The Tenth Circuit has further explained that, once a conspiracy begins, it is presumed to continue unless it is abandoned, accomplished, or terminated. *See United States v. Fishman*, 645 F.3d 1175, 1195–96 (10th Cir. 2011).

government explained in its opposition, ECF No. 1019, there can be no doubt that fixing credit terms is price fixing. The Supreme Court settled this issue long ago in *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648 (1980), holding "credit terms must be characterized as an inseparable part of the price. An agreement to terminate the practice of giving credit is thus tantamount to an agreement to eliminate discounts, and thus falls squarely within the traditional per se rule against price fixing."

To prevent Defendant Lovette from confusing the jury with an incorrect legal argument—one which runs counter to Supreme Court precedent—the government proposes making it clear that fixing "credit terms" is unlawful in Instruction No. 18, which describes what behaviors are considered price fixing.

<u>*Single Conspiracy (Instruction No. 19)*</u>. Jury Instruction No. 19 asks the jury to determine whether there was a single, overarching conspiracy, but provides no guidance to the jury on *how* to reach that determination. The instruction therefore risks giving the jury the impression that there can be no overarching conspiracy if it comprises numerous distinct agreements. But the Tenth Circuit has been clear that a jury can find a single overarching antitrust conspiracy if there was a shared common purpose to suppress competition. The government therefore proposes additional language from Tenth Circuit cases to help guide the jury.

The key question in assessing whether there is a single antitrust conspiracy is whether the record "is sufficient to establish that [all conspirators] had a *single, common and continuing objective*." *Beachner*, 729 F.2d at 1281 (quoting *United States v. Wilshire Oil Co. of Texas*, 427 F.2d 969, 976 (10th Cir. 1970), *cert. denied*, 400 U.S.

6

829 (1970)) (emphasis in original). In Sherman Act cases in particular, the common objective shared among all co-conspirators may be to suppress or eliminate competition. For example, the Tenth Circuit upheld the finding of a single conspiracy in *Beachner*—which involved bid rigging for contracts for asphalt paving—because the shared overarching objective was "to eliminate price competition and ensure higher individual profits." *Id*. at 1283. In *Mobile Materials*, 881 F.2d at 872, the Tenth Circuit likewise held there was "ample evidence of a single conspiracy to submit collusive, noncompetitive and rigged bids, or to withhold bids," *id*. at 872, where the shared purpose was "to circumvent price competition and enhance profitability," *id*. at 871 (citing *Beachner*, 29 F.2d at 1283). If the instruction does not explain that a common objective among conspirators may be to suppress competition, the jury might believe that only a more granular shared objective, such as "increasing prices against KFC in 2015 and 2017," suffices. That concern is particularly acute in light of the defendants' repeated argument that there was no common conspiracy.

In addition to a shared common objective, the Tenth Circuit in *Beachner* outlined several other indications that there was only a single antitrust conspiracy: "(1) the existence of common bid-rigging jargon prevalent industry-wide, (2) the participants had no fear of initiating the setup of a bid, (3) the perpetual nature of the bid-rigging scheme, and (4) the existence of a tacit mutual understanding among competitors of a single, continuing conspiracy." *Beachner*, 729 F.2d at 1282. *See also In re Grand Jury Proceedings*, 797 F.2d 1377, 1384 (6th Cir. 1986) (referring to the *Beachner* factors).

To help guide the jury in its analysis, the government proposes revisions to

Instruction No. 19: (1) explaining a jury can decide there is a single overarching conspiracy based on whether there was a single, common, continuing objective among all conspirators to suppress competition; and (2) listing the factors found persuasive by the Tenth Circuit in *Beachner*.

*Course of dealing (Instruction No. 17)*. The government proposes adding the term "course of dealing" in Instruction No. 17 when describing how an antitrust conspiracy can be inferred. This addition is taken directly from a jury instruction upheld by the Tenth Circuit in *United States v. Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir. 1990), a criminal antitrust case. There, the Tenth Circuit upheld an instruction which said, "Direct proof of a conspiracy may not be available, and the common purpose and plan may be disclosed only by the circumstances and acts of the members, *such as their course of dealings*" as "adequately set[ting] forth the law of this circuit." *Id.* at 474 (emphasis added). *See also Beachner*, 729 F.2d at 1283 ("It is enough that the participating parties have a tacit understanding based upon a long course of conduct.").

