IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN, and
**5.   WILLIAM WADE LOVETTE**,

Defendants.

---

**WILLIAM LOVETTE'S REPLY IN SUPPORT OF HIS MOTIONS FOR
JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(c)**

---

Mr. Lovette respectfully submits this reply to raise two principal points in response to the government's opposition brief. ("Opp'n", ECF No. 1265.) First, as a matter of law, the evidence, even when viewed through the light most favorable to the government, cannot lead a reasonable jury to conclude that Mr. Lovette "approved, authorized, or helped a subordinate perpetuate the charged conspiracy" and the evidence against Mr. Lovette in this regard contrasts starkly to the significant volume and quality of the evidence in the case against Mr. Lischewski, upon which the government relies. *Contrast United States v. Lischewski*, 860 F. App'x 512 (9th Cir. 2021). Second, the government's opposition filing confirms that GX803 cannot, as a matter of law, lead a reasonable jury to conclude that Mr. Lovette knowingly participated in the charged conspiracy.

Because the government failed to present such evidence, the Court should acquit Mr. Lovette of Count 1 of the Superseding Indictment.

## I.      THE GOVERNMENT OFFERED NO EVIDENCE THAT MR. LOVETTE AUTHORIZED, ORDERED, OR HELPED ANY SUBORDINATE PERPETUATE THE CHARGED CONSPIRACY.

In his motions for acquittal (ECF Nos. 1215, 1249), Mr. Lovette demonstrates that the government's case against him impermissibly relies upon speculation and "piling inference on top of inference" based on a handful of documents and a single phone call.  *See United States v. Riggins*, 15 F.3d 992, 994 (10th Cir. 1994).[1]

The government responds to Mr. Lovette's motion with reliance upon *Lischewski*, in which the Ninth Circuit affirmed a jury instruction that the defendant, a corporate executive, could knowingly participate in an illegal conspiracy by "authorizing, ordering, or helping a subordinate perpetrate the crime."  860 F. App'x at 515 (internal quotations omitted).  However, even assuming that were the controlling legal standard here – and it is not – the evidence against Mr. Lovette, even when viewed in the light most favorable to the government, falls well short of that which would allow a reasonable jury to conclude that he authorized, ordered, or helped any subordinate perpetuate the charged conspiracy.  In both *Lischewski* and *United States v. Brown*, 936 F.2d 1042 (9th Cir. 1991)—the case upon which *Lischewski* relies—there was *direct* evidence of *affirmative* conduct by the corporate executives proving knowing participation in the conspiracy.  No inference by the jury was required.

---

[1]  The Court decides this issue with the Double Jeopardy Clause barring an appeal by the United States from a Rule 29 acquittal following a hung jury.  *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575 (1977).

In *Lischewski*, there was testimony from the CEO of the competitor company who met and had multiple email exchanges with Mr. Lischewski that he understood "so long as he complied with his promise not to price over aggressively, [Mr. Lischewski and Bumble Bee, the company of which he was CEO] would refrain from retaliating." *United States v. Lischewski*, No. 18-CR-00203-EMC-1, 2020 WL 1433272, at *4 (N.D. Cal. Mar. 24, 2020) (denying Rule 29 motion). There also was testimony from two Bumble Bee employees that Mr. Lischewski gave them specific instructions to reach a "truce" with competitors regarding pricing discounts and "to coordinate pricing with competitors." *See* U.S. Opp'n to Defs.' Renewed Mot. for J. of Acquittal Under Rule 29 at 3, *United States v. Lischewski*, No. 18-CR-00203-EMC-1 (N.D. Cal. Feb. 10, 2020), ECF No. 653 (Ex. 1 hereto).  Both testified that they cut those deals and that Mr. Lischewski was aware of the deals they cut.  *Id.*  One employee also testified that Mr. Lischewski "kept him appraised of conversations [he] had with [the competitor company's CEO], sharing that [the competitor] was 'getting religion' on pricing." *Lischewski*, 2020 WL 1433272, at *4.   There is no analogous testimony or other evidence in this case.

In *Brown*, two executives of competing companies were convicted under the Sherman Act based on what was first a *written* agreement not to bid for each other's leaseholds for one year after the space was abandoned or lost.  936 F.2d at 1044.  A subordinate of defendant Brown testified that Brown had "confronted him at least a half dozen times about 'violations' of the no-compete aspects of the agreement . . . ."  *Id.*   And, several witnesses testified that the other defendant had "complained about violations of the agreement to Brown."  *Id.* at 1044-45.  After two trials in this case, there is nothing in the record from which a reasonable jury could make such an inference, much less a reasonable conclusion.

