## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**1. JAYSON JEFFREY PENN,**
**2. MIKELL REEVE FRIES,**
**3. SCOTT JAMES BRADY,**
**4. ROGER BORN AUSTIN,**
**5. WILLIAM WADE LOVETTE,**

     Defendants.

---

## UNITED STATES' OBJECTIONS TO DEFENDANTS' SUMMARY EXHIBITS

---

Defendants propose thirty-one summary exhibits for the June 6 retrial.[1] None of these charts can satisfy the test the two-part test from *United States v. Ray*, 370 F.3d 1039 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1109, which the Court has already endorsed as the methodology by which it determines whether a summary exhibit is admissible. Under *Ray*, the Court considers (1) the utility of the summary exhibit to the jury's fact-finding mission in light of the length and complexity of trial and (2) the prejudicial impact of the exhibit, including whether the preparer is available for

---

[1] Defendants' thirty-one summary exhibits are: H-684-1, I-859-1, J-228, J-235, J-236, J-239, J-240, J-241, J-249, J-250, J-251, J-252, J-253, J-254, J-255, J-256, J-257, J-258, J-259, J-260, J-261, J-262, J-263, J-264, J-265, J-266, J-267, J-268, J-269, J-270, and J-271. The final four such exhibits were belatedly disclosed after the April 25, 2022 deadline and the government objects to them as being untimely.

cross examination. *Id.* at 1046-47. As part of that test, the Court has also found that charts that do not summarize voluminous material are not appropriate for a summary exhibit. (*See* ECF No. 741 p. 6.)

Defendants fail to identify the witness(es) who prepared their thirty-one summary exhibits, leaving the government unable to determine whether that witness (or witnesses) will be available for cross examination at trial. For this reason, none of Defendants summary charts are admissible.

The majority of the charts are also irrelevant and should be excluded under Federal Rule of Evidence 401, unfairly prejudicial and should be excluded under Federal Rule of Evidence 403, or fail to summarize voluminous material and should be excluded under *Ray* and this Court's prior orders. The government's specific objections as to these exhibits are described in more detail below.

Lastly, prior versions of Exhibits J-249 through J-255 were admitted during the February 2022 trial. A table comparing the exhibit numbers is below:

| February 2022 Exhibit Number | March 2022 Exhibit Number |
|---|---|
| J-240 | J-210 |
| J-250 | J-211 |
| J-251 | J-212 |
| J-252 | J-215 |
| J-253 | J-216 |
| J-254 | J-217 |
| J-255 | J-218 |

At the time, the government raised no objection to these exhibits other than to the titles, which Defendants have since changed. During the February 2022 trial, the government only received Defendants' summary exhibits with 48 hours' notice, providing insufficient time for the government to analyze and verify the accuracy of Defendants' summary exhibits, a deficiency on the part of Defendants which the government raised numerous times with Defendants and the Court. Now that the government has had a sufficient opportunity to review Defendants' summary exhibits, and after seeing how the exhibits were used during the February 2022 trial, the government objects to these exhibits as described below.

**GOVERNMENT'S SPECIFIC OBJECTIONS:**

Exhibit H-684-1:

The government objected to an earlier version of this exhibit, H-684, during the February 2022 trial. That objection was overruled without any argument; in response, the government presented Exhibit 10023 to demonstrate how Defendants' exhibit was misleading. Now that the Court has had the opportunity to review Exhibit 10023 as compared to Defendants' Exhibits H-684 and H-684-1, the government requests the Court reconsider its ruling for the reasons stated below.

H-684-1 is misleading, prejudicial, and argumentative because the scale of its y-axis is unlabeled and does not start at zero. As a result, it distorts the difference

between the companies' initial bid prices and final negotiated contract price as well as the difference between the companies' prices.

Exhibit I-859-1:

I-859-1 does not summarize voluminous material and is not appropriate for a summary exhibit.