The proposed addition also follows from seminal Supreme Court cases on price fixing, including *American Tobacco Co. v. United States*, 328 U.S. 781, 800 (1946), which explained that conspirators' "clear course of dealing" can properly "convince[] the jury of the existence of a combination or conspiracy to fix and control prices and practices" absent an express agreement. *See also United States v. A. Schrader's Son*, 252 U.S. 85, 99 (1920) (agreement is "implied from a course of dealing or other circumstances" unlawful under the Sherman Act). Such an addition is especially important where, as here, the jury will be asked to make inferences about the existence

8

of the conspiracy precisely from a common pattern or course of conduct—*e.g.*, contact with competitors prior to the due date of certain bids.[3]

<u>*Defense Theories of the Case*</u>. In the first trial, the jury received a set of instructions, labeled Instruction Nos. 30-39, containing each defendant's theory of the defense. Due to their labeling and inclusion in the jury-instructions packet, these theories may be viewed by the jurors as carrying the imprimatur of the court. Yet these instructions contain highly misleading or incorrect statements of law. For example, Defendants Fries' and Brady's theories of defense implied the government needed to show each defendant personally committed an offense within the limitations period. *See* Instruction No. 31 ("The government has not alleged, nor proven, that Mr. Fries personally committed any conspiratorial act after June 2015, the time period of the statute of limitations."); Instruction No. 32 ("Further, the government has not proven that Mr. Brady committed any conspiratorial act inside of the time period allowed by the statute of limitations."). But this is incorrect; the only relevant question is whether *any* conspiratorial act was committed within the statute of limitations period—whether by the defendant or any other co-conspirator. *See United States v. Kemp & Assocs., Inc*., 907 F.3d 1264, 1271–72 (10th Cir. 2018); *United States v. Evans & Assocs. Const. Co*., 839 F.2d 656, 661 (10th Cir.), *on reh'g*, 857 F.2d 720 (10th Cir. 1988). Such statements

---

[3] As shown in Appendix A, the government further proposes reordering of a paragraph in Instruction No. 17 for flow.  In the government's proposed instruction, statements on considering evidence piecemeal ("standing alone") compared to as a whole ("you must view the evidence as a whole") are placed next to each other rather than separated by a paragraph on a different topic.

cause further confusion when considered alongside Instruction No. 24, which explains the government needs to show only that "one or more members of the conspiracy performed some act" within the limitations period. These inconsistencies are highly prejudicial to the government.[4]

As another example, Defendant Penn's and Defendant Lovette's theories of the defense imply the government needs to prove an "8-year price-fixing and bid-rigging conspiracy that the government charged in this case" (Instruction No. 30; defendant Penn's theory), ignoring, as noted above, that the jury's agreement on a narrower conspiracy suffices. *See also* Instruction No. 37 (Defendant Lovette's theory).

Finally, Defendant Penn's instruction improperly characterized what Mr. Bryant said during trial; Defendant Penn "contends that Robert Bryant . . . stated that he had no basis to think Mr. Penn agreed to fix prices or rig bids, or that Mr. Penn instructed anyone else to do so." Instruction No. 30. This instruction, containing a confusing and inappropriate characterization of witness testimony, was returned with the jury to the deliberation room—but when the jury requested a readback of Mr. Bryant's testimony, their request was denied. The result was that the jury was able to review only a one-

---

[4] In addition, Defendant Kantola's instruction implied the government needed to show he took some action after October 2015: "The evidence mostly did not pertain to him and, to the extent that it did, the government did not prove that he was part of any conspiracy before or after October 2015." Instruction No. 35. The phrasing is ambiguous, but arguably implies Defendant Kantola left any conspiracy after October 2015. The government does not need to not show he was "part of any conspiracy . . . after October 2015," however, as long as it showed he joined at any point before October 2015. Once a defendant joins a conspiracy, of course, it is he who must "bear[] the burden of proving" an affirmative defense of withdrawal. *United States v. Varah*, 972 F.2d 357 (10th Cir. 1992); *United States v. Randall*, 661 F.3d 1291, 1294 (10th Cir. 2011).

sided characterization of Mr. Bryant's testimony with regard to Defendant Penn, which the government could not rebut.

The government therefore requests that any defense theories of the case (1) avoid any incorrect or misleading statements, and (2) do not characterize witness testimony.

*        *        *

For the foregoing reasons, the government respectfully urges relief consistent with this motion.

Dated: February 8, 2022          Respectfully submitted,

*/s/ Yixi (Cecilia) Cheng*
YIXI (CECILIA) CHENG
MICHAEL KOENIG
HEATHER CALL
PAUL TORZILLI
CAROLYN SWEENEY
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 705-8342
Email: yixi.cheng @usdoj.gov
*Attorneys for the United States*