Citing GX1522-23—a forwarded email sent to Mr. Lovette by Mr. Penn with a spreadsheet attached that purports to include suppliers' pricing information—the government argues this evidence is sufficient because Mr. Lovette (a) "authoriz[ed] defendant Austin's coordination *through his receipt of reports* on the conspiracy's functioning," and Mr. Lovette had (b) "clear final authority on KFC pricing . . . ."  (Opp'n at 25 (emphasis added).)  Even though there is no evidence that Mr. Lovette read the forwarded email or its attachment or that he ever communicated with anyone on the subject thereafter, as a matter of undisputed law receipt of reports that make no mention of an agreement or price fixing cannot be sufficient.  Knowing participation in an illegal conspiracy requires evidence of more than "purely passive behavior."  *Brown*, 936 F.2d at 1048.  Moreover, proof of a CEO's "final" authority over pricing is also insufficient evidence of knowing participation in an illegal conspiracy.  (ECF No. 1215 at 5-6.)  Next, the government argues that GX1522-23 proves Mr. Lovette "authorizing Pilgrim's bid based on his understanding of the assurances given by Pilgrim's competitors."  (Opp'n at 25.)  There is, quite simply, no evidence that Mr. Lovette received any information about any competitor's "assurances" on pricing or that such assurances were made, or what such assurances were.

Based on Mr. Lovette's mere receipt of unsourced pricing information from Mr. Penn, no reasonable jury could infer that Mr. Lovette "authorized" anything, because there is no response by Mr. Lovette or other evidence indicating Mr. Lovette's supposed authorization.  Nor could a jury infer that Mr. Lovette understood that the pricing he received was part of the "conspiracy's functioning," because there is no evidence that the information was obtained from suppliers rather than customers; or if it were, that Mr. Lovette was aware of that fact.  A reasonable jury also could

not infer that Mr. Lovette had an "understanding of the assurances given by Pilgrim's competitors" given that there is no evidence that Mr. Lovette had knowledge of any agreement with competitors.

The government next argues that Mr. Lovette "approved the submission of Pilgrim's bid seeking a nearly 20% price increase . . . with the understanding that their competition would follow through and seek increases in line with Pilgrim's."  (Opp'n at 24.)  The only evidence the government cites in support of that sweeping assumption is GX1105, an internal Pilgrim's KFC pricing model.  No reasonable jury could infer from a single pricing model that Mr. Lovette approved the bid based on an "understanding" that the competition would follow.  *See United States v. Debrew*, 2011 WL 13190112, at *7 (D.N.M. Apr. 26, 2011) (granting Rule 29 acquittal in part because the inferences devolved into pure conjecture).

The government asserts that Mr. Lovette "directed Roger Austin to hold strong, knowing of defendant Austin's continued coordination with the competition to do the same."  (Opp'n at 26.) Even if the jury could infer that Mr. Lovette did tell Mr. Austin to do so during their August 26, 2014 call, that instruction simply reaffirmed what Mr. Austin had already communicated to KFC *before* Mr. Austin's call with Mr. Lovette.  (*See* GX1051.)  This stance is consistent with Pilgrim's independent pricing strategy in response to prevailing market conditions.  (Day 6 Trial Tr. 146:2-16 (Suerken) (Mr. Lovette presented a "very methodical economic case" for the 2014 small bird price increase that "made sense" and was tough to argue against).)  But, the government simply glosses over the fact that there is no evidence in the record from which a reasonable jury could infer that Mr. Lovette "knew" of or was acting in furtherance of any alleged "continued cooperation" between Mr. Austin and competitors.

The government cites GX1074 as proof that Mr. Lovette was "continuously kept up to speed" on "coordination" with Pilgrim's competitors. (Opp'n at 25.) In GX1074, Mr. Penn states that he "[w]ill review with Bill in am" after receiving an email that purports to include a range of competitor price increases, among other information. Assuming Mr. Penn communicated the unsourced pricing information to Mr. Lovette, an assumption which would be based on no testimony or documentary evidence as Mr. Lovette never received GX1074, the government *still* failed to introduce sufficient evidence from which a reasonable jury could find that Mr. Lovette ordered, authorized, or helped any coordination. Absent any act by Mr. Lovette in response to GX1074, the exhibit cannot provide support for a reasonable jury to convict Mr. Lovette. *United States v. Butler*, 494 F.2d 1246, 1249 (10th Cir. 1974).[2]

## II.   BY THE GOVERNMENT'S OWN ADMISSIONS, GX803 DOES NOT EVIDENCE MR. LOVETTE'S PARTICIPATION IN THE CHARGED CONSPIRACY.