Exhibit J-228:

J-228 merely repackages and colorizes Exhibit I-995 and is factually inaccurate; it is not appropriate as a summary exhibit. If Defendants wish to introduce an organizational chart into evidence, Exhibit I-995 is the appropriate exhibit to use. Additionally, Exhibit J-228 has three factual inaccuracies. First, the government is unable to verify the information on the second page of J-228 as that information does not appear in Exhibit I-995, the purported source for Exhibit J-228. Second, the third page of J-228 depicts Thomas Lane and Matthew Boarman as reporting to Randy Stroud, but in Exhibit I-995 the former two individuals appear in a separate reporting structure. Finally, there is no support in Exhibit I-995 for identifying Justin Gay as the individual responsible for Chick-Fil-A. Even without these errors, Exhibit J-228 does not summarize voluminous materials and is, at best, a demonstrative.

Exhibit J-235:

Exhibit J-235 is unfairly prejudicial compared to its minimal probative value. As the government has argued, a chart showing the change in prices that KFC paid for 8-piece chicken on the bone from 2012 to 2018 does not tend to prove or disprove the existence of a price-fixing conspiracy. Further Exhibit J-235 is misleading, prejudicial,

and argumentative. The scale of its y-axis is unlabeled and does not start at zero, implying a greater change in prices over time than is the case on a true scale.

Exhibit J-236:

The government objects to the annotation on Exhibit J-236 denoting that "[s]ome but not all suppliers offered a mid-year price decrease." Defendants cite no source for their annotation which introduces confusion and uncertainty because it does not specify which suppliers offered a mid-year price decrease. Exhibit J-236 is also incomplete in that it fails to account for the introduction of OK Foods as a supplier.

Exhibit J-239:

Exhibit J-239 is misleading, prejudicial, and argumentative because it does not account for the different sales volume or scale of the companies. Exhibit J-239 misleadingly uses only the change in absolute volume. For example, it illustrates that Pilgrim's supplied 560,000 pounds per week less in 2015 than it did in 2014, but that change is a smaller percentage change of the company's total volume than the change in volume for Tyson and Koch Foods, two companies that had a smaller absolute change in volume. An accurate chart would compare each companies' volumes for 2014 and 2015 with a y-axis that goes all the way to zero or would, at a minimum, show each companies' percentage change in volume.

Exhibit J-240:

The title of Exhibit J-240, "Austin's Price Reduction Analysis Convinces Penn to Lower Prices" is argumentative and not appropriate for a summary exhibit. Again, Defendants have failed to include a y-axis going all the way to zero, misleadingly

implying a greater change in bid prices over time. Lastly, Exhibit J-240 does not summarize voluminous material and is not appropriate for a summary exhibit.

Exhibit J-249:

Defendants cite "Pilgrim's Pride Sales Data and USDA" as the source for Exhibit J-249. Defendants' attempt to cite to an entire federal agency as the source of information underlying their chart is not useful and provides the government with no way of verifying whether Defendants' chart accurately summarizes the underlying data or whether the underlying data is what Defendants purport it to be. Additionally, by citing to a federal government agency as the source for their chart, Defendants create the mistaken impression that the government has endorsed, approved of, or even created their chart.

Defendants' citations to "Pilgrim's Pride Sales Data" are similarly unhelpful. The government is unable to determine which exact entries in the sales data Defendants attempt to summarize.

Lastly, Exhibit J-249 is irrelevant. The wholesale beef and pork indices are of limited probative value. Comparing those indices to the price Pilgrim's charged for 8-piece chicken on the bone to KFC does not make it more or less likely that the charged conspiracy existed. Pilgrim's price to KFC is also inappropriately labeled as an "index."

Exhibit J-250:

Defendants again cite to "USDA" as the source for Exhibit J-250. For the same reasons as above, this is inappropriate and objectionable: (1) the USDA is a large federal agency and the government has no way to verify which exact USDA data

Defendants cite to or whether they do so accurately; and (2) by citing to a federal government agency as the source for their chart, Defendants create the mistaken impression that the government has endorsed, approved of, or created their chart.

Exhibit J-250 is also irrelevant, of minimal probative value, and prejudicial. The chart is irrelevant because it is an attempt to offer a business justification for the charged conduct, despite the Court's instructions that in a *per se* case the jury "need not be concerned with whether the agreement was reasonable or unreasonable, the justifications for the agreement, or the harm, if any, done by it." (*See, e.g.,* ECF 649, p. 7; 1232, No. 19.) It is also irrelevant because Defendants cannot use Exhibit J-250 to show a lack of intent to participate in the charged conspiracy (*see* ECF 640) because there is no evidence that Defendants reviewed or were aware of the information it summarizes.