In its opposition, the government repeatedly recognizes that the alleged conspiracy is confined to the quick-service restaurant ("QSR") industry. The government argues that the testimony of its purported "conspiracy insiders"—Robert Bryant and Carl Pepper—"is sufficient to establish the existence of the conspiracy." (Opp'n at 10.) The government acknowledges both Messrs. Bryant and Pepper testified that the charged conspiracy was limited to QSRs:

> "Specifically, Mr. Bryant and Mr. Pepper both testified how they and their conspirators worked together in 2014 to ensure they would obtain significant price increases **to quick-service restaurants ("QSRs" or fast-food companies**). Both

---

[2] The same reasoning applies to GX1864, in which Mr. Penn tells Mr. Stiller "Come to BL office. Let's discuss KFC." Even if Mr. Lovette were present at some meeting *and* a reasonable jury could conclude that, in this meeting, Mr. Lovette was made aware of any efforts by Mr. Austin to tell the "industry" that Pilgrim's was "going to hold" its price (Opp'n at 27)—which is not a reasonable inference—there is no evidence Mr. Lovette ordered, authorized, or helped these efforts. Mere knowledge of these efforts is not enough. (*See* ECF No. 1232 at Instruction No. 23.)

> witnesses learned of a plan in the summer of 2014 to increase prices ***to QSRs*** at their respective companies."

(Opp'n at 12 (emphasis added).)  The government's opposition contains several more citations to testimony confirming that the alleged anticompetitive conduct was confined to the QSR industry. (*Id.* at 7, 8 n.6.)  Perhaps most telling is this exchange with Mr. Bryant during the government's case-in-chief, which the government cites in its opposition:

> "Q. Now, earlier you testified that for Wal-Mart business you didn't want your bid prices shared. So how do you reconcile that with what you are saying now knowing that they were shared in QSR channel?
> A. ***The QSR channel*** was just – was ***different than the other segments***, so it was this mutual trust or collaboration that happened within that – that – the group of competitors.

(*Id.* at 9 (emphasis added) (citing R. Tr. Mar. 8, 2022 at 170:4-12).)  The key point is Mr. Bryant disavowed any connection between the broadline industry, which includes Sysco, and the alleged conspiracy.  (Day 9 Trial Tr. 150:5-7, 154:3-9.)  Having relied on this testimony, the government cannot disavow it in order to tout its claim that GX803 is proof of Mr. Lovette's participation in the charged conspiracy.  (Opp'n at 25.)  If, as the government's evidence and Rule 29 opposition recognize, the scope and objective of the charged conspiracy concerned the QSR industry, GX803 cannot permit a reasonable jury to find Lovette's direct participation in that conspiracy when Sysco is not a part of the QSR industry.  *See United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992); *see also* ECF No. 1232 at Instruction No. 23 ("the evidence must establish that the defendant knowingly joined the conspiracy with the intent to advance the objectives of the conspiracy—here, price fixing and bid rigging for broiler chicken products" when the government introduced no evidence that Sysco was part of the QSR industry, which it is not).  No reasonable jury could

conclude that the isolated email about Sysco credit terms is sufficient to conclude that Mr. Lovette knowingly joined the alleged conspiracy.

## **CONCLUSION**

None of the evidence in this case can sustain a finding that a reasonable jury could conclude beyond a reasonable doubt that Mr. Lovette joined the alleged conspiracy.  For all these reasons, and those set forth in ECF Nos. 1215 and 1249, Mr. Lovette respectfully moves for a judgment of acquittal.

Dated:  April 22, 2022                                  Respectfully submitted,

_s/ John A. Fagg, Jr._
John A. Fagg, Jr.
James P. McLoughlin, Jr.
MOORE & VAN ALLEN PLLC
Attorneys for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com
jimmcloughlin@mvalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

Dated:  April 22, 2022                                        *s/ John A. Fagg, Jr.*