Even if Defendants were able to overcome this evidentiary hurdle, Exhibit J-250 is unfairly prejudicial and should be excluded under Rule 403 because it does not explain what breeder birds it is measuring and contrasts supply during the charged conspiracy with supply outside the charged conspiracy. Lastly, Exhibit J-250 is misleading and prejudicial because the y-axis does not go all the way to zero, distorting the significance of the changing supply over time.

Exhibit J-251:

Defendants cite to "USDA, EMI, KFC Contracts" as the basis for Exhibit J-251. USDA is a federal agency. EMI is a company. KFC Contracts is vague and overbroad. None of these three sources provide a way for the government to assess the accuracy

of Defendants' calculations. Exhibit J-251 appears to be an attempt by Defendants to offer a business justification or rationale for the charged conduct, despite the Court's orders and jury instructions to the contrary. (*See, e.g.,* ECF 649, p. 7; ECF 1232 No. 19.) For the same reason discussed above, Defendants also cannot use Exhibit J-251 to show lack of intent to participate in the charged conduct because there is no evidence that Defendants reviewed or were aware of the information summarized in Exhibit J-251, and it is therefore irrelevant. Exhibit J-251 should also be excluded under Rules 401 and 403 because it compares prices for big birds—a term that is undefined in the chart—with Pilgrim's prices to KFC. These two unrelated data points do not go to the existence of the charged conspiracy and the comparison is irrelevant under Rule 401. The comparison is also unfairly prejudicial under Rule 403 due to the likelihood of causing juror confusion.

Exhibits J-252 and J-253:

Exhibits J-252 and J-253 are misleading, prejudicial, and argumentative because the scale of the y-axes are unlabeled and do not start at zero. As a result, the exhibits distort the difference between the companies' initial bid prices and the final negotiated contract price as well as the difference between the companies' prices. Lastly, Defendants use of the term "Final Prices" should be replaced with "Final Contracted Amounts" in order to accurately summarize the underlying data. The government additionally objects to Exhibit J-252 because it has been unable to verify the Marshal Durbin prices and therefore cannot determine the accuracy of this chart.

Exhibit J-254:

Exhibit J-254 is misleading, prejudicial, and argumentative because the scale of the y-axis is unlabeled and does not start at zero. As a result, the exhibit distorts the difference between the companies' prices. To be fully accurate, Exhibit J-254 should also include a second y-axis measuring the percentage change in price. Lastly, the comparison of Mar-Jac's 2014 and 2015 prices is misleading and unfairly prejudicial because it does not account for the fact that Mar-Jac acquired Marshall Durbin, a factor that may have contributed to the change in prices captured by this chart.

Exhibit J-256:

The government objected to an earlier version of this exhibit, Exhibit J-219, during the February 2022 trial. The government requests that the Court reconsider its ruling based on the government's argument below.

Exhibit J-256 is also a summary of a summary. This summary of a summary issue means that the government is unable to verify either layer of the summary and that Exhibit J-256 relies on evidence that is inadmissible in this trial. First, the government cannot verify the first-layer summary prepared by Edgeworth Economics because it does not have access to—and cannot get access to—an explanation of how Edgeworth created its summary. Without this, the government also cannot verify the additional summary of that data that the Defendants have attempted to illustrate in Exhibit J-256. Second, without the testimony of Edgeworth Economics, Exhibit J-256 relies on data that is inadmissible in this trial, making Exhibit J-256 inadmissible as a summary exhibit.

Exhibit J-256 is also misleading, prejudicial, and argumentative because the scale of the y-axis is unlabeled and does not start at zero. As a result, the exhibit distorts the difference between the companies' prices.

The exhibit also compares Pilgrim's sales of small bird 8-piece chicken on the bone to KFC with sales of other "Benchmark Suppliers," but this comparison is irrelevant to the existence of the charged conspiracy. These so-called benchmark suppliers did not compete with Pilgrim's as part of KFC's blind bidding process for the contracts effective January 2015 and do not even supply 8-piece chicken on the bone to KFC or other quick service restaurants. The use of the term "benchmark" falsely implies that they are an adequate substitute or comparison, when in fact they are not. Lastly, the government has not alleged that any of these benchmark suppliers participated in the charged conspiracy.

Exhibit J-257:

The government has been unable to verify the accuracy of the following prices from the source information provided by Defendants: 2012 George's, 2018 Pilgrim's, 2018 Case Farms, 2018 Koch Foods, 2018 George's, 2018 Mar-Jac, 2018 Claxton, 2019 Case Farms, 2019 Pilgrim's, 2019 Tyson, 2019 George's, 2019 Koch Foods, 2019 Mar-Jac, and 2019 Claxton. Exhibit J-257 is therefore incomplete and misleading by failing to provide the necessary source information for the government, the Court, or the jury to determine its accuracy.

Exhibit J-259:

Exhibit J-259 is misleading, prejudicial, and argumentative because the scale of the y-axis is unlabeled and does not start at zero. As a result, the exhibit distorts the difference between the companies' initial bid prices and the final negotiated contract price as well as the difference between the companies' prices. Defendants also offer no explanation for why they use Tyson's initial bid price of $0.9708 reflecting a $.0075 discount if the company is awarded 40 loads per week. This choice appears to be both random and misleading because Tyson's final contract was for 34 loads per week, thereby erroneously imply a greater difference between the companies' initial bid prices.

Exhibits J-260 and J-261:

Exhibits J-260 and J-261 are misleading, prejudicial, and argumentative because the scale of the y-axes are unlabeled and do not start at zero. As a result, both exhibits distort the difference between the companies' initial bid prices and final negotiated contract price as well as the difference between the companies' prices. Additionally, in Exhibit J-261, Defendants state that initial bid information for Marshall Durbin is unavailable. However, Defendants cite Exhibit F-818 as a source for the Exhibit; that document contains the initial bid information for Marshall Durbin. The government does not understand this discrepancy.

Exhibit J-264:

Exhibit J-264 is of limited probative value because it illustrates changes in "estimated" volume between 2014 and 2015. Estimates do not show what actually happened and are irrelevant. The probative value of Exhibit J-264 is even further

minimized by the fact that changes in volume year over year do not make it more or less likely that the charged conspiracy existed.

Exhibit J-265:

Exhibit J-265 cites to an internal Pilgrim's email from Defendant Austin to Defendant Penn and Scott Tucker at Exhibit D-198 as purporting to be the Round 3 bid Pilgrim's submitted to KFC on December 3, 2012. There is nothing in the email or the attachment itself that would indicate that this draft bid was the final bid submitted to KFC, despite what Defendants suggest. Exhibit J-265, therefore, misrepresents the underlying source material. The government also objects to the extent Defendants seek to admit Exhibit D-198 as they may not rely on Federal Rule of Evidence 801(d)(2)(A) or (E). Exhibit J-265 also does not summarize voluminous material and is not appropriate for a summary exhibit.

Exhibit J-266:

Defendants omit a digit in the cell reflecting the "Change in Price from 1st Round Bid to Final Contract" for George's. That cell should read -$0.0606 not -$0.606. If Defendants correct this typographical error, the government has no other objections to Exhibit J-266.

Exhibits J-268 and J-270:

Exhibits J-268 and J-270 do not summarize voluminous material. Instead they explain the scientific method and offer alternative explanations for the charged conduct. They are inappropriate and inadmissible as summary exhibits. Additionally, these exhibits were disclosed after the Court's deadline and should be excluded.

Exhibit J-269:

Exhibit J-269 was disclosed after the Court's deadline and should be excluded.

Exhibit J-271:

Exhibit J-271 contains the same fundamental flaws as Exhibit J-256, discussed above and the government repeats those objections here. Additionally, Exhibit J-271 was disclosed after the Court's deadline and should be excluded.

Dated: May 9, 2022                     Respectfully submitted,

                                       /s/ Leslie A. Wulff
                                       KEVIN HART
                                       LESLIE WULFF
                                       PAUL TORZILLI
                                       DANIEL LOVELAND, JR.
                                       Antitrust Division
                                       U.S. Department of Justice
                                       450 Golden Gate Ave.
                                       San Francisco, CA 94102
                                       Tel: (415) 934-5300
                                       Email: leslie.wulff@usdoj.gov
                                       *Attorneys for the United States*